T. MATTHEW PHILLIPS, ESQ.
Calif. State Bar No. 165833
4894 W. Lone Mountain Rd., No. 132
Las Vegas, Nevada 89130
Tel: (323) 314-6996
TMatthewPhillips@aol.com
*Plaintiff's Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT *of* CALIFORNIA

|  |  |
|---|---|
| 1. **JASON D'SOUZA** | Case No.:  2:23-cv-08230-SVW-E |
| 2. **KRISTINA EISENACHER** | |
| 3. **ROB EMERT** | FIRST AMENDED |
| 4. **JENNIFER GARNICA** | CLASS ACTION COMPLAINT |
| 5. **KRISTEN JOSEPH** | *for* DAMAGES *and* INJUNCTION, |
| 6. **RHONDA REYNA** | [42 U.S.C. § 1983]. |
| 7. **PATRICIA BOONE** | |
| 8. **MARK FIDELMAN** | |
| 9. **DAVID KING** | |
| 10. **ALISA ROTHMAN** | |
| *Plaintiffs* | |
| **vs.** | |
| **HON. PATRICIA GUERRERO** | |
| ***In Her Honor's Official Capacity*** | |
| ***as Council Chair for the*** | |
| ***Judicial Council of California*** | |
| *Defendants* | |

1

COMPLAINT *for* DAMAGES *and* INJUNCTION

2

**I.     Jurisdiction, Parties, and Venue.**

3

(1)     Jurisdiction:  This court has jurisdiction pursuant to 28 U.S.C. 1331.

4

Plaintiffs' claims arise under the First and Fourteenth Amendments.

5

(2)     Venue:  Relevant events took place in state courts, including Los

6

Angeles County; *therefore*, venue is properly laid in this district court.

7

(3)     Defendant:  HON. PATRICIA GUERRERO, *California Chief Justice*,

8

*respectfully*, is sued, *in Her Honor's Official Capacity as Council Chair for*

9

*the Judicial Council of California*, policy-making body for California courts.

10

(4)     Plaintiff 1:  JASON D'SOUZA is a fit parent, subject to an Orange County

11

court order, (Aug. 7, 2023), that grants him no actual parenting time.

12

(5)     Plaintiff 2:  KRISTINA EISENACHER is a fit parent, subject to a San

13

Mateo County court order, (June 13, 2023), that grants her no actual

14

parenting time.

15

(6)     Plaintiff 3:  ROB EMERT is a fit parent, subject to a San Diego County

16

court order, (May 13, 2023), that grants him no actual parenting time.

17

(7)     Plaintiff 4:  JENNIFER GARNICA is a fit parent, subject to a Los Angeles

18

County court order, (Nov. 8, 2021), that grants her no actual parenting time.

19

(8)     Plaintiff 5:  KRISTEN JOSEPH is a fit parent, subject to a Los Angeles

20

County court order, (June 9, 2023), that grants her no actual parenting time.

21

(9)     Plaintiff 6:  RHONDA REYNA is a fit parent, subject to a San Mateo

22

County court order, (Jan. 27, 2022), that grants her no actual parenting time.

23

(10)    Plaintiff 7:  PATRICIA BOONE is a fit parent, subject to a Santa Clara

24

County court order, (Jan. 25, 2022), that grants her no actual parenting time.

25

(11)    Plaintiff 8:  MARK FIDELMAN is a fit parent, subject to a San Diego

26

County court order, (Jan. 25, 2022), that grants him no actual parenting time.

27

(12)    Plaintiff 9:  DAVID KING is a fit parent, subject to a Riverside County

28

court order, (Aug. 15, 2022), that grants him no actual parenting time.

(13)   <u>Plaintiff 10</u>:  ALISA ROTHMAN IS a fit parent, subject to a Sonoma County court order, (Apr. 12, 2023), that grants her no actual parenting time.

(14)   <u>Jury Trial</u>:  Plaintiffs demand trial by jury, [VII Amendment].

## II.   Statement of the Case.

(15)   <u>Nature of the Action</u>:  JUDICIAL COUNCIL is the policy-making body for California courts.  Plaintiffs are "fit" parents, *i.e.*, they've never been found "unfit."  Plaintiffs challenge Defendants' policy of *not* training judges — *first*, that "parenting" is a fundamental right, [*Meyer vs. Nebraska*, 262 U.S. 390 (1923)], and *second*, that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — *i.e.*, with clear and convincing evidence of actual harm to a minor child, pursuant to a properly noticed fitness proceeding brought by the State.

(16)   <u>Injunction</u>:  Plaintiffs seek an injunction requiring Defendants to train its judicial officers, *first*, that "parenting" is a fundamental right, and *second*, that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — with actual harm to a minor child, which is the constitutional minimum required to divest a parent's custodial rights.

(17)   <u>Damages</u>:  Plaintiffs also seek money damages — for each day they and their children were wrongfully dispossessed of their fundamental rights.

(18)   <u>Right to Parent</u>:  The term *liberty* denotes — "not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and ***bring up children***, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men," [*Meyer vs. Nebraska*, 262 U.S. 390, 399 (1923); (bold italics added)].

1    (19)   Plaintiff's Argument:   Under U.S. Supreme Court precedent, courts

2    may not issue physical custody orders that grant no "actual parenting time"

3    to a parent — *unless that parent is found 'unfit'* — with clear and convincing

4    evidence of actual harm to a minor child, [*see Stanley vs. Illinois*, 405 U.S.

5    645 (1972); *Smith vs. Org. of Foster Families*, 431 U.S. 816 (1977); *Quilloin*

6    *vs. Walcott*, 434 U.S. 246 (1978); *Parham vs. J.R.*, 442 U.S. 584 (1979); and,

7    *Santosky vs. Kramer*, 455 U.S. 745 (1982)].

8    (20)   'Actual Parenting Time'—Defined:   The crux of Plaintiffs' argument is

9    that "actual parenting time" happens (if at all) when parents have the actual

10   ability to exercise (a) ***care, custody, and control*** of their minor children,

11   and to exercise, (b) ***private familial speech*** with their children.   But here,

12   the State wrongfully dispossessed Plaintiffs of these fundamental rights —

13   *despite the fact that they've never been found 'unfit'* — *i.e.*, no findings of (i)

14   child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

15   (21)   Private Familial Speech:   While the 14th Amendment guarantees the

16   People's right to "bring up children," the 1st Amendment guarantees the

17   right to "familial association," including private familial speech.   Where, as

18   here, custody orders forbid "fit" parents from speaking privately with their

19   children, it results in unconstitutional *time, place and manner* restrictions.

20   (22)   Familial Association:   As *Rotary Int'l*, [*id.*], explains, "First, the Court

21   has held that the Constitution protects against unjustified government

22   interference with an individual's choice to enter into and maintain certain

23   intimate or private relationships.   Second, the Court has upheld the freedom

24   of individuals to associate for the purpose of engaging in protected speech or

25   religious activities," [*Rotary Int'l*, (*id.*, at 544)].

26   (23)   Analysis:   Where, as here, "fit" parents are subject to physical custody

27   orders that grant no "actual parenting time," it violates the noncustodial

28   parent's right to "bring up children" — by precluding their ability to exercise

***care, custody, and control*** of their children, [*Troxel vs. Granville*, 530 U.S. 57 (2000)]; so too, it violates the right to "familial association" — by precluding the parent's ability to exercise ***private familial speech*** with their children, [*Rotary Int'l vs. Rotary Club of Duarte*, 481 U.S. 537 (1987)].

(24)   <u>Infringement</u>:  Where, as here, physical custody orders grant no "actual parenting time" to "fit" parents, it necessarily infringes upon fundamental rights that the 1st and 14th Amendments guarantee.

(25)   <u>Supervised Visitation</u>:  Notably, where courts require supervised visitation, it leaves noncustodial parents with no "actual parenting time." During supervised visits — *the State is in control* — in decidedly prison-like settings — where noncustodial parents have, (a) no actual ability to exercise ***care, custody, and control*** of their children (which deprives 14th Amendment rights), and (b) no actual ability to exercise ***private familial speech*** with their children (which deprives 1st Amendment rights).

(26)   <u>Severance of Parent-Child Relationships</u>:  The stark reality is that, when courts issue "supervised visitation" orders, (and "no-contact" orders), the noncustodial parents enjoy zero parental rights.  Where courts deprive a parent's 14th Amendment right to ***care, custody, and control*** of their children, as well as their 1st Amendment right to ***private familial speech*** with their children, it effectively severs the parent-child relationship.

(27)   <u>Constructive Termination</u>:  Where physical custody orders grant no "actual parenting time" to "fit" parents, the noncustodial parents suffer *constructive termination* — *i.e.*, of what many believe are the most cherished fundamental rights, (a) the right to "bring up children," [14th Amendment], as well as, (b) the right to "familial association," [1st Amendment].

(28)   <u>Lifetime Consequences</u>:  Where physical custody orders grant no "actual parenting time" to "fit" parents — such orders run contrary to public policy.  Under such restrictive orders, noncustodial parents have no actual

ability to "parent" their children (in any meaningful sense), nor are their children actually "being parented" (in any meaningful sense); and, this comes with devastating consequences — including lifetimes of severe mental and emotional trauma for the noncustodial parents and their children.

(29)   <u>Fundamental Rights</u>:  Plaintiffs invoke (a) their 14th Amendment right to "bring up children," *i.e.*, ***care, custody and control*** of their children, [*Troxel vs. Granville*, 530 U.S. 57 (2000)] — and (b) their 1st Amendment right to "familial association," *i.e.*, ***private familial speech***, (*e.g.*, to pray together, do homework together, and lead by example on a daily basis), [*Rotary Int'l vs. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987)].

(30)   <u>Arbitrary Discretion</u>:  Sadly, judges statewide issue physical custody orders that grant no "actual parenting time" to "fit" parents — and for the flimsiest of reasons — based only on arbitrary discretion — *with no findings of 'unfitness.'*  But this is unconstitutional.  With no findings that a given parent is "unfit," there's no legal or factual basis to issue physical custody orders that grant no "actual parenting time" to that parent.

(31)   <u>Policy No. 1—Parenting is a Fundamental Right</u>:  Defendants maintain a policy of *not* training judges that parenting is a fundamental right, [*see Meyer vs. Nebraska*, 262 U.S. 390 (1923)], and this has tragic and deleterious consequences; it results in continuous and ongoing violations of federally protected civil rights, which are so prevalent, so commonplace, and so regularized, as to become *de facto* judicial policy statewide.

(32)   <u>Policy No. 2—Fit Parents Entitled to 'Actual Parenting Time'</u>:  Defendants also fail to train judges that "fit" parents are entitled to "actual parenting time" and that the Constitution forbids physical custody orders that grant no "actual parenting time" — *unless a parent is found 'unfit'* — based on clear and convincing evidence of actual harm to a minor child, *i.e.*, (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

(33)   <u>SCOTUS Decisions</u>:  The U.S. Supreme Court provides that courts may not issue physical custody orders that grant no "actual parenting time" — *unless a parent is deemed 'unfit'* — with clear and convincing evidence of actual harm to a minor child — pursuant to a properly noticed fitness proceeding prosecuted by the State, (*not* the other parent), [*see*, *e.g.*, *Stanley vs. Illinois*, 405 U.S. 645 (1972); *Smith vs. Org. of Foster Families*, 431 U.S. 816 (1977); *Quillon vs. Walcott*, 434 U.S. 246 (1978); *Parham vs. J.R.*, 442 U.S. 584 (1979); and, *Santosky vs. Kramer*, 455 U.S. 745 (1982)].

(34)   <u>'Unfitness' Required to Divest 'Actual Parenting Time'</u>:  As per U.S. Supreme Court precedent, where parents are "fit," courts must grant "actual parenting time" — *precisely because there are no findings of 'unfitness'* — *i.e.*, no findings of actual harm to a minor child — meaning no findings of (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

(35)   <u>Strict Scrutiny Analysis</u>:  Note, in those unhappy instances where parents are found "unfit," courts must undertake *strict scrutiny* analyses — to determine whether the taking of parental rights was narrowly tailored, *i.e.*, "*Is this custodial timeshare the least-restrictive plan possible?*"

(36)   <u>No Strict Scrutiny for Plaintiffs</u>:  Notably, when the State deprived Plaintiffs of "actual parenting time," the court undertook no strict scrutiny analyses.  Plaintiffs' custody orders reveal no judicial effort to narrowly tailor the taking of Plaintiffs' parental rights — and no enquiry into whether the parties' custodial timeshare plans are the least-restrictive possible.

(37)   <u>'Fit' Parents</u>:  When it comes to "fit" parents, there's no legal basis to issue physical custody orders that grant no "actual parenting time" — precisely because neither parent has been found "unfit."

(38)   <u>The *Troxel* Fitness Presumption</u>:  "There is a presumption that fit parents act in their children's best interests," [*Troxel vs. Granville*, 530 U.S. 57, 58 (2000)].

(39)  Equal Protection:  Where physical custody orders grant no "actual parenting time" — *and there's no showing of 'unfitness'* — such orders are unconstitutional *per se*.  Such "unequal custodial timeshares" do not pass constitutional muster.  Equal Protection demands *equal* custodial timeshares, *first*, because two "fit" parents are similarly situated, and *second*, because the *Troxel* fitness presumption applies to both parents equally.

(40)  Federal Public Policy:  Public policy seeks to strengthen and weld the parent-child relationship; *however*, Defendants' judicial policies frustrate federal policy.  Most significantly, Defendants' policies grant unto the People **less** parental rights than the **minimum** constitutional guarantee.

(41)  'Best Interests' *vs.* Constitution:  In making custodial determinations, state courts rely exclusively on the "best interest" of the child standard; *however*, a child's constitutional "right to be parented" is paramount to a child's "best interests."  Why? — because, of course, the Constitution is the *Supreme Law of the Land*.  Where courts make custody determinations based only on "best interest" standards, *with no regard for constitutional standards*, it robs the People of minimum constitutional guarantees.

(42)  'Best Interest' Resides with 'Fit' Parents:  Note also, as a threshold matter, state courts lack subject-matter jurisdiction to decide a child's "best interests."  Where two parents are "fit," states lack authority to meddle in private family relationships.  As a matter of law, "the custody, care and nurture of the child reside first in the parents," [*Prince vs. Mass.*, 321 U.S. 158, 166 (1944)].  Unless there are findings of unfitness, states may not enter "the private realm of family life," [*id*.].

(43)  Humanitarian Crisis:  Prison inmates have greater access to their kids than do Plaintiffs.  But there's a *basic human need* to bring up one's children; it's a basic necessity, like food or water; and yet, judges statewide daily deprive the People of this basic human necessity.  It's a humanitarian crisis.

### III.   Class Allegations.

(44)   <u>Similarly Situated</u>:  Plaintiffs bring this action under FRCP, Rule 23, on behalf of themselves and all others "similarly situated," *i.e.*, all "fit" parents subject to physical custody orders that grant no "actual parenting time" with their children — *despite the fact that they've never been found 'unfit'* — *i.e.*, no findings of actual harm to a minor child, *i.e.*, no findings of (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

(45)   <u>Common Questions</u>:  Common questions of law and fact affect all class members and predominate over questions that may involve individuals, *e.g.*,

> *Question of Fact*:  Is the parent subject to a physical custody order that grants no "actual parenting time?" — *if so*,
>
> *Question of Fact*:  Has the parent ever been found "unfit?" — *if not*, then this parent qualifies as a Class Member.
>
> *Question of Law*:  Which legal standard is paramount?  (A) the child's "best interests?" or, (B) the child's constitutional "right to be parented?"

(46)   <u>Numerosity</u>:  The number of prospective class members is sufficiently large for class treatment.  To bring all individual members before the court would be impractical.  Plaintiffs estimate that, on each day the courts are open for business, approximately 100 California children lose a parent; (exact numbers are unknown, but Plaintiffs hope to learn the true and correct numbers through discovery.)

(47)   <u>Community of Interest</u>:  There are no affirmative defenses that Defendants may assert against some, but not all.  Class action treatment does not impair Defendants' ability to defend class claims.

(48)   <u>Superiority Requirement</u>:  Class action treatment is the superior and most economical method of adjudicating this controversy — on behalf of all parents similarly situated.

(49)  <u>Typicality Requirement</u>:  Plaintiffs' legal claims include all claims that any given parent might reasonably assert under like circumstances.

(50)  <u>Finite & Ascertainable Class</u>:  Plaintiffs submit the following definition for Class Members—

> "All fit parents subject to physical custody orders — *issued in the last two years* — that grant no 'actual parenting time' — *i.e.*, no actual ability (a) to exercise **care, custody, and control** of their children, or, (b) to exercise ***private familial speech*** with their children — *despite the fact that they've never been found 'unfit'* — *i.e.*, no findings of (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment."

(51)  <u>Fair & Adequate Representation</u>:  Plaintiffs' counsel will zealously prosecute this action on behalf of all Plaintiffs and putative class members.

(52)  <u>Substantial Benefits</u>:  Class action certification brings substantial benefits to many parents and children.  Plaintiffs are thus entitled to attorney's fees under Rule 23(h) and 42 U.S.C. § 1988.

\*     \*     \*

<u>CAUSE *of* ACTION</u> <u>No.</u> <u>1</u>

(53)   <u>Monell Claim—(42 U.S.C. § 1983)</u>:  Plaintiffs' Cause-of-Action No. 1 seeks damages and injunction, as per 42 U.S.C. § 1983.  Plaintiffs bring a *Monell* claim, challenging Defendants' judicial "policies," which result in statewide deprivations of federally protected civil rights, [*see* <u>Monell v. Dept. of Soc. Svcs.</u>, 436 U.S. 658 (1978)].

(54)   <u>State Actors</u>:  Defendants are "state actors."  Defendants are "persons" subject to suit under Section 1983.  Defendants are responsible for the unconstitutional judicial "policies" now deployed in California courts.

(55)   <u>Plaintiffs are 'Fit' Parents</u>:  Plaintiffs are "fit" parents.  They have never been found "unfit" — *i.e.*, no findings of (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

(56)   <u>Color of Law</u>:  JUDICIAL COUNCIL creates California judicial policy.  Acting under *colorable authority*, Defendants' policies fail to train its judges, *first*, that parenting is a fundamental right, and, *second*, that courts may not issue physical custody orders that grant no "actual parenting time," absent findings of "unfitness."  These unconstitutional polices, ubiquitous statewide, work a harsh result for Plaintiffs — by constructively terminating (a) their right to "bring up children," and (b) their right to "familial association."

(57)   <u>Policy No. 1—Parenting is a Fundamental Right</u>:  Defendants maintain a policy of *not* training judges that parenting is a fundamental right, [*see Meyer vs. Nebraska*, 262 U.S. 390 (1923)], and this has tragic and deleterious consequences; it results in continuous and ongoing violations of federally protected civil rights, which are so prevalent, so commonplace, and so regularized, as to become *de facto* judicial policy statewide.

(58)   <u>Policy No. 2—Fit Parents Entitled to 'Actual Parenting Time'</u>:  Defendants also fail to train judges that "fit" parents are entitled to "actual parenting time" and that the Constitution forbids physical custody orders

that grant no "actual parenting time" — *unless a parent is found 'unfit'* — based on clear and convincing evidence of actual harm to a minor child, *i.e.*, (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment.

(59)   <u>Causation</u>:  Defendants' inadequate judicial training policies are a proximate cause of the constitutional harms that Plaintiffs suffer.

(60)   <u>No 11th Amendment Immunity</u>:  Plaintiffs are informed and believe that JUDICIAL COUNCIL is financially self-sufficient; that it generates its own revenues; that it pays its own debts; that it has a *Dun & Bradstreet* number; and, that the State is *not* obligated to pay JUDICIAL COUNCIL debts; *therefore*, the Eleventh Amendment core concern is not implicated.

(61)   <u>Injunctive Relief</u>:  Plaintiffs seek a court order that requires JUDICIAL COUNCIL to train judicial officers, *first*, that parenting is a fundamental right, and, *second*, that courts may not issue physical custody orders that grant no "actual parenting time" — absent findings of "unfitness."

(62)   <u>Money Damages</u>:  Defendants' judicial policies cause Plaintiffs and their children to sustain massive headache and heartache injuries.  Plaintiffs seek money damages, for each day they and their children were subjected to court orders that grant no "actual parenting time."  Defendants' policies were a *substantial factor* in causing the harm.  Plaintiffs seek presumed general damages, as well as special damages, in sums T.B.D. at trial.

(63)   <u>Plaintiffs Entitled to Prevail</u>:  Plaintiffs are entitled to prevail because statewide judicial policies grant unto the People ***less*** parental rights than the ***minimum*** constitutional guarantee.

(64)   <u>Attorney's Fees</u>:  Plaintiffs request an attorney's fees award under Rule 23(h) and 42 U.S.C. § 1988.

\*   \*   \*

*First Amended Class Action Complaint for Damages and Injunction*, p. 12 of 14

1

<u>PRAYER <em>for</em> RELIEF</u>

(65)   WHEREFORE, Plaintiffs pray for judgment against Defendants, and
each of them, as follows—

    (a)   that the Court certify a Plaintiff Class;

    (b)   that Plaintiffs be adjudged the prevailing parties;

    (c)   for an award of judgment on Plaintiffs' cause of action;

    (d)   for presumed general damages, and special damages, in sums
        T.B.D. in accordance with proof at trial;

    (e)   for an order requiring the JUDICIAL COUNCIL to train its judicial
        officers, <em>first</em>, that parenting is a fundamental right, and, <em>second</em>,
        that courts may not issue physical custody orders that grant no
        "actual parenting time," absent findings of "unfitness";

    (f)   for costs and expenses incurred in this prosecuting this action;

    (g)   for such other and further relief as the court may deems just
        and proper.

Dated:  **Oct. 10, 2023**       *Respectfully Submitted,*

*T. Matthew Phillips*

T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
Telephone: (323) 314-6996
TMatthewPhillips@aol.com
*Plaintiffs' Counsel*

\*    \*    \*

<u>VERIFICATION</u> *of* <u>JASON</u> <u>D'SOUZA</u>

My name is JASON D'SOUZA. I am a Plaintiff herein. All facts alleged are true and correct of my own personal knowledge; as to those matters alleged on information and belief, I reasonably believe them true. If called to testify, I could and would give competent and truthful evidence.

1.      I am subject to a physical custody order, issued in the last two years, that grants me no "actual parenting time" with my minor child.

2.      I have never been found "unfit." I never committed (i) child abuse, (ii) child neglect, (iii) abandonment, or (iv) endangerment. As a "fit" parent, I decide my child's best interests, not the state.

3.      I believe my child's constitutional "right to be parented" is more important than my child's "best interests," as defined by state court judges. I ask the federal government, *respectfully*, to grant me the minimum parental rights that the Constitution guarantees in California state courts.

**I declare under penalty of perjury, pursuant to the laws of the United States, the foregoing is both true and correct.**

Dated: **Oct. 10, 2023**          Respectfully Submitted,


*Jason D'Souza*
_____
JASON D'SOUZA,
*Plaintiff*


\*     \*     \*


*First Amended Class Action Complaint for Damages and Injunction*, p. 14 of 14