T. MATTHEW PHILLIPS, ESQ.
Calif. State Bar No. 165833
4894 W. Lone Mountain Rd., No. 132
Las Vegas, Nevada 89130
Tel: (323) 314-6996
TMatthewPhillips@aol.com
*Plaintiff's Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT *of* CALIFORNIA

|  |  |
|---|---|
| 1. **JASON D'SOUZA** | **Case No.:  2:23-cv-08230-SVW-E** |
| 2. **KRISTINA EISENACHER** | PLAINTIFFS' REQUEST |
| 3. **ROB EMERT** | *for* JUDICIAL NOTICE |
| 4. **JENNIFER GARNICA** | *of* U.S. SUPREME COURT |
| 5. **KRISTEN JOSEPH** | POINTS & AUTHORITIES |
| 6. **RHONDA REYNA** | *on the* CONSTITUTIONAL |
| 7. **PATRICIA BOONE** | RIGHT *to* PARENT, |
| 8. **MARK FIDELMAN** | [*Filed in Conjunction with* |
| 9. **DAVID KING** | *Plaintiffs' Opposition to* |
| 10. **ALISA ROTHMAN** | *Motion to Dismiss*]. |
| *Plaintiffs* | |
| vs. | ***Hon. Judge Stephen V. Wilson*** |
| **HON. PATRICIA GUERRERO** | <u>Next Hearing</u>: |
| ***In Her Honor's Official Capacity*** | **Feb. 26, 2024 (1:30 p.m.)** |
| ***as Council Chair for the*** | First Street Courthouse |
| ***Judicial Council of California*** | 350 W. First Street |
|  | L.A. Calif., 90012 |
| ***Defendants*** | Courtroom 10A |

1

## TABLE *of* AUTHORITIES

**Case Law:**                                                                    **Page No.:**

*Meyer v. Nebraska*—262 U.S. 390 (1923) . . . . . . . . . . . . . . . . . . . .    1, 8

*Moore v. East Cleveland*—431 U.S. 494 (1977) . . . . . . . . . . . . . . .    4

*Parham v. J. R.*—442 U.S. 584 (1979) . . . . . . . . . . . . . . . . . . . . . . .    5, 6

*Pierce v. Society of Sisters*—268 U.S. 510 (1925) . . . . . . . . . . . . . .    2, 8

*Prince v. Commonwealth of Mass.*—321 U.S. 158 (1944) . . . . . . . .    2, 5

*Quilloin v. Walcott*—434 U.S. 246 (1978) . . . . . . . . . . . . . . . . . . .    5, 9

*Reno v. Flores*—507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . . . . . . .    10, 11

*Roberts v. United States Jaycees*—468 U.S. 609 (1984) . . . . . . . . .    7, 8

*Rotary Int'l v. Rotary Club of Duarte*—481 U.S. 537 (1987) . . . . .    7

*Santosky v. Kramer*—455 U.S. 745 (1982) . . . . . . . . . . . . . . . . . . .    6, 7

*Smith v. Org. of Foster Families*—431 U.S. 816 (1977) . . . . . . . . .    4, 5, 9

*Stanley v. Illinois*—405 U.S. 645 (1972) . . . . . . . . . . . . . . . . . . . . .    3

*Troxel v. Granville*—530 U.S. 57 (2000) . . . . . . . . . . . . . . . . . . . . .    10 – 12

*Wisconsin v. Yoder*—406 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . .    4

\*     \*     \*

REQUEST *for* <u>JUDICIAL NOTICE</u>

### I.     U.S. SUPREME COURT POINTS & AUTHORITIES—

<u>Constitutional Right to Parent—P & A</u>:  Plaintiff asks the court to judicially notice U.S. Supreme Court points & authorities—on the constitutional right to parent, under F.R.E. § 201(b)(2).  These SCOTUS authorities "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," [*see* F.R.E. § 201(b)(2)].

<u>Taking Judicial Notice</u>:  This court, *respectfully*, "must" take judicial notice, "if a party requests it and the court is supplied with the necessary information," [*see* F.R.E. § 201(c)(2)].

<u>Timing of the Request</u>:  Courts may take judicial notice at any stage of the proceedings, [*see* F.R.E. § 201(d)].

### MEYER V. NEBRASKA – (1923)

<u>*Meyer v. Nebraska*—262 U.S. 390 (1923)</u>:  One hundred years ago, SCOTUS first recognized the right to parent as a "liberty" interest that the 14th Amendment guarantees.  Mr. Meyer, a school-teacher was convicted on a criminal statute for teaching the German language, in a parochial school, to a 10-year-old.  SCOTUS held that the statute invaded the "liberty" interest that the 14th Amendment guarantees.

SCOTUS ruled that the 14th Amendment, "denotes not merely freedom from  bodily restraint, but also ***the right of the individual*** to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and ***bring up children***, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men," [<u>*Meyer v. State of Nebraska*</u>, 262 U.S. 390, 399 (1923); (bold italics added)].

"Corresponding to the right of control, it is the natural duty of the parent to give his children education suitable to their station in life," [*id*. at 400]. "*His right thus to teach* and *the right of parents* to engage him so to instruct their children, we think, *are within the liberty of the Amendment*," [*id*. at 400; (bold italics added)].

### PIERCE V. SOCIETY OF SISTERS – (1925)

*Pierce v. Society of Sisters*—268 U.S. 510 (1925): SCOTUS held that the 14th Amendment "liberty" interest excludes any general power of the State to standardize its children—by forcing them to accept instruction from public teachers only.

"*The child is not the mere creature of the State*; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations," [*Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925); (bold italics added)].

### PRINCE V. MASSACHUSETTS – (1944)

*Prince v. Massachusetts*—321 U.S. 158 (1944): SCOTUS struck-down a state statute, which provided that no minor shall sell, in public places, any newspapers, magazines or periodicals.

"It is cardinal with us that the *custody, care and nurture of the child reside first in the parents*, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder . . . And it is in recognition of this that these decisions have respected the *private realm of family life* which *the state cannot enter*," [*Prince v. Commonwealth of Mass.*, 321 U.S. 158, 166 (1944); (bold italics added)].

/ / / /

1

2    **STANLEY V. ILLINOIS – (1972)**

3        <u>*Stanley v. Illinois*—405 U.S. 645 (1972)</u>:  Under state law—children of

4    unmarried fathers, upon death of the mother—were declared wards of the

5    state—with no hearing on the father's fitness and no proof of child neglect by

6    the father.  The *Illinois Supreme Court* held that a father could be separated

7    from his children upon mere proof that he and the dead mother were not

8    married.  But SCOTUS reversed, holding that unmarried fathers have a

9    14th Amendment liberty interest in raising their children.

10        "[***T***]***he State registers no gain towards its declared goals when it***

11    ***separates children from the custody of fit parents***," [<u>*Stanley v. Illinois*</u>,

12    405 U.S. 645 (1972); (bold italics added)].

13        "Under the Due Process Clause of the Fourteenth Amendment

14    ***petitioner was entitled to a hearing on his fitness*** as a parent ***before***

15    ***his children were taken from him***," [*id*. at 645; (bold italics added].

16        "The private interest here, that of a man in the children he has sired

17    and raised, undeniably warrants deference and, absent a powerful

18    countervailing interest, protection," [*id*., at 651].  "***The State's interest in***

19    ***caring for Stanley's children is de minimis if Stanley is shown to be***

20    ***a fit father***," [*id*., at 658].

21        SCOTUS ruled that, under the Due Process Clause of the 14th

22    Amendment, father was "***entitled to a hearing on [his] fitness***" as a

23    parent—before the state may take-away his children and place them into

24    guardianships, [*id*., at 647–658; (bold italics added)].

25        Under the Due Process Clause, the state cannot "justify refusing a

26    father a hearing when the issue at stake is the dismemberment of his

27    family," [*id*. at 658]. "[A]ll Illinois parents are ***constitutionally entitled to***

28    ***a hearing on their fitness*** before their children are removed from their

custody," [*id*., at 658; (bold italics added)].

**WISCONSIN V. YODER – (1972)**

*Wisconsin v. Yoder*—406 U.S. 205 (1972):  Members of the Amish community were convicted for violating the State's compulsory school attendance law.  SCOTUS reversed these convictions under the Free Exercise Clause of the First Amendment.

"The values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society," [*Wisconsin v. Yoder*, 406 U.S. 205, at 213–214 (1972)].  "Even more markedly than in *Prince*, therefore, this case involves the ***fundamental interest of parents***, as contrasted with that of the State, ***to guide the religious future and education of their children***," [*id.*, at 232; (bold italics added)].  "This ***primary role of the parents*** in the upbringing of their children is now established beyond debate as an enduring American tradition," [*id.*, at 232; (bold italics added)].

**SMITH V. ORGANIZATION OF FOSTER FAMILIES – (1977)**

*Smith v. Organization of Foster Families*—431 U.S. 816 (1977):  This case raised the novel question of whether foster homes are entitled to the same constitutional deference as biological families.  SCOTUS ruled that, "***The liberty interest in family privacy*** has its source, and its contours are ordinarily to be sought, not in state law, but in ***intrinsic human rights***, as they have been understood in "this Nation's history and tradition." " [*Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977), citing *Moore v. East Cleveland*, 431 U.S. 494, at 503 (1977); (bold italics added)].

"If a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, ***without some showing of unfitness*** and for the sole reason that to do so was thought to be in the ***children's best interest***, I should have little doubt that the State would

have ***intruded impermissibly*** on "***the private realm of family life which the state cannot enter***," " [<u>Smith</u>, *supra*, at 862-863, citing <u>Prince v. Massachusetts</u>, 321 U. S. 158, 166 (1944); (bold italics added)].

### QUILLOIN V. WALCOTT – (1978)

<u>Quilloin v. Walcott</u>—434 U.S. 246 (1978):  Georgia law required only the mother's consent for the adoption of an illegitimate child.  An unmarried father tried to halt adoption of his illegitimate child.  However, the father had taken no steps to support or legitimate the child over a period of 11 years; so too, the father had never been a member of the child's family unit.  As a result, SCOTUS upheld the adoption.

"We have recognized on numerous occasions that ***the relationship between parent and child is constitutionally protected***," [<u>Quilloin v. Walcott</u>, 434 U.S. 246, 255 (1978) ; (bold italics added)].  "We have little doubt that the Due Process Clause would be offended, "if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, ***without some showing of unfitness*** and for the sole reason that to do so was thought to be in the ***children's best interest***," " [<u>Quilloin</u>, *supra*, at 255; citing <u>Smith v. Organization of Foster Families</u>, 431 U.S. 816, 862-863 (1977); (bold italics added)].

### PARHAM V. J.R. – (1979)

<u>Parham v. J. R.</u>—442 U.S. 584 (1979):  SCOTUS validated the State's procedures for admitting children to mental hospitals.  "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions.  More important, historically it has recognized that ***natural bonds of affection lead parents to act*** in the ***best interests*** of

their children," [*Parham v. J. R.*, 442 U.S. 584, 602 (1979); (bold italics added)].

   "***The statist notion that governmental power should supersede parental authority*** in all cases ***because some parents abuse and neglect children is repugnant to American tradition***," [*Parham v. J. R.*, 442 U.S. 584, 602 (1979)].  "Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state," [*id.*, at 603].  "[W]e conclude that our precedents permit the parents to retain a substantial, if not the dominant, role in the decision, ***absent a finding of neglect or abuse***, and that the ***traditional presumption that the parents act in the best interests of their child*** should apply," [*id.* at 604; (bold italics added)].

**Santosky v. Kramer – (1982)**

   *Santosky v. Kramer*—455 U.S. 745 (1982):  Under New York law, the state could terminate, over parental objection, the rights of parents in their children—upon a finding that the child is permanently neglected.

   "The ***fundamental liberty interest of natural parents*** in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State," [*Santosky v. Kramer*, 455 U.S. 745 (1982); (bold italics added)].  "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life," [*id.*, at 753].

   "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least ***clear and convincing evidence***," [*id.*, at 746;

(bold italics added)].  "*[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship*," [*id*., at 760); (bold italics added)].

"[T]he *parens patriae* interest favors **preservation**, **not severance**, of natural familial bonds, [*id*., at 767–768); (bold italics added)].  "Nor is it clear that the State constitutionally could terminate a parent's rights **without showing parental unfitness**," [*id*., at footnote 10; (bold italics added)].  "Any *parens patriae* interest in terminating the natural parents' rights arises only at the dispositional phase, after the parents have been found unfit," [*id*., at footnote 17].

### ROTARY INT'L V. ROTARY CLUB OF DUARTE – (1987)

<u>Rotary Int'l v. Rotary Club of Duarte</u>—481 U.S. 537 (1987):  *Rotary Int'l* excluded women from membership, while Rotary Duarte admitted women; as a result, *Rotary Int'l* terminated *Rotary Duarte's* membership in the international organization.  By requiring California Rotary Clubs to admit women, California's anti-discrimination statute *does not* violate the First Amendment.  So too, the statute did not interfere unduly with club members' freedom of private association.

"We have emphasized that **the First Amendment protects** those relationships, including **family relationships**, that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctively personal aspects of one's life." " [<u>Rotary Int'l v. Rotary Club of Duarte</u>, 481 U.S. 537, 545 (1987), citing, <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 619-620 (1984)].

**ROBERTS V. UNITED STATES JAYCEES – (1984)**

*Roberts v. United States Jaycees*—468 U.S. 609 (1984):  "Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses.  In one line of decisions, the Court has concluded that choices to enter into and maintain ***certain intimate human relationships*** *must be secured* ***against undue intrusion by the State*** because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.  In this respect, ***freedom of association*** receives protection as ***a fundamental element of personal liberty***," [*id.*. at 617–618; (bold italics added)].

"In another set of decisions, the Court has recognized a ***right to associate for the purpose of engaging in*** those ***activities protected*** by the ***First Amendment*** -- speech, assembly, petition for the redress of grievances, and ***the exercise of religion***," [*id.*. at 618; (bold italics added)].

"The ***Constitution guarantees freedom of association*** … as an indispensable means of preserving other individual liberties," [*id.*. at 618].

"The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of ***highly personal relationships*** a substantial measure of sanctuary from ***unjustified interference by the State***. *E.g., Pierce v. Society of Sisters*, 268 U. S. 510, 268 U. S. 534-535 (1925); *Meyer v. Nebraska*, 262 U. S. 390, 262 U. S. 399 (1923)," [*id.*, at 618; (bold italics added)].

"[W]e have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as ***critical buffers between the individual and the power of the State***," [*id.*, at 618–619; (bold italics added)].

"[T]he ***constitutional shelter afforded such relationships*** reflects the realization that individuals draw much of their emotional enrichment from close ties with others. ***Protecting these relationships from unwarranted state interference*** therefore safeguards the ability independently to define one's identity that is ***central to any concept of liberty****. See, e.g., Quilloin v. Walcott*, 434 U. S. 246, 434 U. S. 255 (1978); *Smith v. Organization of Foster Families*, 431 U. S. 816, 431 U. S. 844 (1977)," [*see, id.*, at 619; (bold italics added)].

"The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the ***creation and sustenance of a family -- marriage***, *e.g., Zablocki v. Redhail, supra*; ***childbirth***, *e.g., Carey v. Population Services International, supra*; ***the raising and education of children***, *e.g., Smith v. Organization of Foster Families, supra*; and ***cohabitation with one's relatives***, *e.g., Moore v. East Cleveland, supra*." [*see, id.*, at 619; (bold italics added)].

"***Family relationships***, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also ***distinctively personal aspects of one's life***. Among other things, *therefore*, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of ***freedom of association*** as an intrinsic element of *personal liberty*," [*id.*, at 619–620; (bold italics added)].

### RENO V. FLORES – (1993)

*Reno v. Flores*—507 U.S. 292 (1993):  Immigration and Naturalization Service regulation provided that alien juveniles—detained on suspicion of being deportable—  may be released only to a parent, legal guardian, or other related adult.  SCOTUS held that the regulation accords with the Due Process Clause and the Immigration and Nationality Act.

SCOTUS held that the Due Process Clause provides heightened protection against government interference with fundamental rights and liberty interests, [*Reno v. Flores*, 507 U.S. 292, 301-302 (1993)].

" "***The best interests of the child***," a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody.  ***But it is not traditionally the sole criterion***—***much less the sole constitutional criterion***—for other, less narrowly channeled judgments involving children, where their interests conflict in varying degrees with the interests of others," [*Reno v. Flores*, 507 U.S. 292, 304 (1993); (bold italics added)].

" ***"[T]he best interests of the child" is not the legal standard*** that governs parents' or guardians' exercise of their custody:  So long as certain minimum requirements of  child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves," [*id.*, at 304; (bold italics added)].

### TROXEL V. GRANVILLE – (2000)

*Troxel v. Granville*—530 U.S. 57 (2000):  The State of Washington had allowed "any person" to petition for visitation rights, and further allowed family courts to grant visitation where it served a child's "best interests."  The grandparents, (the Troxels), successfully petitioned for visitation with

the children of their deceased son.  The mother, (Granville), objected to the amount of visitation ordered.  The Washington Supreme Court held that state law unconstitutionally infringed on the mother's fundamental right to parent.  SCOTUS affirmed, holding that the Washington law, as applied, exceeded the bounds of the Due Process Clause.

"First, the Troxels did not allege, and no court has found, that Granville was an unfit parent.  ***There is a presumption that fit parents act in their children's best interests***," [*Troxel vs. Granville*, 530 U.S. 57, citing *Parham v. J. R.*, 442 U.S. 584, 602; (bold italics added)].

"[T]here is normally ***no reason for the State to inject itself into the private realm of the family*** to further question fit parents' ability to make the best decisions regarding their children," [*Troxel vs. Granville*, 530 U.S. 57 (2000), citing *Reno v. Flores*, 507 U.S. 292, at 304 (1993); (bold italics added)].

According to the Washington Supreme Court, "***the Constitution permits a State to interfere with the right of parents to rear their children only to prevent harm or potential harm to a child***," [*id.* at 57; (bold italics added)].  The state statute was too broad; it allowed "any person" to petition, with the only requirement being whether visitation served the child's "best interests."  In other words, states may interfere with the right to parent only to prevent harm to a child.

"[T]he State lacks a compelling interest  in second-guessing a ***fit parent's decision*** regarding visitation with third parties," [*id.* at 58].

"The ***liberty interest*** at issue in this case—the interest of parents in the ***care, custody, and control of their children***—is perhaps the oldest of the fundamental liberty interests recognized by this Court," [*Troxel vs. Granville*, 530 U.S. 57, 65 (2000)].

SCOTUS noted that "the Troxels did not allege, and no court has found, that Granville was an unfit parent.  That aspect of the case is important, for

***there is a presumption that fit parents act in the best interests of their children***," [*id*. at 68; (bold italics added)].

"In effect, the judge placed on Granville, the ***fit custodial parent***, the burden of disproving that visitation would be in the best interest of her daughters," [*id*., at 69].  "In that respect, the  court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters," [*id*. at 69–70]. "Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance.  And, if ***a fit parent's*** decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination," [*id*. at 70].

"The Washington Superior Court failed to accord the determination of Granville, a ***fit custodial parent***, any material weight," [*id*. at 72].  "As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made," [*id*. at 72–73].

"We have long recognized that a parent's interests in the nurture, upbringing, companionship, care, and custody of children are generally ***protected by the Due Process Clause of the Fourteenth Amendment***," [*id*. at 77].

////

////

////

## II.   LEGAL SUMMARY—

<u>Legal Summary</u>:  The above SCOTUS authorities are highly probative. Indeed, these authorities squarely support Plaintiffs' legal position—*i.e.*,

(a)    that "right to parent" is a federally protected civil right, [14th Amendment, Due Process Clause];

(b)    that courts may not restrict or terminate the fundamental "right to parent" absent a showing of "unfitness"—pursuant to a properly noticed fitness hearing—in which the court finds clear and convincing evidence of child abuse or child neglect, abandonment or endangerment; but here, as it turns out, Plaintiffs were never declared "unfit";

(c)    the State has never accused Plaintiffs of being "unfit," *i.e.*, no allegations of child abuse or child neglect, abandonment or endangerment;

(d)    the "best interests" resides with two "fit" parents; and here, Plaintiffs have never been deemed "unfit"; *therefore*, courts have no discretion to enter the "private realm," *i.e.*, no discretion to determine the "best interests" of a minor child;

(e)    where, as here, there are two "fit" parents, Equal Protection demands that the parties share equal and undivided one-half custodial interests—but the State denies these rights to Plaintiffs—who now seek compensation in the guise of monetary damages and injunctive relief.

/ / / /

/ / / /

/ / / /

III.   **LEGAL CONCLUSION—**

<u>Legal Conclusion</u>:  Plaintiffs ask this court to please grant the request for judicial notice, as per F.R.E. § 200.

Dated:  **Jan. 30, 2024**            *Respectfully Submitted,*

*T. Matthew Phillips*
_____
T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
Telephone: (323) 314-6996
TMatthewPhillips@aol.com
*Plaintiffs' Counsel*

\*      \*      \*

## CERTIFICATE-OF-SERVICE

I am an individual over the age of eighteen and not a party to the within action. My business address is 4894 W. Lone Mtn. Rd., No. 132, Las Vegas, Nev. 89130. My phone number is (323) 314-6996.

On **Jan. 30, 2024**, I served the following:

**Request for Judicial Notice of U.S. Supreme Court Points & Authorities;**

on an interested party in the above-entitled action by

__X__ via e-mail transmission, (U.S. e-filing system)

_____ personal service on the person below listed,

_____ depositing it in the U.S. Mail, postage prepaid,

and addressed to the person below listed,

> **MATTHEW L. GREEN, Bar No. 227904**
> **BEST BEST & KRIEGER LLP**
> **655 West Broadway, 15th Floor**
> **San Diego, California 92101**
> **Telephone: (619) 525-1300**
> **Facsimile: (619) 233-6118**
> **matthew.green@bbklaw.com**

I declare under penalty of perjury under Nevada law, the foregoing is true and correct.

Dated: **Jan. 30, 2024**

/s/ T. *Matthew Phillips*    .
Declarant