1  T. MATTHEW PHILLIPS, ESQ.
2  Calif. State Bar No. 165833
3  4894 W. Lone Mountain Rd., No. 132
   Las Vegas, Nevada 89130
4  Tel: (323) 314-6996
5  TMatthewPhillips@aol.com
6  *Plaintiffs' Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT *of* CALIFORNIA

_____

|  |  |
|---|---|
| 1. **JASON D'SOUZA** | Case No.:  2:23-cv-08230-SVW-E |
| 2. **KRISTINA EISENACHER** | |
| 3. **ROB EMERT** | |
| 4. **JENNIFER GARNICA** | EXHIBIT No. "1" |
| 5. **KRISTEN JOSEPH** | ELKINS TASK FORCE REPORT, |
| 6. **RHONDA REYNA** | [*Filed in Support of* |
| 7. **PATRICIA BOONE** | *Plaintiffs' Opposition* |
| 8. **MARK FIDELMAN** | *to Motion to Dismiss*]. |
| 9. **DAVID KING** | |
| 10. **ALISA ROTHMAN** | |
| | |
| *Plaintiffs* | |
| | |
| vs. | ***Hon. Judge Stephen V. Wilson*** |
| | |
| **HON. PATRICIA GUERRERO** | <u>Next Hearing</u>: |
| ***In Her Honor's Official Capacity*** | **Mar. 18, 2024 (1:30 p.m.)** |
| ***as Council Chair for the*** | First Street Courthouse |
| ***Judicial Council of California*** | 350 W. First Street |
| | L.A. Calif., 90012 |
| *Defendants* | Courtroom 10A |
| | |

_____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Affidavit *of* T. Matthew Phillips, Esq.**

My name is T. Matthew Phillips.  I am Plaintiffs' counsel-of-record.
All the within allegations are true and correct of my own personal knowledge.
If called upon to testify, I could and would give competent and truthful
evidence.

1.     Attached as Exhibit No. "1" is a true and correct copy of the
*Elkins Family Law Task Force*, FINAL REPORT AND RECOMMENDATIONS,
APRIL 2010, [*see*, attached)],

***I hereby declare under penalty of perjury under the laws of the
United States the foregoing is both true and correct.***

Dated:  **Mar. 6, 2024**          *Respectfully Submitted,*

*T. Matthew Phillips*
_____
T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
Telephone: (323) 314-6996
TMatthewPhillips@aol.com
*Plaintiffs' Counsel*

*         *         *

Exhibit No. "1"



# Elkins Family Law Task Force

FINAL REPORT AND
RECOMMENDATIONS
APRIL 2010



ADMINISTRATIVE OFFICE
OF THE COURTS

CENTER FOR FAMILIES, CHILDREN
& THE COURTS

Judicial Council of California
Elkins Family Law Task Force
455 Golden Gate Avenue
San Francisco, California 94102-3688
*www.courts.ca.gov*

Copyright © 2010 by the Judicial Council of California. All rights reserved.

Except as permitted under the Copyright Act of 1976 and as otherwise expressly provided herein, no part of this publication may be reproduced in any form or by any means, electronic, online, or mechanical, including the use of information storage and retrieval systems, without permission in writing from the copyright holder. Permission is herby granted to nonprofit institutions to reproduce and distribute this publication for educational purposes if the copies credit the copyright holder.

For more information on the Elkins Family Law Task Force or to review the report and its supporting documents online, please visit: http://www.courtinfo.ca.gov/jc/tflists/elkins.htm. To order copies of the report, please call (415) 865-7739.

*Printed on recycled and recyclable paper.*

# JUDICIAL COUNCIL OF CALIFORNIA

**Hon. Ronald M. George**
*Chief Justice of California and*
*Chair of the Judicial Council*

**Hon. George J. Abdallah, Jr.**
*Judge of the Superior Court of California,*
*County of San Joaquin*

**Hon. Marvin R. Baxter**
*Associate Justice of the California Supreme Court*

**Hon. Tani Cantil-Sakauye**
*Associate Justice of the Court of Appeal,*
*Third Appellate District, Sacramento*

**Mr. Anthony P. Capozzi**
*Attorney at Law, Fresno*

**Hon. Ellen M. Corbett**
*Member of the California State Senate*

**Hon. Lee Smalley Edmon**
*Assistant Presiding Judge of the Superior Court of*
*California, County of Los Angeles*

**Hon. Mike Feuer**
*Member of the Assembly*

**Hon. Terry B. Friedman**
*Judge of the Superior Court of California,*
*County of Los Angeles*

**Hon. Brad R. Hill**
*Associate Justice of the Court of Appeal,*
*Fifth Appellate District*

**Hon. Richard D. Huffman**
*Associate Justice of the Court of Appeal,*
*Fourth Appellate District, Division One*

**Ms. Miriam Aroni Krinsky**
*Attorney at Law*

**Mr. Joel S. Miliband**
*Attorney at Law, Rus, Miliband & Smith*

**Hon. Dennis E. Murray**
*Presiding Judge of the Superior Court of California,*
*County of Tehama*

**Mr. James N. Penrod**
*Attorney at Law, Morgan, Lewis & Bockius*

**Hon. Winifred Younge Smith**
*Judge of the Superior Court of California,*
*County of Alameda*

**Hon. Kenneth K. So**
*Judge of the Superior Court of California,*
*County of San Diego*

**Hon. Sharon J. Waters**
*Judge of the Superior Court of California,*
*County of Riverside*

**Hon. David S. Wesley**
*Judge of the Superior Court of California,*
*County of Los Angeles*

**Hon. James Michael Welch**
*Judge of the Superior Court of California,*
*County of San Bernardino*

**Hon. Erica R. Yew**
*Judge of the Superior Court of California,*
*County of Santa Clara*

## ADVISORY MEMBERS

**Hon. Lon F. Hurwitz**
*Commissioner of the Superior Court of California,*
*County of Orange*

**Mr. Michael D. Planet**
*Executive Officer, Superior Court of California,*
*County of Ventura*

**Mr. Frederick K. Ohlrich**
*Clerk of the Supreme Court of California*

**Hon. Mary Ann O'Malley**
*Presiding Judge, Superior Court of California, County*
*of Contra Costa*

**Mr. Michael M. Roddy**
*Executive Officer, Superior Court of California,*
*County of San Diego*

**Hon. Michael P. Vicencia**
*Judge of the Superior Court of California,*
*County of Los Angeles*

**Ms. Kim Turner**
*Executive Officer, Superior Court of California,*
*County of Marin*

## ADMINISTRATIVE OFFICE OF THE COURTS

**Mr. William C. Vickrey**
*Administrative Director of the Courts*
*and Secretary of the Judicial Council*

i

# Members of the Elkins Family Law Task Force 2008–2010

**Hon. Laurie D. Zelon, Chair**
*Associate Justice of the Court of Appeal,*
*Second Appellate District, Division Seven*

**Ms. Tülin D. Açikalin**
*Managing Attorney*
*Bay Area Legal Aid*

**Hon. Sue Alexander**
*Commissioner of the Superior Court of*
*California, County of Alameda*

**Hon. Lorna A. Alksne**
*Judge of the Superior Court of California,*
*County of San Diego*

**Hon. Irma Poole Asberry**
*Judge of the Superior Court of California,*
*County of Riverside*

**Ms. Kathy Bañuelos**
*Counsel*
*California Senate Judiciary Committee*

**Mr. Richard Barry**
*Attorney at Law*
*San Rafael*

**Hon. Louise Bayles-Fightmaster**
*Commissioner of the Superior Court of*
*California, County of Sonoma*

**Hon. Jerilyn L. Borack**
*Judge of the Superior Court of California,*
*County of Sacramento*

**Ms. Linda D. Daeley**
*Family Law Manager*
*Superior Court of California, County of Orange*

**Ms. Julie C. Dodge**
*Self-Help Center Attorney*
*Family Law Facilitator*
*Superior Court of California, County of*
*Stanislaus*

**Ms. Patricia Foster**
*Director, Family Court and Special Services*
*Superior Court of California, County of Tulare*

**Ms. Ana María García**
*Supervising Attorney*
*Neighborhood Legal Services of*
*Los Angeles County*

**Hon. Michael J. Gassner**
*Commissioner of the Superior Court of*
*California, County of San Bernardino*

**Hon. Barry P. Goode**
*Judge of the Superior Court of California,*
*County of Contra Costa*

**Mr. José Octavio Guillén**
*Executive Officer of the Superior Court of*
*California, County of Sonoma*

**Mr. Vahan Hovsepian**
*Director, Family and Children Services*
*Superior Court of California, County of Butte*

**Hon. Joan K. Irion**
*Associate Justice of the Court of Appeal,*
*Fourth Appellate District, Division One*

**Hon. Irwin H. Joseph**
*Commissioner of the Superior Court of*
*California, County of Santa Cruz*

**Hon. Mark A. Juhas**
*Judge of the Superior Court of California,*
*County of Los Angeles*

**Mr. Lawrence E. Leone**
*Attorney at Law*
*Los Angeles*

**Mr. Drew Liebert**
*Chief Counsel*
*California Assembly Judiciary Committee*

**Ms. Margaret Little, Ph.D.**
*Senior Administrator*
*Family Law and Probate Superior Court of California, County of Los Angeles*

**Ms. Judy B. Louie**
*Director, ACCESS Center*
*Superior Court of California, County of San Francisco*

**Hon. Patricia M. Lucas**
*Judge of the Superior Court of California, County of Santa Clara*

**Mr. Mark E. Minyard**
*Attorney at Law*
*Newport Beach*

**Ms. Suzanne Clark Morlock**
*Family Law Attorney*
*County of Butte*

**Ms. Sandra Joan Morris**
*Attorney at Law*
*San Diego*

**Ms. Lorie S. Nachlis**
*Attorney at Law*
*San Francisco*

**Hon. Kimberly J. Nystrom-Geist**
*Judge of the Superior Court of California, County of Fresno*

**Ms. Rebecca L. Prater**
*Staff Attorney*
*Office of the Family Law Facilitator*
*Superior Court of California, County of San Diego*

**Hon. Vance W. Raye**
*Associate Justice of the Court of Appeal, Third Appellate District*

**Mr. Stephen B. Ruben**
*Attorney at Law*
*San Francisco*

**Ms. Caron Caines Smith**
*Family Law Case Coordinator Attorney*
*Superior Court of California, County of Ventura*

**Hon. Nancy Wieben Stock**
*Presiding Judge of the Superior Court of California, County of Orange*

**Mr. Hugh K. Swift**
*Executive Officer of the Superior Court of California, County of Amador*

**Hon. B. Scott Thomsen**
*Commissioner of the Superior Courts of California, Counties of Nevada and Sierra*

**Mr. Peter M. Walzer**
*Attorney at Law*
*Woodland Hills*

**<u>STATE BAR LIAISON</u>**
**Ms. Sharon Ngim**
*Program Developer and Staff Liaison*
*Standing Committee on the Delivery of Legal Services (SCDLS)*
*State Bar of California Office of Legal Services, Access and Fairness Programs*

## JUDICIAL COUNCIL OF CALIFORNIA
## ADMINISTRATIVE OFFICE OF THE COURTS

**Hon. Ronald M. George**
*Chief Justice of California and*
*Chair of the Judicial Council*

**William C. Vickrey**
*Administrative Director of the Courts*

**Ronald G. Overholt**
*Chief Deputy Director*

## CENTER FOR FAMILIES, CHILDREN & THE COURTS

**Diane Nunn**
*Director*

**Charlene Depner, Ph.D.**
*Assistant Director*

**Bonnie Rose Hough**
*Managing Attorney*

**Deborah Chase**
*Senior Attorney*

**Katie Howard**
*Supervisor*

**Rita Mah**
*Attorney*

**Lee Morhar**
*Special Consultant*

**Deana Piazza**
*Supervising Research Analyst*

**Patricia Rivera**
*Administrative Coordinator*

**Gabrielle Selden**
*Attorney*

**Julia Weber**
*Supervising Attorney*

iv

# Contents

Introduction ............................................................................................................ 7

    Process of Developing Our Recommendations ...................................................... 11

Elkins Family Law Task Force Recommendations .................................................. 17

I.  Efficient and Effective Procedures to Help Ensure Justice, Fairness, Due Process, and Safety
............................................................................................................................... 19

    A.  Helping People Navigate the Family Court Through Caseflow Management.............. 20

    B.  Preserving the Right to Present Live Testimony at Hearings ........................................ 27

    C.  Providing Clear Guidance Through Rules of Court....................................................... 30

    D.  Streamlining Family Law Forms and Procedures ........................................................ 33

    E.  Standardizing Default and Uncontested Process Statewide .......................................... 38

    F.  Scheduling Trials and Long-Cause Hearings ............................................................... 39

    G.  Improving Domestic Violence Procedures.................................................................... 41

    H.  Assessing Mechanisms to Handle Perjury ................................................................... 43

II. More Effective Child Custody Procedures for a Better Court Experience for Families and
Children................................................................................................................... 44

    A.  Improving Contested Child Custody Procedures .......................................................... 45

    B.  Providing Guidance for Children's Participation and the Appointment of Minor's
Counsel................................................................................................................... 49

    C.  Enhancing Children's Safety ....................................................................................... 56

III.  Ensuring Meaningful Access to Justice for All Litigants .................................................. 58

    A.  Increasing the Availability of Legal Representation and Providing a Continuum of
Legal Services ......................................................................................................... 59

    B.  Improving Litigant Education ...................................................................................... 63

    C.  Expanding Services to Assist Litigants in Resolving Their Cases................................. 67

    D.  Providing Interpreters When Needed ........................................................................... 69

    E.  Making Court Facilities More Responsive to the Needs of Family Court Users........... 71

IV.  Enhancing the Status of, and Respect for, Family Law Litigants and the Family Law
Process Through Judicial Leadership ..................................................................... 74

    A.  Promoting Leadership, Accountability, and Better Use of Resources ........................... 75

    B.  Improving Judicial Branch Education ........................................................................... 83

    C.  Increasing Public Information and Outreach................................................................. 87

V. Laying the Foundation for Future Innovation ........................................................ 88

    A.   Promoting Family Court Improvement Through Empirical Research ........................... 89

    B.   Creating the California Family Law Innovation Project ................................................ 93

# Introduction

*In light of the volume of cases faced by trial courts, we understand their efforts to streamline family law procedures. But family law litigants should not be subjected to second-class status or deprived of access to justice. Litigants with other civil claims are entitled to resolve their disputes in the usual adversary trial proceeding governed by the rules of evidence established by statute. It is at least as important that courts employ fair proceedings when the stakes involve a judgment providing for custody in the best interest of a child and governing a parent's future involvement in his or her child's life, dividing all of a family's assets, or determining levels of spousal and child support. The same judicial resources and safeguards should be committed to a family law trial as are committed to other civil proceedings.*

*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1368 [163 P.3d 160]

Family law touches the most central aspects of Californian's lives: where, when, and how often a parent will see his or her child; their personal safety; how much child and spousal support one person will receive and the other will pay; and how the assets that the family has accumulated will be divided between the separating parties. These decisions can have dramatic and lasting impact on people's lives. Often, people can make them for themselves, but when they cannot, they look to the courts to help them resolve their differences and move forward with their lives. The thousands of cases heard every week in California's family law courtrooms speak eloquently of the importance that families and the community place on the ability of the courts to resolve their disputes peacefully and with finality. The community relies on the courts to provide adequate resources to meet this need, but the courts have not had those resources. This report will address the ways in which resources can be allocated and developed, and procedures implemented, to assure California's families that their cases will receive the time and attention they deserve.

**Limited Resources for Increased Demands for Services**

For many years, our family courts have attempted to make the most effective use of the resources available to them to meet the increasing needs of California's families. While the number of cases has steadily increased, the resources devoted to processing and hearing those cases have not. In 2005, the equivalent of 175 full-time judicial officers statewide were responsible for approximately 460,000 new cases filed in family court, as well as ongoing cases from previous years that were still pending before the court.[1] This

---

[1] Admin. Off. of Cts., *2006 Family Law Judicial Officer Survey: Judicial Officer Background, Judicial Resource Needs, and Challenges* (2009), www.courtinfo.ca.gov/programs/cfcc/pdffiles/ FLJOResearchUpdate_Final10-6-09.pdf

translates into an average caseload of over 2,500 new cases for each judicial officer in addition to the unresolved cases that were filed in prior years.

The Administrative Office of the Courts (AOC) has estimated that the family courts need 449 judicial positions to meet the needs of litigants.[2] The Legislature began to address the shortage in judicial resources by enacting legislation in recent years that increased the number of judicial positions in the state,[3] but the number of new positions that have been funded falls short of what is needed. The shortage of resources, however, is not the only contributor to the current situation. In some counties, the trial courts have failed to allocate resources that they do have to the family court in a measure appropriate to its caseload.

California's population growth accounts for much of the caseload growth, but it is not the only reason for the increase in the family courts' workload. The caseload growth also reflects the changing nature of family law, which has evolved as the law responded to changes in California's families and changing attitudes concerning family issues. For example, the response to domestic violence and establishment and expansion of civil protections for victims has significantly improved domestic violence victims' access to the court for protective orders. Domestic partnerships were created to recognize same-sex relationships and families, and custody, visitation, and support rights for same-sex couples who are not domestic partners have been clarified. California's child support program dedicated to establishing parentage and establishing and collecting child support was created. Each of these new laws expanded access to the family court to address important family issues, bringing more families to court.

**Courts' Efforts to Cope With Increasing Demands and Limited Resources**

Each of our family court judges works hard to make the best decision for each family, but many do so without enough resources to give every case the attention it requires. Faced with the rising numbers of self-represented litigants and crowded family law calendars, many courts have adopted local rules and procedures in an attempt to more efficiently process the high volume of family law cases. Some of these rules have been innovative and have allowed the courts to process cases more efficiently while providing better service and due process to the parties. Unfortunately, however, some of these rules and procedures have had the unintended consequence of creating barriers for both represented

---

Admin. Off. of Cts. *2008 Court Statistics Report: Statewide Caseload Trends 1997–1998 Through 2006–2007* (2008), *www.courtinfo.ca.gov/reference/documents/csr2008.pdf* .

[2] The 2008 update of the AOC's judicial need study estimated the need for 2,348 judicial positions statewide (See Report to Judicial Council: *Update of the Judicial Workload Assessment*, October 8, 2008; *www.courtinfo.ca.gov/jc/documents/reports/102408iteme.pdf*); of those, 449, or 19 percent of the total, are needed to handle the family law workload.

[3] In 2006, the Legislature enacted Senate Bill 56 (Stats. 2006, Ch. 390), which authorized 50 new judges. These new judges were appointed by the Governor. Assembly Bill 159 (Stats. 2007, ch. 722) created a second set of 50 new judgeships, but the Legislature has not yet approved authorization for funding. SB 377, introduced in 2009 to create the third installment of 50 new judgeships, is pending in the Legislature.

parties and the self-represented in getting their day in court. The *Elkins* case provides a good example.

In 2005, Mr. Jeffrey Elkins represented himself during a marital dissolution trial. A local court rule and a trial scheduling order in the family court provided that parties must present their cases and establish the admissibility of all the exhibits they sought to introduce at trial by declaration. Mr. Elkins's pretrial declaration failed to establish the evidentiary foundation for all but 2 of his 36 exhibits, and the court excluded them. Subsequently, the court divided the marital property substantially in the manner requested by Mr. Elkins's former spouse. The court's rule, which had been adopted to promote efficiency in processing family law cases, had effectively barred Mr. Elkins from presenting his case in court.

**The California Supreme Court Suggests the Creation of a Family Law Task Force**
Mr. Elkins filed a writ with the California Supreme Court challenging the court's local rule. The writ was supported by the local bar association, which argued that the local rule was a barrier to access not only for self-represented litigants but also for represented litigants because it required attorneys to spend more time preparing declarations than they would have spent presenting their case through a traditional hearing. As a consequence, attorney fees were higher and fewer people were able to afford them. The attorneys were also concerned that the local rule was impinging on the due process rights of the parties. In August 2007, the California Supreme Court found that the local rule conflicted with existing statutory law and held that marital dissolution trials should "proceed under the same general rules of procedure that govern other civil trials."[4]

The Supreme Court recognized that family courts were underresourced and that the increasing numbers of self-represented litigants presented unique challenges to the courts' ability to provide meaningful access to justice. It emphasized that if the trial courts did not have adequate resources for family law cases, they should seek additional resources instead of putting efficiency ahead of fairness. The court noted that streamlining processes should not subject family law litigants to "second class status or deprive [them] of access to justice."[5] It held that family law litigants should have the same due process protections as litigants in other types of civil cases. The court recommended that the Judicial Council of California establish a task force to "study and propose measures to assist trial courts in achieving efficiency and fairness in marital dissolution proceedings and to ensure access to justice for litigants, many of whom are self-represented."[6] In response to this recommendation, the Elkins Family Law Task Force was appointed.

---

[4] Elkins, supra, 41 Cal.4th at p. 1345.

[5] Id.

[6] Ibid.

**Limited Resources for Representation**

Although Mr. Elkins started his marital dissolution represented by counsel, by the time of trial he was self-represented. Mr. Elkins is typical of many family law litigants in California, more than 75 percent of family law cases, in many communities, have at least one self-represented party.

Self-represented litigants in family law cases often find themselves in court dealing with issues that can be legally as well as factually complex. In addition to child custody and support there may be property issues, which can include the valuation and sale of homes and the division of businesses, pension plans, and stock options. To resolve the variety of issues that arise in family court, family law judges, attorneys, and self-represented litigants need to know family law and procedure as well as many other areas of civil law, including contract law, federal and state income tax law, and pension, bankruptcy, and probate law.

Given the complexity of family law issues, why do people represent themselves? All too often they have no choice. There is no right to appointed counsel in family law matters. Legal services agencies in California are underfunded and generally are able to provide representation only to victims of domestic violence—and far too few of those victims can be served.

Legal services agencies serve low-income people. But those with low income are not the only people who are finding themselves in court without lawyers. The average family law attorney in California charges more than $300 per hour and requires a retainer of approximately $5,000. Families increasingly are finding themselves with no paycheck, a diminished amount of equity in their homes, and reduced savings, leaving them unable to afford attorneys. People who start out with attorneys at the beginning of their cases often run out of money and become self-represented before their cases are over.

California's courts have responded to this new reality of family law litigation with a variety of strategies designed to ensure access to the courts. The courts and legal services agencies have developed self-help programs that attempt to provide as much assistance to court users as possible—in as cost-effective a manner as possible. Self-help programs help hundreds of thousands of family law litigants navigate the family courts every year. These programs not only give self-represented litigants access to the courts but also allow the courts to be more efficient in processing their cases. Self-help programs have earned almost universal praise from litigants and the courts. But, even with self-help assistance, some people find it difficult to follow legal rules and procedures. The lack of legal representation is clearly an enormous barrier to many seeking access to justice in the family court.

In 2009, the Legislature began to address this access barrier by creating a new program to provide attorney representation in civil cases. The Sargent Shriver Civil Counsel Act (AB

590 [Feuer]; Stats. 2009, ch. 457) offers funding starting in July 2011 for one or more pilot projects that will provide representation to low-income parties on critical legal issues affecting basic human needs. The legislation allows legal services organizations to expand representation in the family law arena in domestic violence and contested child custody cases. While this new legislation is a significant first step in the right direction, only enough funding for a few legal services programs in pilot counties will be made available. Most family law litigants will continue to be self-represented for the foreseeable future.

### *Process of Developing Our Recommendations*

The task force held seven in-person meetings and numerous working group conference calls between May 2008 and February 2010. We conducted extensive outreach to judicial officers, court staff, attorneys, and court users and asked them what needed to be done to improve the family courts.

Task force staff conducted focus groups with family court users, judicial officers, attorneys, and court staff. An extensive survey was sent to California attorneys. We received over 800 e-mails and letters regarding potential recommendations. We received extensive public comments at our meetings and at a public hearing in San Francisco in April 2009 that was dedicated to receiving input from family court users and advocate groups. We reviewed all of the information that we received as we developed our draft recommendations. For additional information on the input we received, see supporting documents available online.

Some of what we learned is summarized below.

**Litigants' Comments**

We heard from many family court participants who are frustrated with the family law system and who believe that they were not given an opportunity to fully present their cases in court. Some individuals were represented by counsel and some were not. The following is a summary of the most common themes that we heard from litigants:

- Barriers to presenting their cases include: (1) difficult-to-understand legal procedures and evidence rules; (2) lack of information about next steps to be taken to complete their cases;  (3) language barriers and lack of interpreters in family court; (4) crowded calendars resulting in insufficient time to present their cases to judicial officers; (5) the cost of litigation, especially the costs for experts and child—custody related costs for mediators and evaluators; and (6) the stress of being in court without knowing what to expect.

- Self-help-center staff were very helpful in explaining confusing procedures and assisting with papers needed to complete the next step in their cases.

- Calendars were inefficient and courts did not respect their time. They had to miss too much work because of long waits in court to get a 20-minute hearing, and continuances were repeatedly granted because too many cases were on calendar or because the other party or his or her attorney was not ready to proceed.

- The courts referred too many cases to special masters, evaluators, and mediators who gathered information from the parties and their children and made recommendations in child custody disputes. The parties were required to pay huge costs for these services, and they believed the courts rubber-stamped their recommendations.

- Child custody mediation was a good service, but, in some courts, the programs did not give the parties enough time to settle their own cases. They believed that if given additional time, they could have avoided a hearing.

- When the court appointed counsel for children in contested child custody cases, parents were expected to pay the counsel's fees, even when they did not have enough money to pay for attorneys for themselves. They believed that the court would adopt the recommendations from minor's counsel in making custody and visitation orders and that more often than not minor's counsel sided with one parent against the other.

- Some litigants expressed their belief that the law is not fairly and uniformly applied by the courts.  A number of litigants told us how custody and visitation orders that were made in their cases had long-term negative effects on their children and on their relationships with their children.

**Judicial Officers' and Court Personnel Comments**
We heard from judges and other court personnel who were frustrated by overwhelming caseloads for judicial officers, family court mediators, self-help center staff, and court clerk staff. They said that overwhelming caseloads create significant delays in setting hearing dates and providing other services such as child custody mediation. The following is a summary of the themes that we heard from judicial officers and court staff:

- The family court does not get its fair share of existing court resources because administrators do not understand that family law is different from other types of civil cases. Allocating resources based solely on the number of initial filings does not recognize that each family law case can generate multiple pre- and postjudgment hearings.

- Overwhelming caseloads, large numbers of self-represented litigants, and a significant number of litigants who are under severe emotional and financial stress make family law a difficult assignment.

- The family court needs to be able to manage cases more effectively. Self-represented litigants do not know how to manage their cases by themselves. They run into roadblocks and do not know the next step to take to move their cases along. Cases can languish in the system for years.

- Judicial officers want to do a good job, but many find it difficult to give each case the attention it deserves and keep up with their calendars. Judicial officers who attempt to address backlogs by increasing the amount of time that they spend on the bench find that they are not left with adequate time to review files before cases are heard or to research legal issues presented after hearings.

- Courts need to have the flexibility to create local procedures to address overwhelming caseloads and the backlogs that result. Local rules and procedures can provide innovative solutions for these problems and create more efficient procedures while ensuring due process rights. A total ban on local rules would negatively impact the development of innovative solutions to problems that the family courts face in the future.

**Attorneys' Comments**

We heard from attorneys who are frustrated with the lack of resources in family court. The following is a summary of the themes that we heard from attorneys:

- Family courts have inadequate resources because many presiding judges and court administrators treat family law as less deserving of resources than other case types. Reallocation of existing resources could go a long way in solving the family courts' resource problems.

- Local rules and procedures drive up the costs of litigation, interfere with attorneys' ability to represent their clients, and make it difficult for attorneys to practice in multiple counties. This same problem occurs within a court when judges are permitted to create their own procedures in their courtrooms, especially for attorneys who do not regularly appear in a particular courtroom. Courtroom rules are not easily discovered before arriving in court.

- Too many judicial officers lack experience in family law. Many new judges assigned to family court do not have a background in family law. It can take at least two years for a judge without family law experience to master all of the law needed to hear family law cases. Overwhelming caseloads combined with the emotional aspects of family law cause many to seek a new assignment by the time they have become

13

comfortable with the law. This revolving door often affects the quality of decisionmaking in family law cases.[7]

- Some courts have problems with calendar management. There can be long delays in getting contested matters heard. Some long-cause hearings and trials can be spread out over several weeks or months as hearing time is squeezed in between other matters. This is extremely inefficient as the attorneys and the judicial officers constantly have to refresh their recollections of previous testimony. The long delays can exacerbate unresolved problems between the parties. They waste time at the courthouse waiting for their cases to be called. Clients get billed for this unproductive time, which drives up the costs for representation unnecessarily.

**Our Recommendations**

After 15 months of information gathering and discussion, we developed draft recommendations that were sent out for public comment in September 2009. In October 2009, we held public hearings in Los Angeles and San Francisco, where we heard testimony on the draft recommendations from a variety of court users. We reviewed the draft recommendations at meetings with state and local bar associations, family dispute resolution professionals, family law facilitators, child support commissioners, and other family law judicial officers. We received nearly 300 written comments. Our draft recommendations have received more public input than any other Judicial Council proposal.

We want to thank the people who took the time to attend the public hearings and those people who sent detailed and thoughtful comments about our draft recommendations. We received many excellent suggestions for improving the draft recommendations. The task force carefully considered all the public testimony, letters, e-mails, and other comments that were received, and we modified many of the draft recommendations at our February 2010 task force meeting in response to the input we received.

The final recommendations are divided into five key areas:

I.    Efficient and Effective Procedures to Help Ensure Justice, Fairness, Due Process, and Safety

---

[7] A 2006 survey conducted by the Administrative Office of the Courts reported that although most judges and commissioners had experience in family law before joining the bench, 45 percent of judges in the assignment had no prior family law experience and 64 percent had been in the assignment for less than 5 years. (Admin. Off. of Cts. *2006 Family Law Judicial Officer Survey: Judicial Officer Background, Judicial Resource Needs, and Challenges* (2009), *www.courtinfo.ca.gov/programs/cfcc/pdffiles/ FLJOResearchUpdate_Final10-6-09.pdf*).

II.  More Effective Child Custody Procedures for a Better Court Experience for Families and Children
III.  Ensuring Meaningful Access to Justice for All Litigants
IV.  Enhancing the Status of, and Respect for, Family Law Litigants and the Family Law Process through Judicial Leadership
V.  Laying the Foundation for Future Innovation

The full set of recommendations can be found in the chapters of this report.

**Implementing the Recommendations**

The goal of the Elkins Family Law Task Force was to develop a blueprint for fundamental change in the family law system. Some recommendations can be implemented quickly; others may require changes in legislation and court rules. Still others may require new funding, some of it substantial. While the task force was, and is, mindful, of the unprecedented fiscal challenges California faces today, we believe that implementing these recommendations will significantly improve access to justice for those families who must come to court to resolve their disputes. This is an ongoing process, as our call for continuing study of potential innovation demonstrates. The current situation is the result of years of development; solving it requires an effort that must begin now, but will necessarily continue into the future.

Because we recognize that that the courts are unlikely to receive significant additional resources any time soon, many of our recommendations call for using existing court resources differently, implementing policies that are already in place, or phasing in proposals over time to reduce reliance on new funds. Some recommendations in fact have little fiscal impact, because they focus on how the courts can better deploy existing personnel and resources.

The recommendations are aimed at making the processing of family law cases more efficient and effective while addressing the significant barriers to justice that now exist. While many of these barriers may be addressed by new streamlined procedures that use existing resources more efficiently, additional resources will be required to fully implement all the proposals. Action need not, however, await new funding: one of our key recommendations is that the family courts should be given an appropriate share of the court's budget commensurate with workload, taking into account the unique nature of family law and the multiple hearings that can occur in each case. Allocation in accordance with workload across the courts will allow existing funds currently being used in other areas to be applied to family court.

While current budget restraints may delay adding new resources, all the recommendations should nonetheless be implemented. Each recommendation is important, and, to ensure access to justice and fairness to California's families, all should

15

be put in place as soon as the resources can be secured. Improving the family court must be a priority, to restore and maintain the public's trust and confidence in the courts.

# Elkins Family Law Task Force Recommendations

*[R]esort to the state courts is the only avenue [private citizens have] to dissolution of their marriages…Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups, this process is not only the paramount dispute-settlement technique, but, in fact, the only available one.*

> *Boddie v. Connecticut* (1971) 401 U.S. 371, 376–77

California's families deserve a family court that ensures consistent and timely access to equal justice. Family law rules and practices must provide procedural fairness and protect the due process rights of the parties. Family court procedures and services must be efficient and address the needs of diverse individuals whether they are represented by an attorney or self-represented. We drafted these recommendations to assist our family courts in realizing these goals.

People must go to family court to dissolve their marriages or domestic partnerships, establish paternity judgments, obtain custody and support orders, or seek domestic violence protective orders. The services the family courts provide range from accepting and approving divorce agreements to trying highly conflicted child custody issues. Although people must go through court to resolve what are often the most personal, sensitive, and emotionally charged issues, we heard from litigants, attorneys, judicial officers, and court staff that currently the family courts are not always providing consistent and timely access to equal justice. We also heard that family court judicial officers and court staff believe in our goals and are committed to working hard to make the improvements needed to create a better family court experience for families.

Over the last two years, we conducted an extensive review of the family courts in California and learned that these courts face a host of challenges, described in detail elsewhere in this report. These challenges are not insurmountable. We believe that the family courts can do a better job now by adopting new, streamlined procedures that use existing resources more efficiently. However, the courts will be able to fully achieve our goals only when additional resources are provided to fully implement all of our proposals.

Despite all the competing demands for scarce public resources, we believe that improving the family courts must be given priority. The experience most taxpayers have with the courts is through jury duty, traffic court, or family court. Many people in California will be involved in a family law proceeding at some point in their lives to dissolve their marriages or domestic partnerships, to obtain a restraining order, or to establish custody

17

and/or support orders; their experience in the family court will shape their opinion of the courts. We know that when people are given an opportunity to present their case and have it resolved fairly in a timely manner, they accept the outcome and trust the court system. But if people feel that they were not given adequate time to present their case, that the procedures prevented them from fully explaining their side of the case to the judge, or that they were treated unfairly, they will develop a lack of respect not only for the outcome in their case but also for our entire system of justice. Our courts need the public's support. The courts can earn trust and confidence only if the people know that when they come to court they will be given an opportunity to present their case in a timely manner and will be treated fairly and with respect.

Our goal is for the courts to provide a family court experience where participants are given a meaningful opportunity to settle their case, or, if they need a judicial determination, a meaningful opportunity to be heard. If the courts provide that, we believe, people will respect the process and comply with the rulings, even when the court does not necessarily decide an issue in their favor. We drafted these recommendations to provide a road map for achieving these critical goals.

## *Final Recommendations in Five Key Areas*

Our final recommendations point to what the courts can do to improve the family courts. The recommendations are in five key areas:

I.     Efficient and Effective Procedures to Help Ensure Justice, Fairness, Due Process, and Safety
II.    More Effective Child Custody Procedures for a Better Court Experience for Families and Children
III.   Ensuring Meaningful Access to Justice for All Litigants
IV.    Enhancing the Status of, and Respect for, Family Law Litigants and the Family Law Process Through Judicial Leadership
V.     Laying the Foundation for Future Innovation

Each section of the recommendations addresses one of the key areas. In each section we include (1) a summary of some of the main issues that speak to the reforms that are needed, and (2) a list of our recommendations.

# I.   Efficient and Effective Procedures to Help Ensure Justice, Fairness, Due Process, and Safety

Local courts have adopted many innovative procedures and processes in an effort to meet the high demand for services. Effective and efficient procedures provide better access to justice for all litigants, whether represented or self-represented. To provide better access to justice, these recommendations address the right to present testimony in a hearing with the judicial officer and better scheduling for trials and longer hearings. We also recommend changes to statutes, the California Rules of Court, and Judicial Council forms that would simplify the family court process. These proposals will also increase access by creating greater uniformity in procedures throughout the state.

The caseflow management procedures we recommend will allow the courts to establish a family-centered case resolution process that is tailored to meet the needs of each individual family. Parties who want to complete their family law cases would know the next steps they need to take to successfully move their cases to a timely resolution. Parties who wish to explore reconciliation, collaborative proceedings, or other methods of resolving their disputes will remain able to do so. Families will receive services that reflect their individual needs, and courts will be more efficient and effective in managing their resources.

> *"My recommendation to improve [the family court] is differentiated case management. I believe that we have to have a proactive approach of managing family law cases. That from filing and to at least judgment... there ought to be some court oversight and a differentiated approach."*
>
> *~ Judicial officer*

19

### A. Helping People Navigate the Family Court Through Caseflow Management

Family law cases involve an extraordinary range of issues, from the most simple, uncontested case with no children and no property to cases involving complex legal issues, highly personal and difficult conflicts over children, or serious issues of domestic violence and/or child safety. Unlike general civil, complex civil, juvenile, probate, mental health, or criminal cases, family law is the last general jurisdiction case type in California that does not provide a procedure for the fair, timely, and efficient disposition of a case. The courts cannot manage limited resources efficiently without the ability to manage the flow of cases through the courts. Under the current system, the parties, who are most often self-represented, must take the initiative to obtain appropriate orders and a judgment, and they often fail to take the next step toward completing the case.

> *"The judgment in the family court is the closure people need to move on with their lives. It's like someone knows what I have gone through and thank goodness it's over."*
>
> *~ Family Law Litigant*

As a result, it is not unusual for family law cases to linger in the court for years. Many litigants who have default or uncontested matters simply do not know that they need to obtain a judgment or other final determination regarding the status of their marriage or domestic partnership. Some remarry in the mistaken belief that their divorce is automatically final because it was filed more than six months prior. Meanwhile, parties and attorneys may find the resolution of contested cases greatly delayed because judicial resources are not effectively allocated. This is partly because courts generally process all family law cases in the same way, without regard for the procedural and substantive factors unique to each case. A case with two people who have been married for two months and are in total agreement about the terms of their divorce is treated in the same manner as a case in which the parties have been married for 20 years, cannot talk civilly to each other, and have a house, pension, and business to divide or in which the parties have never been married but have children together and serious concerns have been raised about the children's safety.

Treating all family law cases the same results in an ineffective and inefficient use of limited court and judicial resources and creates an often confusing and frustrating experience for the parties. Establishing a statewide caseflow resolution system based on the principle of "differentiated case management" would reduce these inefficiencies and provide a framework for

20

allocating existing resources more effectively. Under this system, the court would focus on individual case characteristics to develop a case management plan designed to achieve the earliest possible disposition of the case consistent with the parties' preferences, fairness, and due process.

Caseflow management does not mean that parties would lose control of their cases, be forced to trial without their consent, or have matters heard by someone other than a judicial officer such as a special master or referee. Instead, a plan would be designed to meet the needs of the family or individuals involved in the case. The goal is to assist them in having their matters resolved as finally and fully as possible in order to minimize stress and future conflicts without sacrificing any party's due process right to have contested matters heard by a judge. The case management plan can be modified as the case progresses and circumstances change.

While it is true that some cases need to proceed at their own pace because of individual issues, such as the possibility of reconciliation, most family law litigants want their matters concluded in a timely manner. Allowing cases to languish unresolved does not help the parties, the court, or the children involved in the litigation. All too often, the parties and the courts experience greater problems because of delay.

Based on our observations of other states' experience with family law caseflow management and its use in other case types here in California, the key element in reducing delay, and thus promoting the timely and appropriate disposition of cases, is early and continuous court involvement and management of cases based on statewide goals and standards. In other case types, statutes, the California Rules of Court, and the California Standards of Judicial Administration firmly establish caseflow management rules, goals, and standards used to promote the timely disposition of cases in a manner that protects the due process rights of the parties. Family law deserves nothing less. The benefits of caseflow management to parties include a greater understanding of the legal system and their rights, options, and responsibilities; an increased opportunity to have input and involvement in the course of their family law case; and more timely and meaningful access to justice. The requirement that the parties stipulate to permit case management, unique to family law, should therefore be eliminated.

What is at stake in the family court process are long lasting decisions that affect people's most fundamental and important aspects of their lives.

The Elkins Family Law Task Force recommends:

1. **Caseflow management established**. Rules and procedures should be adopted that efficiently allocate judicial resources in a manner consistent with the substantive and procedural complexities of each case to enable parties to resolve their family law matters in a timely manner with appropriate assistance.

21

2. **Caseflow management beginning at case initiation**. Caseflow management should begin when the initial pleadings are filed and continue through any postjudgment motions. Cases should be assessed based on the type of case (dissolution, legal separation, domestic violence, governmental child support, and establishment of parentage). They should also be assessed for procedural issues (default, default with agreement, contested), substantive issues (such as property, custody, visitation, child support, and spousal support), and individual case factors, such as allegations of domestic violence, whether one or both parties is self-represented, whether one or more parties has limited English proficiency or has other challenges preventing them from accessing the court, and the parties' interest in consensual dispute resolution (CDR) to resolve their case.

> *"..mediation provides a way to craft creative solutions that don't make anyone extremely unhappy at an unfair result. Facilitating informal resolution through meet and confer requirements and mediation alternatives by consistent and proactive judicial case management—whether by sitting judges, volunteer and/or paid lawyers, or professional mediators, could significantly lessen the court caseload."*
>
> *~ Advocate*

3. **Checkpoints established.** Based on the factors in the case, checkpoints should be established to assist the court in monitoring the case to ensure that issues are being resolved as efficiently and expeditiously as appropriate to the specifics of the case. These checkpoints can allow the court and parties the opportunity to identify issues that often create delay, confusion, and frustration, particularly for those parties who are self-represented but who would otherwise be able to proceed by default or mutual agreement. Examples of such issues include lack of service on the respondent and failure to exchange financial information including declarations of disclosure.

4. **Checkpoints automated.** Methods to automate these checkpoints should be incorporated into the design of the California Case Management System. For example, the system should be able to identify cases where proof of service of the petition has not been filed within a specified period, such as two months. The system could then allow the court to send a reminder alert to the petitioner, and, if self-represented, he or she could be referred to the self-help center for information on service of process. Checkpoints could be established at regular intervals in a case, such as at the four-month point to discuss discovery and settlement efforts to date and consider a schedule for exchange of information. In general, the court should check in with the parties about the status of the case no less than once a year.

As additional information becomes available to the court throughout the case, it should consider the interventions that would be of most assistance to the parties. If parties are mediating their case outside of court, have extensive discovery to complete, or otherwise need additional time between checkpoints, these circumstances should be considered in setting any future dates for checkpoints. A future review should always be scheduled so the case does not get "lost" in the system.

5. **Early interventions**. Special attention should be paid to giving the parties the opportunity to reach an early disposition of as many issues as possible to help them stabilize their living situations, identify those issues that remain in dispute, and establish a plan for resolution of those issues.

6. **Information for litigants.** The court should provide education and information to litigants about the court process, including courtroom processes, increasing their awareness of how the court actually works so that they are better able to make informed decisions about resolving their cases. This information is more fully described in the recommendations in Section III.B, Improving Litigant Education.

7. **Streamlined procedures for defaults and uncontested cases.** In a high percentage of cases, the parties can obtain a judgment without appearing before a judicial officer. Unnecessary court appearances increase the cost and inconvenience to the parties and are not a wise use of limited judicial resources. When the parties do not wish to appear before a judicial officer, when a court appearance is not legally required in the case, and when no other circumstances cause the court to believe that an appearance is necessary to advance the matter, the court should avoid implementing procedures that would create a requirement for a court appearance in the case. Pleadings may be reviewed by the judicial officer and appearances requested if necessary to determine whether the proposed judgment complies with the law. A goal of caseflow management should be to minimize or eliminate the need for court appearances in those cases that can be resolved by default or agreement of the parties.

8. **Resources available for settlement**. Settlement assistance should be available throughout a case to assist parties in resolving all or a portion of their cases. However, these services should not limit a party's right to a full and fair hearing with a judicial officer of any issues in dispute.

9. **Cases requiring hearings and trial.** Direct involvement and case management by a judicial officer is required in some cases with substantive and/or procedural issues and complexities. Effective caseflow management practices should increase the availability of judicial officers to hear those matters not suitable for resolution by default or agreement of the parties. For example, every effort should be made to ensure a prompt initial hearing before a judicial officer in cases involving alleged child abuse or domestic violence. The judicial officer should assess the case and should limit the use of ancillary experts such as custody evaluators who are paid for by the parties to those cases in which it is necessary.

10. **Flexibility in design.** Statewide caseflow management rules should give local courts flexibility in designing procedures consistent with the resources of the court provided those procedures are not inconsistent with the due process concerns articulated by the Supreme Court's decision in *Elkins*. For example, a large court may choose to hire experienced attorneys to review case pleadings and monitor cases, while a smaller court may be able to accomplish this with a judicial officer and existing court staff. Some existing automated case

23

management systems can be programmed to signal checkpoints by use of more sophisticated variables (such as checking when a self-represented litigant has not filed a proof of service within two months of filing the petition) and can automatically generate notices regarding service requirements, while others require significant staff time to conduct such reviews. While best practices are being established in the area of family law caseflow management, it is particularly important to allow courts to conduct pilot projects to test the most effective ways of offering services.

11. **Efficient use of time.** We should not require that every family take the time to appear before a judicial officer or other officer of the court if that is not needed for the prompt and just resolution of their case. Caseflow management procedures need not necessarily require a court hearing or mandatory appearance if it appears that the matter can be resolved and/or adequately monitored by the court without direct judicial involvement. Furthermore, in all cases, the court should encourage innovative alternatives to personal attendance at case management conferences, such as telephone appearances or e-mail statements regarding the status of the case when appropriate. Court time should be used in a productive manner for litigants, counsel, and judicial officers.

12. **Courtroom management tools—legislation required.** Judicial officers should, with input of the litigants and their attorneys, have the ability to control the manner and pace of the litigation by a method appropriate to each case, consistent with the Code of Civil Procedure, which may include establishing discovery schedules and cut-off dates, setting dates for exchange of expert witness information, and other pretrial orders. Under current law these orders can be made in family law cases only upon stipulation by the parties.

Judicial officers in family law should have the same authority to work with the parties to develop case management plans that judicial officers have in other types of civil cases. These plans may include early neutral case evaluation, consensual dispute resolution, a discovery plan or limitations on discovery, use of telephone conferences, the appropriate waiver of requirements of procedural statutes, jointly selected or court-appointed expert witnesses, bifurcation of issues for trials, and allocation and awarding of attorney fees and costs. Establishing such a plan can eliminate unnecessary motions, encourage timely resolution of the case without using unnecessary experts, and identify areas where early settlements are possible, thereby saving the parties significant costs without compromising their due process rights.

Legislation should be pursued to authorize the Judicial Council to promulgate rules giving judicial officers the authority to manage family law cases from initial filing through postjudgment. Family Code sections 2450, 2451, 2032, and 2034 should be modified to provide the courts with greater authority and flexibility to more effectively manage the full range of family law cases. Any legislation should ensure that judicial officers do not have more rights than they currently have to appoint ancillary professionals to whom that the parties have not agreed.

13. **Monetary sanctions and reimbursements.** Rule 2.30 of the California Rules of Court (Sanctions for rules violations in civil cases) should be amended to include family law matters, or a similar rule should be adopted into the family law rules. Currently, the only option that a judicial officer has for sanctioning inappropriate or delaying behavior is to order the offender to pay a portion of the other party's attorney fees. This should be expanded to allow imposition of sanctions that the attorney should pay, not the interested party. In addition, where parties are self-represented, the judicial officer should be permitted to order the parties to reimburse the opposing party for costs such as time off work, transportation to court, and similar expenses.

14. **Written orders after hearing.** Whenever possible, the preparation of orders after hearing should be incorporated into the court's process: the orders would be completed by court or self-help staff and reviewed by the judicial officer within a set time period (preferably immediately after the hearing) and a copy served on all parties, including attorneys who appeared. In cases where counsel is directed to prepare orders after hearing, clear rules should be established for their timely preparation and review.

Self-represented parties who reach a settlement without a hearing should also be assisted in preparing written agreements that will be filed with the court.

15. **Systems to finalize older cases.** Courts should establish a process to examine files and determine whether divorce and parentage cases filed before case resolution procedures were instituted are actually final and also should establish a mechanism to alert litigants if additional steps need to be taken to complete those cases. This effort should be publicized with the goal of encouraging litigants and attorneys to check their own files to see if their cases are completed in the event they have moved and the court cannot notify them of problems.

16. **Time standards.** Family law matters currently have no time standards for completion other than a limitation that the parties to a dissolution of marriage cannot be restored to the status of single persons until six months have elapsed from the date of service. Because of limited resources, courts prioritize those matters that have time standards, such as criminal, juvenile, and civil matters. The Judicial Council should adopt rules setting out a framework for timely disposition of family law cases. These rules should recognize that some cases need significantly more time than others because of the complexity of the issues or desire of the parties to have additional time to attempt reconciliation, but they should also recognize that most litigants would like to have their matters resolved promptly. Any preliminary standards should be studied and reviewed. Based on current information and procedures in effect in other jurisdictions, realistic goals for reasonable case completion by the courts might include the following time standards:

- Twenty percent of cases should be resolved within 9 months from petition to judgment. This would include default and stipulated matters.
- Seventy-five percent of cases should be resolved within 18 months from petition to judgment.
- Ninety percent of cases should be resolved within 24 months from petition to judgment.

## B. Preserving the Right to Present Live Testimony at Hearings

*In re Marriage of Reifler* (1974) 39 Cal.3d 479 [114 Cal.Rptr. 356] held that evidentiary declarations may be used in lieu of live testimony in a postjudgment modification of support and attorney fees. *Reifler* has been widely interpreted to allow broad judicial discretion about whether or not to take live testimony at hearings on requests for orders or simply make decisions based solely on the supporting declarations. Currently, many overburdened family courts appear to have responded to the press of business by essentially prohibiting the right to present live testimony at all hearings on an order to show cause or motion, regardless of the issues involved.

Live testimony enhances the court's ability to make critical determinations regarding credibility when written declarations submitted to the court contain conflicting facts and hearsay statements. Unfortunately, declarations can become lengthy and contain statements based on hearsay or otherwise inadmissible statements. Such declarations require the opposing party to respond with written objections to the inadmissible matter in these declarations. The paperwork on a single motion can become massive and seriously lengthen the time an attorney must spend on preparation of and responding to declarations and the time judges must spend reviewing the paperwork and ruling on numerous written objections.

> *"Live testimony should be allowed …
> Bench officers can get a better sense of
> the personalities and problems of
> parents.  Litigants need to feel heard
> and understood which enhances
> compliance with orders."*
>
> *~ Judge*

Statutory and case law related to the right to present live testimony at hearings is based on a body of civil cases mainly unrelated to family law. There are many applications for procedural orders in family law that fit well into this body of law. However, family law cases also involve many pretrial motions for temporary relief that request substantive relief regarding the fundamental issues in controversy. Parties in family law cases need immediate orders for child custody, support, and protection from violence. In some cases, these temporary orders can last longer than those granted in a judgment because judgments for custody and visitation can always be modified as circumstances change. Temporary orders for child support, spousal support, and attorney fees may be appealed immediately. The significance of the impact on the daily lives of

27

the parties made by custody, visitation, and support orders is not necessarily determined by whether those orders were granted at a hearing before a trial, based upon a trial or agreed-upon judgment, or at a hearing to modify that judgment. These hearings on issues fundamental to the case are substantially different from purely procedural motions, such as those occurring in civil litigation.

Thus, it is extremely important that judicial officers get the information they need to make these important substantive family law decisions at all points in the case—not just at trial or at a modification of a judgment. The manner in which these applications for orders are handled varies widely among California courts. Some courts rely almost exclusively on supporting declarations in the decisionmaking process while others routinely take live testimony from litigants.

> *"My clients hate the fact that they cannot testify in most proceedings, which are based on affidavits."*
>
> *~ Attorney*

According to the surveys conducted and the response of the members of the public who presented testimony to the task force, these limitations on the right to present live testimony and the resulting exclusive use of declarations are significant concerns to attorneys and the self-represented alike. Responding attorneys and litigants have made it clear that the ability of litigants to testify at their hearings on such important substantive issues is critical to their perception of procedural justice in the family court. Making decisions based on declarations regarding issues fundamental to the case while prohibiting litigants from testifying or from proposing to present additional evidence deprives litigants of their day in court and frequently increases workload for attorneys and judicial officers.

The need to provide litigants the opportunity to testify at hearings on their requests for substantive relief does not have to mean extensive hearing time because judicial officers can control the scope of the testimony that is presented pursuant to the California Evidence Code. Judicial officers in family law courts around the state have found that they can take relevant live testimony in an efficient and effective manner on an ordinary order-to-show-cause or noticed-motion calendar with litigants being sworn and routine examination and cross-examination proceeding from counsel table.

The Elkins Family Law Task Force recommends:

1. **Rule of court.** The Judicial Council should adopt this recommendation as a California rule of court. Existing rule 5.118 (f) should be amended in conformance with this recommendation.

28

a. **Live testimony.** At the hearing on any order to show cause or notice of motion (or request for order) brought pursuant to the Family Code, absent a stipulation of the parties or a finding of good cause, the judge must receive any live, competent testimony that is relevant and within the scope of the hearing and may ask questions of the parties.

> *"This issue [live testimony] goes to the heart of due process, and the ability of the court to make correct decisions based on reliable information."*
>
> *~ Attorney*

b. **Good cause exceptions.** A finding of good cause not to receive live testimony should be made on a case-by-case basis. If the court makes a finding of good cause not to receive live testimony, it must state its reasons on the record or in writing. In making a determination of good cause not to receive live testimony, the court must consider the following:

1) Whether the issues relate to substantive matters such as child custody, parenting time (visitation), parentage, child support, spousal support, requests for restraining orders, or the characterization, division, or use and control of the property or debt of the parties;
2) Whether material facts are in controversy;
3) Whether the credibility of the parties or other witnesses needs to be assessed;
4) The complexity of the issues involved;
5) The right of the parties to question experts or investigators submitting reports or other information to the court;
6) Whether other relevant evidence on which to base a decision is necessary;
7) Whether the pleadings adequately provide the facts the court needs for a determination of the issue;
8) Any other factors that the court reasonably determines are relevant to the inquiry.

c. **Additional evidence from witnesses other than the parties.** Each party seeking to present live testimony from witnesses other than the parties must file and serve prior to the hearing a witness list with a brief description of anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing.

### C. *Providing Clear Guidance Through Rules of Court*

Because family law is a type of civil case, many of the statewide civil rules of court apply to family law proceedings, but others do not. It is confusing and difficult for an attorney, let alone a self-represented litigant, to be able to navigate the various rules that apply to family law. Statewide family law rules do not address many areas of practice, and thus trial courts have developed rules and procedures to address the gaps. Unfortunately, local rules may serve as traps for the unwary. Rule 1.6(9) of the  California Rule of Court  defines "local rule" as "every rule, regulation, order, policy, form, or standard of general application adopted by a court to govern practice and procedure in that court or by a judge of the court to govern practice or procedure in that judge's courtroom." Currently, local rules vary widely from court to court, and sometimes from courtroom to courtroom within the same court. Attorneys can frequently have problems in following local rules, and these issues are exacerbated for the self-represented. If we are to ensure that all family law litigants are similarly treated, then we should provide consistent rules about what is expected in court.

Pursuant to rule 10.20(c), the Judicial Council should establish uniform statewide practices and procedures where appropriate to achieve equal access to justice throughout California. Courts must ensure that all family law litigants are similarly treated and afforded meaningful access to justice. To do so requires consistent rules about what is expected in court. Consistent rules will facilitate the education of judicial officers, clerks, attorneys, and litigants regarding the proper procedures to follow. Limiting the scope of local rules will assure attorneys who practice in more than one county that if they comply with the California Rules of Court on a particular issue, they will not violate a local rule and the rights of their clients will not be put at risk.

> *"For local rules it is kind of crazy, because you have the same law being administered in different ways in 58 counties. I think more uniformity would be good. I would like to see that."*
>
> *~ Family Court Staff*

The Elkins Family Law Task Force recommends:

1. **Statewide family law rules.** The family law rules should be revised to be more comprehensive in order to provide greater statewide uniformity in family law procedures. The rules should incorporate best practices from local courts that lend themselves to statewide implementation. Examples of matters that should be covered by statewide rules

30

include pleadings, ex parte requests, declarations and evidentiary objections, financial disclosures, case management, discovery, sanctions, pre-trial preparation, settlement conference and trial, dismissals, preparation and processing of orders and judgments, meet-and-confer requirements, continuances, and attorney fees and costs. The rules should be written in plain language and organized logically.

2. **Centralized statewide rules.** The Judicial Council should identify all relevant statewide rules of court and organize them into a unified family law section that references all general rules of court as well as the civil rules, such as those pertaining to discovery and settlement sanctions that are applicable to family law. This would enable judicial officers, attorneys, and self-represented litigants to quickly find appropriate rules and be aware of the variety of rules that pertain to family law. The rules should strive to simplify the procedures that parties must follow. To the extent that complexity is caused by statute, legislation should be proposed to address these issues.

> *"I think there is a lot of confusion as to which rules apply to family law and which rules don't apply."*
>
> *~ Attorney*

3. **Local rules.**

   a. Local courts should be encouraged to continue to pilot innovative family law programs and practices by use of local rules that are not inconsistent with California law or the California Rules of Court. Rule 10.613 sets out the steps courts must take in order to adopt a local rule including the requirement that, except for rules specifying the time of hearing and similar calendaring matters, the court must distribute each proposed rule for comment before it is adopted, and that local rules must be available online or in publications available in public law libraries.

   Local rules must be consistent with the California Rules of Court and should not cover those areas of procedure or law specifically addressed by statute or the California Rules of Court. Local rules should not set court evidentiary "policies" or standards inconsistent with the Evidence Code. Local rules should be limited to policies, practices, and procedures that are not applicable on a statewide basis, such as how departments are organized, hours of operation, and scheduling.

   b. **"Local local" rules.** Judicial officers should not impose "local local" (courtroom specific) rules. Some judicial officers have developed their own "local local" rules or

31

standing orders for their courtrooms. This makes compliance extremely difficult for those who are unaware of those rules, including self-represented litigants and attorneys who do not regularly practice before that judicial officer.

Local rules are circulated for public comment and review prior to adoption. They are also available for anyone to find online and in publications. These procedures provide critical protections for due process and access to the courts. While case-specific orders are appropriate for managing individual cases based on their specific issues and other features, general rules for a courtroom that are only applicable to that courtroom pose substantial barriers to access.

## D. *Streamlining Family Law Forms and Procedures*

Family law proceedings in California are largely form-driven. Statewide forms were initially developed in 1971 upon the passage of the Family Law Act, which instituted no-fault divorce. They were designed to assist attorneys in fully pleading their cases and judicial officers in deciding the elements of cases given that major change in the law. Standardized forms allow for ready development of computerized forms completion programs and make it easier for regular form users to find the information required and relief requested because of standardized placement.

> *"…Streamlining…that would prevent ongoing litigation and reduce costs for both the court and the parties."*
> *~ Litigants, Advocates*

The standardization of the forms statewide has provided a framework for some basic uniform procedures in family court processing; however, the number, variety, and complexity of forms have increased dramatically over time. Not all the forms are easily usable by attorneys and self-represented litigants. Furthermore, courts have created their own local forms and procedures to address matters not covered at the state level. The differences in procedures among the local courts make meaningful access difficult for attorneys and self-represented litigants who are unfamiliar with local practices.

The Legislature has specifically directed the Judicial Council to develop certain procedures and forms with self-represented litigants in mind. The council intends that statewide forms be made more accessible to attorneys, the court, and self-represented litigants alike.

There are also family law tasks that should not involve complex procedures, such as submitting agreements to the court. An important goal of the family court should be to identify those tasks and ensure that attorneys and self-represented litigants are not burdened with unnecessarily bureaucratic processing steps or paperwork.

The Elkins Family Law Task Force recommends:

1. **General form review.** Forms should be easy to use, allow parties to provide critical information requested by the court, and be readily accessible.

   a. **Judicial Council forms.** Family law forms should be reviewed with the goal of making them clear and easy to complete.

   b. **Local forms**. Just as there are many local rules that contain helpful provisions that statewide rules of court do not currently address, many courts have excellent local forms. These forms should be reviewed to determine those that might be adapted for statewide use. Local forms should not be in conflict with statewide Judicial Council forms. If local forms are adopted, they should be specified for optional use.

   c. **Translations of forms.** Commonly used forms should be translated into languages commonly spoken in California. While court forms must be filed in English, translated forms allow litigants with limited English proficiency the ability to understand what written information to provide to the court and what the court has ordered.

2. **Simplifying forms for litigants who are in agreement.** Parties who are able to reach agreements and choose not to have court hearings should be given more streamlined options to process their cases. Making the process easier for those parties who have agreements will give court staff more time to assist those parties who do need the assistance of the court.

   a. **Simplified stipulated judgment process.** Legislation should be sought to create a simplified stipulated judgment process that would be available to parties who are able to reach an agreement prior to filing initial pleadings with the court. This new procedure would enable the parties to submit a joint petition, with full preliminary and final disclosures exchanged prior to or as part of filing of the petition. A proposed judgment would be submitted at the same time. As compared to the current summary dissolution procedures, there would be no restrictions on children, property, or length of marriage. The parties would have the full right to set aside or modify the judgment after it is entered as allowed or restricted by current law.

   b. **Summary dissolution process.** Legislation should be sought to modify the current summary dissolution process to allow the parties to file their proposed judgment at the time of filing the joint petition and having that judgment go into effect six months after the petition has been filed without requiring litigants to file additional pleadings. Parties would retain the ability to revoke the summary dissolution pleadings. Family Code section 2400 should also be amended so that the five-year limitation on use of this procedure should be measured from the date of marriage to the date of separation, rather than as currently, from the date of marriage to the date of filing the joint petition.

3. **Simplify forms for motions.** Litigants in family law cases currently have two ways to bring an issue before the court: a notice of motion and an order to show cause. In most counties, these motions are used almost interchangeably. In other counties they are used for distinct purposes, although the intended differences are not written and may not be clear to self-represented litigants or attorneys who do not regularly practice in the county.

**Develop one comprehensive Request for Order form.** To eliminate confusion and to standardize practice across the state, the Judicial Council should develop a new *Request for Order* that would replace the *Order to Show Cause* (FL-300) and the *Notice of Motion* (FL-301), for use in all matters except domestic violence and contempt (which currently have specific forms). The new form would incorporate the current *Application for Order and Supporting Declaration* (FL-310), which is an attachment to those two documents. The *Request for Order* would be used in those matters where it is not jurisdictionally necessary to use an order to show cause. The *Request for Order* would also be used for those matters that are motions as defined in the Code of Civil Procedure. The inconsistent statutory provisions in the Code of Civil Procedure, Civil Code, civil rules of court, and family rules of court regarding motions and law and motion practice need to be reconciled. Instructional materials regarding the *Request for Order* and its use should be developed.

4. **Simplify forms for discovery.** Many attorneys have indicated that the procedures for discovery are cumbersome and impose unnecessary fees when parties do not comply with discovery requests. *In re Marriage of Feldman (*2007*)* 153 Cal.App.4th 1470 [64 Cal. Rptr. 3d 29] has noted the critical importance of exchanging information in family law matters. All forms should be reviewed with that principle in mind.

> *"If anything could be adopted first I would hope form changes would be adopted. Form changes and supporting new laws to simplify dissolutions…will go a long way to simplify the process."*
>
> *~ Attorney*

a. **Declaration of disclosure forms.** Declaration of disclosure forms should be reviewed for the purpose of simplifying and streamlining them. This includes the *Declaration of Disclosure* (FL-140), *Declaration Regarding Service of Declaration of Disclosure and Income and Expense Declaration* (FL-141), *Schedule of Assets and Debts* (FL-142), and *Income and Expense Declaration* (FL-150). Instructional materials should be developed to help parties fully and accurately complete the forms and make full disclosure as required. Disclosure forms should add a provision that the parties have exchanged all tax returns that they have filed for the last two years. Deadlines should be established through rules of court or legislation for the completion and service of preliminary declarations of disclosure so that they are served either concurrently with the petition or within 60 days of filing of the petition for the petitioner and concurrently with the response or within 60 days of filing of the response for the respondent. In no event should a default judgment be entered prior to the service of the petitioner's declaration of disclosure. When no property or spousal support is at issue, the requirement of the preliminary and final declaration of disclosure can needlessly delay the resolution of a case. Legislation should be considered to allow a judicial officer discretion to excuse the preliminary declaration of disclosure in appropriate cases.

b. **Expanded discovery forms**. While much need for discovery could be eliminated by full compliance with declaration of disclosure requirements, other cases will continue to need discovery tools. Rather than requiring formal discovery devices, the Judicial Council should consider other methods to encourage full exchange of information. It should consider

developing a production-of-documents form for family law similar to what is available in civil cases. A form for a motion to compel discovery should also be considered.

5.  **Simplify procedures for service of process.** The following recommendations regarding difficulties with service of process are designed to encourage clarity and more effective service of process.

   a. **Service by posting.** When litigants are unable to locate the other party, there should be procedures to allow for service by publication after good cause is shown to the court. Indigent litigants who cannot afford the costs of newspaper publication should be able to ask the court to post the pleadings on a bulletin board at the courthouse. To increase the likelihood that the respondent will actually get notice of the pending case, the Administrative Office of the Courts (AOC) should investigate the possibility of establishing a Web site for documents that are to be served by posting.

   b. **Clarification of service requirements on certain postjudgment motions.** Family Code section 215 should be amended to clarify that service of postjudgment requests to modify custody, visitation, or child support can be served on the opposing party by mail, even though service on the attorney of record may not be sufficient if no prior postjudgment modification activity has occurred. Personal service on the opposing party is not required by section 215. If service is made by mail, proof of service must include verification of the responding party's current address. The Judicial Council should consider developing a form for a proof of service for these postjudgment motions using language similar to that in form MC-052, *Declaration in Support of Attorney's Motion to Be Relieved as Counsel—Civil*, which sets forth the various efforts to ensure proper service on the client. Courts should retain their inherent ability to set aside orders when they find that no actual notice has occurred.

6. **Simplifying procedures for establishing parentage.** Far too many litigants believe that they have established parentage when the court has made temporary custody and support orders. They do not file the necessary forms to obtain judgments of parentage, which can cause great problems if one of the parents dies and social security and other benefits are implicated.

   a. **Uniform Parentage cases.** A checkbox should be added to the *Application for Order and Supporting Declaration* (FL-310), asking that a judgment be entered if parentage is established at a hearing regarding child custody, visitation, or support.

   b. **Dissolution cases.** The *Petition—Marriage* (FL-100) and *Petition—Domestic Partnership* (FL-103) should be modified to make it a presumption that parentage is established for any children of the relationship who were born to the parties prior to the marriage or for whom both parties are named on the birth certificate or where there is a written obligation to provide support (as set forth in Family Code 7611). A provision allowing the parties to ask for parentage testing so this issue can be resolved early in a case should also be added.

7. **Declaration Templates.** Declarations, which are attached to requests for orders, provide important information to the court and the opposing side in a case about what is being requested to allow them to prepare for the hearing. All too often declarations cover issues that are not material to the issues before the court, are inflammatory, and contain inadmissible hearsay. To provide a framework to enable attorneys and self-represented litigants to prepare appropriate declarations, templates that identify the types of information that the court will need to determine specific issues should be developed. Models from courts where such templates have been developed in collaboration with the bar and bench should be examined. Page limits for declarations should be considered to encourage the declarant to focus on relevant issues.

8. **Agreement templates.** When self-represented litigants have reached agreement about issues in their case, they often have difficulty preparing a written document that clearly sets out the terms of their agreement.

   a. **Standard parenting plan template.** A standard agreement should be developed to allow the parties to prepare agreements in custody and visitation matters online or by using a form template that is available in the court.

   b. **Other sample agreement templates.** Sample agreements that include language required by statute should be developed for other common issues. One might be a template to allow parties and their counsel to stipulate to change venue rather than file a motion in court if change of venue is appropriate. The reason for the change of venue should be clearly stated so that the court can verify that appropriate grounds for the change exist.

## *E.  Standardizing Default and Uncontested Process Statewide*

Judgment processing procedures differ from county to county and from one court location to another even within the same county. Local rules provide differing methods in which default and uncontested judgments are to be processed and served. This creates confusion for attorneys, litigants, and court staff as well as systemwide inconsistency. Significant percentages of default and uncontested paperwork are rejected as inaccurate or incomplete and returned repeatedly before ever being finalized because attorneys and self-represented litigants face an array of differing requirements in completing these processes. The current situation poses a significant burden on the public and on court staff and serves as a major source of frustration and delay in disposition.

A consistent statewide procedure for submitting and filing default and uncontested judgment should be established.

The Elkins Family Law Task Force recommends:

**Uniform default and uncontested process.** The Judicial Council should adopt a rule of court setting out a statewide uniform protocol for the processing of default and uncontested family law judgments submitted pursuant to Family Code section 2336.

a.  **No additional requirements.** Courts must not adopt a local rule or standing or general order imposing requirements beyond those stated in the California Rules of Court for the filing of needed paperwork related to default or uncontested family law judgments being submitted pursuant to Family Code section 2336.

b.  **Full review of documents.** To avoid multiple submissions of paperwork and ensure that all errors and omissions are identified as early as possible, the court must completely review the documents for default or uncontested judgments submitted pursuant to section 2336 before any of the documents can be rejected and returned to the attorneys or self-represented litigants who submitted them. All errors and omissions must be identified and highlighted, and instructions for correction of the defects must be included in any rejection and return of the paperwork to attorneys or self-represented litigants. Courts should adopt protocols for document review that contain timelines for review and methods of addressing multiple rejections.

c.  **Hearing only if necessary.** Courts should be required to allow judgments in default and uncontested cases to be submitted by declaration pursuant to section 2336 and should not implement by local rule or standing or general order a requirement that a hearing be conducted in all such cases.

38

## F.  Scheduling Trials and Long-Cause Hearings

Many major trials and hearings are not heard completely in one or more consecutive court sessions but instead are broken up into multiple shorter sessions, sometimes separated by many weeks or months. This scheduling practice is ineffective and inefficient for everyone. It significantly increases the aggregate time that trials and long-cause hearings take because judicial officers need time to make detailed notes and review them to facilitate their recollection of previous sessions. It increases attorney preparation time and expert witness preparation, adds to litigants' financial costs and anxiety, and can result in unprofessional treatment of the issues at hand. Combined with good caseflow management, scheduling trials and long-cause hearings so that they can be completed without undue interruption can be effectively implemented within a direct calendaring system in family law just as it has been in other civil case types.

Family courts must also recognize some of the other burdens placed on attorneys, their clients, and self-represented litigants when trial scheduling is poorly managed. For example, litigants can lose time from work needlessly, attorney' fees increase, and frustration mounts as litigants and counsel wait at the courthouse only to be sent home at the end of the day without having had their cases heard. Good trial scheduling in direct calendar departments requires ongoing time estimation by both attorneys and judicial officers and good communication among the bench, the bar, and the self-represented litigants whose cases are set for trial. For example, if a trial is running longer than estimated, then the court should give as much notice as possible to the attorneys or self-represented litigants in the next scheduled case or cases so that they can readjust and plan their own time accordingly.

> *"Under the family code, custody cases are entitled to preference and there are a lot of judges that give you a half day here and a half day six months later and a half day another six months later. And the infant you began with isn't the child you [end] the case with…."*
>
> *~ Attorney*

While cases are best served by the goal of having the same judge preside throughout the family law case as set forth in Family Code section 2330.3, the benefits of that practice may be outweighed by the importance of timely completing a trial or long-cause hearing. Day-to-day trials can be difficult for smaller courts to implement and may require additional judicial resources, but family law trials should not be treated differently than other civil trials, which are generally completed in a timely manner. Courts may want to assign civil trial judges with family law experience to hear trials, particularly those principally involving financial issues. Best practices in scheduling these hearings should be shared to assist in implementation.

The Elkins Family Law Task Force recommends:

**Scheduling trials and long-cause hearings.** To enhance the quality of family law trials and long-cause hearings, improve court efficiency, and reduce costs to litigants, the Judicial Council should adopt a rule of court requiring that long-cause hearings and trials that cannot be completed in one day must, absent a finding of good cause, be continued to the next day routinely designated by the court for trials.

> *"Trials and long cause hearings which are broken up in pieces are the prime example of the most inefficient and wasteful way to underutilize our scant court resources. Each time, the judge has to not only be reminded of what went before (because they've had dozens if not hundreds of matters in the intervening time), but attorneys have to bring them up to speed on what has changed in the interim. Bank balances have changed, jobs have changed, new issues have popped up, and the original time estimate inevitably becomes inadequate. A case which will take three days to litigate sequentially may take twice that long if spread over a 6–9 (or longer) month period. This is unreasonably expensive for the attorneys, difficult for the judges, and impossible for pro pers."*
>
> *~Attorney*

a. **Procedure.** Once a trial or long-cause hearing is commenced, it should take precedence on the trial calendar over trials or long-cause matters that are not otherwise entitled to calendar preference and that have not yet commenced. Judges should take appropriate action to ensure that all parties are prepared to proceed, that the trial or long-cause hearing commences as scheduled, that all parties have a fair opportunity to present evidence, and that the trial proceeds to conclusion without unnecessary interruption.

b. **Calendar management.** Judges must consult with attorneys and self-represented litigants before a trial or long-cause hearing in order to set reasonable time limits and to ensure that momentum is maintained once a trial has begun. Judges must attempt to maintain continuity in days and hours of trials and long-cause hearings. A mistrial must not be declared solely on the basis of an inaccurate time estimate by attorneys or self-represented litigants.

c. **Notice.** Should the court be unable to commence a trial or long-cause hearing as scheduled, the court should provide notice to attorneys and self-represented litigants at the earliest possible opportunity and reschedule with the goal of avoiding needless court appearances and time lost from work.

d. **Court organization.** Courts should structure judicial assignments and calendars to facilitate compliance with this rule.

## G.  *Improving Domestic Violence Procedures*

The Elkins Family Law Task Force endorses the recommendations developed by the Judicial
Council's Domestic Violence Practice and Procedure Task Force as received and approved by
the Judicial Council and contained in the task force's report dated January 2008. The report can
be viewed at: www.courtinfo.ca.gov/jc/documents/com/dvpp_judicialcouncilreport.pdf. The
Elkins Family Law Task Force also supports the work currently being undertaken to implement
those recommendations. In recognition of the need to address areas not covered by the Domestic
Violence Practice and Procedure Task Force, we have developed the following additional
recommendations for improving the handling of domestic violence matters in family law.

The Elkins Family Law Task Force recommends:

1. **Survival of orders.** The Judicial Council should sponsor legislation to clarify whether support
   and custody orders survive the termination of a permanent restraining order. Under existing law,
   it is not clear whether custody and support orders remain in effect upon expiration of the
   permanent restraining orders.

2. **Parentage and domestic violence cases.** The Judicial Council should sponsor legislation that
   would authorize family law courts hearing Domestic Violence Prevention Act (DVPA) cases to
   accept stipulations regarding paternity and enter parentage judgments in uncontested parentage
   matters without the parties' having to file separate parentage actions. This procedure would
   support increased access to the courts, use court resources more efficiently, and more effectively
   protect children in these matters.

3. **Family law court access to Paternity Opportunity Program.** To facilitate the making of
   parentage determinations and appropriate custody and support orders, all family law judicial
   officers should be provided with greater access to the Paternity Opportunity Program (POP)
   declarations provided to the court. Such access should include proper training and protocols to
   protect confidentiality.

4. **Procedural changes.** Any procedural changes courts make must preserve the due process rights
   of the parties and protect the right to a fair hearing in which a party is permitted to give
   testimony and call witnesses, subject to the court's ability to properly control the process.

5. **Custody and visitation (parenting time).**[8] When allegations of domestic violence are raised
   and child custody is at issue, the court should consider (1) whether to order an investigator to
   gather facts about the child's best interests and submit those facts to the court, and (2) what

---

[8] The task force recommends the use of the term "parenting time" to refer to visitation, where appropriate. See
recommendation II.A, page 48.

41

custody and visitation arrangements, including supervised visitation or exchange, may be appropriate to protect the child's safety.

6. **Children's participation.** Just as in cases involving abuse and neglect, the court must give appropriate consideration to the question of whether the child's point of view and the information the child has regarding the domestic violence would be probative in determining the risk posed to the child and the ultimate decision regarding his or her best interest.

7. **Settlement processes.** The court, in referring or ordering litigants to settlement processes, must consider whether domestic violence is an issue in the case and ensure that such orders include provisions for meeting separately with litigants so as to provide safe and appropriate services. Information should be provided to ensure that victims of domestic violence and others who may face power imbalances in the family relationships are aware of their options and do not feel forced to settle their cases. Those parties should not be required to meet jointly. Professionals providing such services should be trained to recognize and handle domestic violence cases.

8. **Form changes.** The Judicial Council should make appropriate changes in the relevant existing forms to accommodate these changes.

9. **Statewide consistency.** Local domestic violence procedures must conform to statewide rules of court and current statutory requirements.

## *H.  Assessing Mechanisms to Handle Perjury*

One common problem that family law litigants face is the frustration that comes from the belief that information being presented to the court is false. While there are many situations where people remember situations differently or the information that is contested has no real relevance to the decision made by the court, intentionally false statements can have serious consequences in family law cases. Currently two avenues for relief are available when perjury occurs in a lawsuit. One avenue is referral for criminal prosecution by an agency of the executive branch of government, i.e., the district attorney. This alternative does not result in many criminal filings, and it is beyond the purview of this report to determine why prosecutorial discretion is often exercised in favor of declining the case. The only other alternative is a civil sanction. Yet existing statutory civil sanctions are limited in nature and tend to apply only to specific situations, such as declarations of disclosure (Fam. Code § 2122 (b)), false allegations of child abuse, (Fam. Code § 3027.1), and perjury resulting in a child support order, (Fam. Code § 3691(b)).

The Elkins Family Law Task Force recommends:

**Assessing mechanisms to handle perjury.** The Judicial Council should assess the adequacy of existing civil remedies to respond to all types of perjury, oral and written. If necessary, the Judicial Council should seek legislation to expand the type of sanctions awardable to include, for example, restitution or fines, not just attorney fees. To the extent not already allowed, issue preclusion and evidentiary sanctions could be explicitly made available as remedies. Civil sanctions for perjury could also be extended to case types and situations beyond the currently limited scenarios of false declarations of disclosure, child support, and false child abuse allegations. If the Judicial Council decides to pursue additional remedies, it should consider whether the expansion of civil remedies for perjury should apply to all civil cases and not just family law. This would signal that the commission of perjury in a court setting is a serious matter and that judicial officers need sufficient tools to address situations when it occurs.

> *"The perception that there is no remedy for perjury must be changed."*
>
> *~ Attorney*

## II.     More Effective Child Custody Procedures for a Better Court Experience for Families and Children

Child custody issues are among the most sensitive issues that the family courts must decide. For over 30 years, California's policy has been to encourage parents to decide these issues themselves through the provision of mediation services. But like other areas of the court, mediation services in most courts have become severely under-funded, and mediators are often unable to give parties the time they need to resolve their disputes.

While in most cases the parents are able to reach agreement about how they will share the responsibility of raising their children, a relatively small number of cases still need to be heard by a judicial officer. Judicial officers need as much information as possible about the children and families before making these decisions even when that information is difficult to obtain. The family courts have used a variety of tools to help judicial officers get that information. These recommendations reflect identified best practices, and suggest areas for testing different approaches.

*"To expect laypeople to make thoughtful custody arrangements after a 90 minute meeting with a stranger, however well trained that stranger may be, is unrealistic and unfair to the family."*

*~ Attorney*

44

## A.  Improving Contested Child Custody Procedures

Contested child custody matters often involve complicated issues with long-term implications for families and children and, in some instances, require significant court resources. Since 1981, California has mandated that contested child custody matters be sent to mediation where parties have the opportunity to develop a parenting plan on their own prior to a final judicial determination regarding the care of the children. Over the years, courts have developed a variety of approaches to providing child custody mediation services as well as related services designed to reduce acrimony and respond to the needs of families.

Since 1981, the law has provided that court-connected child custody mediation is confidential, but that recommendations may be made to the court under specific circumstances, usually when the parties are unable to agree on a parenting plan (see Fam. Code, §§ 3177, 3183 & 3184). The statutory framework that supports confidentiality while also allowing for recommendations in specific instances reflects two important goals in family court:

- Supporting parental decisionmaking by assisting in effecting settlement of child custody disputes; and
- Providing the court with good information on which to base its decision when parents are unable to agree on parenting time (i.e., custody and visitation issues).

Depending on their resources and court culture, California's family courts have attempted to address these goals in a variety of ways. Courts have responded to the severe underresourcing of family court services and family law courts over many years by developing innovative practices to help them effectively handle a wide variety of contested child custody cases.

The task force heard concerns that some litigants experience confusion when mediators provide recommendations to the court. Some people told the task force that mediators' recommendations often provide judicial officers with much needed information that they might not otherwise receive. The task force also heard from others that allowing mediators to provide recommendations deprives litigants of the opportunity to mediate in a confidential setting. There are strong supporters and detractors for both processes. In its recommendations in this area, the task force seeks to recognize the value of various approaches to assist families in these matters, including not only mediation and facilitation of agreements but also methods of providing information to the court that will assist in judicial decisionmaking. Despite increasing caseloads and changes in the types of cases and litigants appearing in family court (for example, the increased number of self-represented litigants), resources for mediation and other services have been limited, posing additional challenges for courts in attempting to respond effectively to the range of issues that families face. In an effort to improve access to child custody mediation services and improve consistency in the delivery of the services throughout the state, the Elkins Family Law Task Force recommends:

1. **Providing information to the court**

    a. **Information provided by parties.** If the parents are unable to agree on a parenting plan in mediation and the court needs to make a decision about custody and parenting time, the court should provide an opportunity for the parties themselves to provide information directly to the court. Judicial officers need relevant, useful information for making judicial determinations in contested child custody cases, but should not make decisions based solely on the mediator's recommendations. To assist parties in providing the judicial officer with  information about their family's situation, the AOC or the courts should consider developing forms requesting key information (such as the family's work and child-care schedule and locations), providing self-help assistance to parties to make sure relevant information is included in court documents, and offering detailed information during orientation sessions about what the legal process involves and the type of information the court may need from parties.

    > *"[O]ne of my biggest frustrations is that people don't get a resolution of the problem so people they live in limbo and when you look at children you are talking about [a substantial amount] of [their] childhood being caught up in the court process and having no decision."*
    >
    > *~ Family court staff*

    b. **Investigators and evaluators.** In those cases where additional information is needed after the parties have had an opportunity to provide information to the court and the court offers confidential mediation, courts should have investigators and evaluators available. Court orders should clearly indicate whether an investigation (to determine facts and not to make assessments, recommendations, or evaluations) or an evaluation (an analysis that might include an assessment or recommendation) is being ordered. Statutory and rule changes should be made to more clearly identify the services that courts are using in these areas and draw distinctions and clarify terminology where appropriate. Additionally, California Rule of Court, rule 5.220, providing guidance on child custody evaluations and evaluators, should be fully implemented in each court so that the specific scope of the investigation or evaluation is clear to litigants, attorneys, and court-connected or -appointed professionals who conduct the investigation or evaluation.

    c. **Opportunity to respond.** Any information provided to the court by investigators, evaluators, or mediators must also be provided to the parties, and parties must be given an opportunity to explain or respond to such information.

    > *"Greatly curtail child custody evaluations which have been costly and damaging to parental relations. How can a litigant defend such a report when a copy is not given to the litigant?"*
    >
    > *~ Family Law litigant*

46

    d. **Opportunity for cross-examination.** Due process requires that those providing information or recommendations to the court be made available to testify and be cross-examined.

2. **Child custody mediation pilot projects.** Pilot projects should be funded and implemented throughout the state to provide litigants initially with the opportunity to mediate their contested child custody matters confidentially and identify promising practices. Pilot programs should include those superior court jurisdictions in both large metropolitan areas and suburban areas that currently authorize recommendations by local court rule. The programs should be structured so that the pilot courts follow the same procedures and develop uniform protocols for later consideration by other courts.

As part of these pilot programs, if the parties are able to come to a full or partial agreement with the assistance of the mediator, that agreement should be submitted to the court and incorporated into a parenting plan or child custody order. If the parties are unable to come to an agreement, the pilot court should either hold hearings at which the court determines temporary or final custody orders or, under specific conditions, order additional processes, such as investigations or evaluations, to provide information to the court to assist in resolving the child custody dispute. In these pilot courts, this subsequent process should be conducted by someone other than the mediator who provided confidential mediation so as to guard against bias, perceived or otherwise. To ensure due process, these pilot efforts must include procedures to provide parties copies of any reports or recommendations and to enable parties to call investigators or evaluators to testify.

3. **Resources for child custody mediation services.** Courts should allocate sufficient resources for child custody mediation services. They should identify the amount of time a particular case needs in mediation and provide mediation services according to those needs. If necessary**,** courts should increase the time available for initial sessions and/or allow the parties to schedule follow-up sessions. Superior courts that use day-of-court mediation should consider expanding the time available for mediation through expanded use of prescheduled appointments.

4. **Appropriate number of mediators.** Each court should ensure that it has an appropriate number of family court services mediators based on the population of the county and number of child custody mediations in that county. Many courts have trouble recruiting qualified people to serve as mediators. The AOC and the courts should explore ways to expand the pool of qualified mediators.

5. **Access to family court services.** Courts should ensure that parties have the option to request family court services mediation prior to filing a custody/visitation motion. This voluntary service should be confidential, and no recommendation or report should be provided to the court.

6. **Information from mediators, investigators, and evaluators.** To address concerns about procedural fairness and due process, information provided to the court from mediators, investigator, and evaluators should be provided in writing to the parties and their attorneys

before a hearing on the matter. Under Family Code section 3025.5, if recommendations are included in a report from a mediator, investigator, or evaluator, the report must be filed in the confidential portion of the family law court file. The court must give the parties the opportunity to be heard on the recommendations and reports and to cross-examine the person making the recommendation or report. Recommendations should not be presented as final court orders unless and until the court orders that they be incorporated into an order or a judgment.

7. **Child custody language.** The phrase "parenting time" should be used in statutes and rules of court where applicable instead of "visitation." Any statutory or rule changes should state that these changes are not intended to change substantive law but rather to use nomenclature that more respectfully describes the time parents are responsible for, or spend time with, their children.

8.  **Culturally competent mediation services.** Training should address how mediators, investigators, and evaluators can provide culturally competent mediation services so that all litigants, regardless of their background, will have the greatest opportunity to access court services and resolve their disputes effectively.

### B.  Providing Guidance for Children's Participation and the Appointment of Minor's Counsel

When families with children go through the family court system, the children are often affected, whether directly or indirectly, by the court's processes and decisions. In many instances, their participation or input is important to achieve proper resolution of the matter or to ensure that their feelings and desires have been appropriately heard and addressed. Some children want to participate directly in the proceedings, including wanting to testify in court or in chambers. Other children do not want to be caught in the middle of the dispute between their parents. Because of their emotional and psychological vulnerability, it is important that children not be automatically called as witnesses. The court should avoid traumatizing children by unnecessarily involving them in proceedings. Current practices in some courtrooms with respect to children are reported to have had the effect of discouraging children's participation, even when the circumstances pertaining to the child might make testimony or other participation in the case appropriate. In each case, the needs and wishes of the child and the case should be considered by the court in determining the nature and scope of the child's participation.

> *"While I agree that there needs to be a way to hear children's voices, we need to be sure that the voice we are hearing actually belongs to the child, and that we are doing so in a way which doesn't make the child feel like more of a pawn in the process than he already does."*
>
> *~ Attorney*

In contested cases, when determining whether and in what manner a child should provide information, the court should consider whether the child's input has probative value, whether the parents want their child to participate, and whether the needs and wishes of the child make it appropriate. For example, it may be more appropriate to hear from a child in those instances where there is evidence that he or she is interested in testifying in court and is of sufficient age and capacity than in those cases where a child does not show an interest in participating or is not of sufficient age or capacity.

For many years the courts have been successful in helping parties resolve child custody disputes through early intervention programs such as co-parenting education, counseling, and mediation. These programs have helped prevent children from becoming ensnared in parental disputes while appropriately allowing them to express their points of view. In some cases, however, when such efforts prove unsuccessful and the parents wish to litigate, the court must assume the role of decision-maker. In these situations, the court must determine whether the child's input is

appropriate after giving equal consideration to the child's needs and vulnerability. If the court determines that the child's input is necessary and appropriate, the court must consider the best way to obtain the child's input consistent with the child's best interest.

Courts currently have the authority to use evaluators to assist in gathering information and assessing the child's needs. However, in courts that do not have resources to provide investigations, evaluations, or assessments, and the parties present opposing views of their child's wishes; the child's direct participation in court becomes increasingly important. If the court determines that the child should testify, the court should then consider how to obtain the child's testimony. If the child does not want to testify in open court, other avenues such as questioning the child in chambers should be explored provided the parents' due process rights are protected.

The Elkins Family Law Task Force heard from many people about the importance of finding ways to both include children, where appropriate, and protect them when necessary from additional, case-related conflict. In order to include the child's voice, the family law process should be designed to:

- Protect the child from psychological, damage from feeling caught in the middle, and from confusion about the process or not knowing what to expect;
- Allow for meaningful participation by the child, when appropriate, in proceedings on the record (similar to juvenile court), or through other processes, such as participation in mediation or evaluation
- Allow judicial officers to retain discretion in determining whether or not the child's testimony is needed. When that testimony is necessary and appropriate, the judicial officer should follow established guidelines for determining the manner in which additional information from the child will be presented to the court; and
- Clearly define the role of minor's counsel when the court appoints private counsel to represent the interests of a child in a custody or visitation proceeding.

The Elkins Family Law Task Force recommends:

1. **Input from children.** Children's participation in family law matters should be considered on a case-by-case basis. There should be no blanket rule or practice requiring or prohibiting children from participating in court processes or procedures.

2. **Considering children's participation.** The following factors should be reviewed when considering whether and how a child might meaningfully participate in a given family matter. General legal and psychological, as well as case-specific, reasons to consider include the following:

50

- Studies have recognized the importance of hearing from children in matters that affect their lives and have shown that children do better when they are aware of the process and how decisions will be made;
- Family Code section 3042(a) requires the court to consider the wishes of the child in custody disputes if the child is old enough to have formed an intelligent preference;
- In some cases, a child is a percipient witness and has important information that the court needs to consider in deciding the dispute before it; and
- Children sometimes want to participate and, in other instances, prefer to be kept out of the court process. Judicial officers should consider the wishes of a particular child when deciding whether and in what manner the child should participate in the court process.

3. **Providing information to children.** Courts should encourage parents to allow children to participate in programs that inform children about the divorce/separation process so that they can better understand that (1) their parents' problems are not their fault and (2) that it is the court's responsibility to make the final determination based on all the evidence and everyone's input. Family law judicial officers should consider participating in these programs as the Code of Judicial Ethics allows.

> *"…[O]lder children, do better when they are aware of the process and how decisions are being made, since it often comes across as mysterious and arbitrary, and makes them feel even more helpless at a time when they are already uncertain. … [M]any children have specific, intelligent and child-based (as opposed to adult-based) reasons for wanting their lives to be organized in a particular way. This is not limited by a particular age. I have seen 8 and 9 year old children who were quite clear about what they wanted and why."*
>
> *~ Attorney*

4. **Providing for child safety and well-being in court proceedings.** When children participate in court proceedings or court-related processes, courts should provide for and consider their well-being as participants in those procedures. Family Code section 3042(b) requires the court "to control the examination of the child witness so as to protect the best interests of the child. The court may preclude the calling of the child as a witness where the best interests of the child so dictate and may provide alternative means of obtaining information regarding the child's preferences."  Decisions concerning the child's best interest arise in the context of a wide variety of disputes. They range from, for example, disputes about which parent is going to take the child to a piano lesson or soccer practice to challenging, prolonged, highly conflicted custody disputes.[9] This variety calls for developing several different methods for obtaining input from the child, each appropriate to the issues involved, the age of the child, and other developmental and procedural concerns.

5. **Children's participation should not necessarily be equated with testifying in a courtroom.** A child's participation in a family law proceeding may not be needed at all, as in the case where parents are able to agree on a parenting plan. In some cases, children may only want or need to speak with a mediator or evaluator to learn more about the process, and procedures should be in

---

[9] Although cases involving allegations of child abuse and/or violence can cause a high degree of conflict, we have placed these cases in a separate category because of their unique attributes and the safety issues involved.

place to enable such participation. In disputed cases where their participation seems warranted, it may be appropriate to first provide children with the opportunity to give their input by meeting with a mediator or an evaluator working with the parents. Parents and the court could obtain information about the child's point of view from the mediator or evaluator, which may lead to a resolution without the necessity of further child involvement.

6. **Taking testimony from the child.** The court should, on a case-by-case basis, find a balance between protecting the child, the statutory duty to consider the wishes of the child, the probative value of the child's input, and the child's desire to address the court. Courts should consider the following in determining the appropriate action to take:

- Whether it would benefit the court to question the child;
- Whether it would benefit the child to be questioned by the judicial officer;
- Whether there are drawbacks to questioning the child; and
- Whether a given child should testify at all, and, if so, whether testifying is best done in chambers or in open court.

Upon deciding to take the testimony of a child, the judicial officer should balance the necessity of taking the children's testimony in the courtroom with parents and attorneys present with the need to create an environment in which the child can be open and honest. Courts should consider the variety of possible settings for taking children's testimony, including an open courtroom; a closed hearing with only attorneys present and a court reporter present; in chambers without attorneys and parents present, using questions submitted in advance by the attorneys or the parties and with a court reporter present; in chambers questioning with attorneys present but with the judicial officer questioning the child; or in chambers questioning with only the judicial officer and court reporter present with a waiver from both parties. However, due process requirements and rules prohibiting ex parte communication with a judge would preclude the judicial officer from "interviewing" or speaking with a child privately, in chambers, and off the record, even with a waiver or stipulation by the parties.

7. **Training for judicial officers on children's needs.** Judicial officers should receive training on how to receive testimony from children to best assess their needs. The content of all judicial educational courses should include the best possible information about children's best interest, children's developmental needs, and types of parental behavior that may positively or negatively affect children. Judicial educational courses should also more effectively address children's needs and place greater emphasis on children's safety and psychological needs.

8. **Defining the role of minor's counsel.** In California family law matters, if the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of a child in a custody or visitation proceeding. California Rules of Court, rule 5.240 currently provides guidance to judicial officers contemplating such an appointment. Under rule 5.240(a) appointment considerations should include:

- Whether the issues of child custody and visitation are protracted;
- Whether the child is subjected to stress as a result of the dispute that might be alleviated by the intervention of counsel representing the child;
- Whether counsel would be likely to provide the court with relevant information not otherwise readily available or likely to be presented;
- Whether the dispute involves allegations of physical, emotional, or sexual abuse or neglect of the child;
- Whether it appears that one or both parents are incapable of providing a stable, safe, and secure environment;
- Whether counsel who is knowledgeable about the issues being raised regarding the child is available for appointment;
- Whether the best interest of the child appears to require independent representation; and
- If there are two or more children, whether any child would require separate counsel to avoid a conflict of interest.

Courts sometimes appoint minor's counsel as a result of the limited availability of other resources such as family law investigators or child custody evaluators and the need the court may have for additional information on which to base a child custody decision. To be responsive to the complexities inherent in the types of cases that may involve minor's counsel and the challenges attorneys, parties, and children may face when such appointments are made or perceived to be necessary, the Elkins Family Law Task Force recommends the following so that the role of minor's counsel can be more clearly delineated and responsibilities of such counsel more clearly defined; so that there is greater transparency and clarity regarding how such appointments are made and how complaints regarding performance of appointed counsel will be addressed; and so that research may be conducted and education and training made available to provide the best possible representation for children in these matters.

9. **Minor's counsel's role**

   a. **Role definition.** The role of minor's counsel should be clearly defined for the benefit of the attorney, client, family, and the court. Attorneys representing children sometimes face the challenge of maintaining the attorney-client relationship in the face of information that may raise concerns about what the child-client desires and whether those desires reflect the best interest of that client. Reflecting this notion, under current statutory law (Fam. Code §§ 3150, 3151) minor's counsel in family law proceedings has the responsibility of representing "the interests of the child." Minor counsel's role is to function as an attorney in representing these interests on behalf of his or her client and, as Family Code section 3151 further indicates, to gather facts relevant to the proceeding. Orders, conduct, and training should reflect recognition of this important role.

   b. **Acting within the scope of that role.** Judicial officers desiring to have the information necessary for a well-reasoned custody determination might consider appointing minor's counsel to gather information and investigate the case on behalf of the child. The results of

53

counsel's investigation or fact gathering should be presented only in the appropriate evidentiary manner so that the parties' due process rights are adequately protected. Because minor's counsel is acting as an attorney, minor's counsel should never be called upon to testify or to stand in the place of a mental health evaluator or to replace the court's weighing and determination of the facts with his or her own. Any position minor's counsel will be taking must be presented in writing to the parties prior to any hearing on the matter. Family Code section 3151(b) should be amended to eliminate the requirement that, at the court's request, counsel must prepare a written statement of issues and contentions.

10. **Counsel's responsibilities in representing the minor child's interests**

   a. **Providing information.** The goal of counsel's representation should be to provide the court factually correct information through the presentation of reliable, admissible evidence in a proper court proceeding. Because minor's counsel is acting in the role of an attorney, he or she should not make "recommendations," file a report, testify, or present anything other than proper pleadings.

   b. **Providing information on child's wishes.** Section 3151 should be amended to provide that, if the child wishes to have his or her desire expressed to the court; it should be a mandatory duty on the part of counsel to express the desire of the child to the court.

11. **Courts' responsibilities in ensuring accountability and transparency in appointment of minor's counsel**

   a. **Implement rule.** To most effectively and appropriately utilize minor's counsel, courts must implement California Rules of Court, rules 5.240–5.242, which address:

   - Appointment considerations;
   - Content of orders appointing minor's counsel;
   - Complaint procedures;
   - Termination of appointment;
   - Matters related to compensation and ability to pay;
   - Education, experience, and training requirements; and
   - Responsibilities of counsel and other considerations regarding counsel appointed in these complex matters.

   b. **Develop procedures to ensure that minor's counsel meet minimum requirements.** As part of implementing these existing statewide rules of court, courts must develop procedures to ensure that minor's counsel are adhering to the following requirements:

   - Filing a declaration with the court indicating compliance with the education and experience requirements of rule 5.242 no later than 10 days after being appointed and before beginning

work on the case (the Judicial Council form *Declaration of Counsel for a Child Regarding Qualifications* (form FL-322) or local forms may be used for this purpose); and

- Notifying the court within five days of any disciplinary action taken by the State Bar of California, stating the basis of the complaint, result, and notice of any removal, probation, or suspension.

c. **Complaint procedures**. California Rule of Court, rule 5.240(e) should be revised to incorporate a uniform, statewide procedure for handling and responding to complaints regarding minor's counsel. Such procedures should be published and available to litigants and counsel and should allow for expeditious and effective handling of complaints. The Judicial Council should provide rules, forms, information sheets, and other resources for those wishing to register complaints.

d. **Review annually whether minor's counsel continues to meet requirements**. Any lists maintained from which the court might appoint counsel should be reviewed at least annually to ensure that those on the list meet the education and training requirements. Courts should ask attorneys annually to update the list and to notify the court if any changes would make them unable to be appointed under the current law.

e. **Review of cost and payment of fees.** After determining the reasonable sum for compensation and expenses for counsel appointed to represent the child in a family law proceeding, and the ability of the parties to pay all or a portion of counsel's compensation and expenses under California Rules of Court, rule 5.241, courts should routinely review costs and bills being sent to parties for any privately paid minor's counsel. Courts should consider imposing a cap on fees, limiting the time minor's counsel is involved in the case, and setting automatic hearings on these fees so that the parties are aware of the expenditures.

12. **Education on the appropriate use of minor's counsel.** All family court judicial officers, including temporary judges, should be required to take an educational class on the appropriate use of minor's counsel. Currently there appear to be many instances in which family law judicial officers are appointing minor's counsel in place of a child custody evaluator and asking the attorney to make recommendations to the court about what custody/visitation would be in the best interest of the child. This is an inappropriate use of minor's counsel as minor's counsel is not qualified to provide such an opinion and recommendation. Education will assist judicial officers and attorneys in better understanding the appropriate role of minor's counsel and will address the court's goal of having attorneys provide admissible evidence upon which the court can rely in making good decisions. Education will also help support judicial officers in fulfilling their obligation (1) to appoint minor's counsel only when other interventions have failed to produce adequate evidence regarding the desires and the best interest of the child; and (2) to employ, not delegate, their decisionmaking power in complex child custody proceedings. (See also Section IV. B. Improving Judicial Branch Education.)

## *C.  Enhancing Children's Safety*

Family law courts are often confronted with issues involving allegations of child abuse, neglect, and violence in the home. The task force has heard many concerns about the safety and well-being of children and issues of children's participation in court proceedings.

The Elkins Family Law Task Force recommends:

1. **Cases involving allegations of sexual abuse.** Pilot projects should be established and funded throughout the state to implement promising practices for handling family law cases involving allegations of child sexual abuse. Such pilots should include funding to fully implement Family Code section 3118, including funding to support single-point interviews of children which would prevent subjecting the child to multiple interviews, and appropriate coordination with local child welfare services and the juvenile court. The pilot projects should include development of protocols and procedures that could be applied statewide. The pilots should fully implement relevant recommendations from other sections as well including Section II. B., Providing Guidance for Children's Participation and the Appointment of Minor's Counsel.

2. **Expedited handling.** All cases involving allegations of physical or sexual child abuse or neglect should receive expedited handling including emergency procedures so that the judicial officer can quickly analyze the situation and determine what orders are appropriate to protect the child. There should be expedited access to the courts and special training for mediators, investigators, and judicial officers. The cases should move as quickly as possible to ensure child safety and access and fairness to all parties.

> *"I strongly support the use of investigators, who are often of more use than evaluators. We often just need to know what the facts are, and can draw our own conclusions as to an appropriate resolution. This tool is essentially unavailable to us now."*
>
> *~ Attorney*

3. **Child welfare services.** Child welfare or protective services (CPS) should be required to become involved in all cases involving child abuse and neglect, even if such involvement is limited to investigating initial allegations. CPS should not treat those cases differently from cases involving the same or similar issues in juvenile court simply because one parent has sought relief in family court. Rather, CPS should be required to assist the court in fully investigating and providing appropriate resources as it would to children handled through its protection system. (See, for example, Welf. & Inst. Code, § 328.) Children in these cases should have access to counsel

56

where appropriate, to child welfare services, to social workers, and to Court Appointed Special Advocates (CASAs). Statutory, rule, or regulatory changes that may be necessary to implement this recommendation should be undertaken. Additionally, to more effectively address the best interest of children, family courts, parties, and their attorneys should have access to information and reports collected by CPS during these processes and procedures, even if CPS decides that filing a petition in juvenile court is not warranted. Legislation to clarify family court access to these records should be developed, with consideration being paid to protecting confidentiality and due process rights.

## III.    Ensuring Meaningful Access to Justice for All Litigants

Equal justice for all is basic to our democracy. The first step toward equal justice is providing everyone, regardless of his or her economic circumstances, meaningful access to the courts. Today, too many people find themselves in family court without the assistance they need to present their cases. For those who are able to represent themselves, we need to provide more services to help them navigate the court system and get their day in court. For those who cannot represent themselves meaningfully, we need to find additional ways to increase representation.

Courts need to be responsive to the needs of people with special barriers to access including people with disabilities and those with limited English skills. In the future, courthouses should be designed to accommodate the needs of family law litigants by providing space for self-help, settlement assistance, and other services.

Litigant education programs provide an orientation to the family court and to services, such as self-help and child custody mediation, which the court makes available. These programs not only help court users obtain the relief they are seeking, but also help court staff process their cases more efficiently. Providing greater opportunities to settle cases helps parties resolve their own disputes and reduces acrimony and court time. If more cases settle, judicial resources can be more readily available for those people who need a judicial officer to decide their cases.

## A. Increasing the Availability of Legal Representation and Providing a Continuum of Legal Services

The task force recognizes that legal information and advice are critical in family law matters as the emotional and financial impact of family law issues cannot be overestimated. While some litigants will be able to effectively handle their family law matters with self-help, many will need legal advice to help make critical decisions, some may need representation in court only on selected matters, and others may need representation throughout their family law cases.

To meet the needs of litigants in as cost-effective a manner as possible, it is critical that a continuum of services be available from providing legal information, assisting with forms and explaining legal processes, giving legal advice, and providing mediation or settlement assistance to representing a litigant on a portion of a case, providing full representation in the trial courts, and providing representation in appellate matters. All these resources should be expanded in order to address the needs of family law litigants in our legal system.

*"There is no "one size fits all" in the continuum of legal services. Some litigants are simply unable to self-represent regardless of the quality of the coaching or self help services. Many more are able to succeed with limited assistance. The problem is so vast and the need so great, that no single solution can hope to solve it. All available resources need to be called in and allocated appropriately for the greatest benefit."*

*~ Attorney*

Cases in which one side has counsel and the other does not can pose a variety of potential difficulties for the unrepresented litigant, the attorney, and the judicial officer. Representation may be available in more of these cases if courts were to make early needs-based attorney fee awards.

The Legislature has recognized the difficulties with self-representation in some cases. The Sargent Shriver Civil Counsel Act (AB 590 [Feuer]; Stats. 2009, ch. 457) offers funding starting in July 2011 for one or more pilot projects that will provide representation to low-income parties on critical legal issues affecting basic human needs. The legislation allows legal services organizations to expand representation in the family law arena in domestic violence and contested child custody cases (among other case types). This legislation is a significant first step in the right direction; however, only enough funding for a few legal services programs in pilot counties will be made available. Most family law litigants will continue to be self-represented.

Far too many Californians are unable to afford counsel. The task force believes that we need to take steps to provide litigants with the appropriate levels of assistance they need to proceed with their cases.

The Elkins Family Law Task Force recommends:

*"Middle class litigants shouldn't have to mortgage their and their children's future just to get divorced or resolve a custody problem. Everyone who needs legal assistance should be able to find it at whatever place on the continuum is appropriate."*

*~ Attorney*

1. **Attorney fees**
   a. **Statewide rules and forms.** The Judicial Council should adopt statewide rules regarding the information that needs to be submitted to the court to obtain an award of attorney fees. A form setting out these requirements should be considered. Consistency in these requirements would allow attorneys and self-represented litigants seeking attorneys to provide the information needed by the court for an award of attorney fees.

   b. **Early needs-based fee awards.** Courts should give careful attention to making early needs-based attorney fee awards rather than deferring the issue to trial. This would minimize the imbalance in ability to hire counsel between litigants in a family law case. When a request for needs-based attorney fees is made, the court should make findings regarding whether the award of fees is necessary, whether there is a disparity in access to funds or income, and whether one party is able to pay. If the findings demonstrate need, disparity in access, and ability to pay, the court should make an order awarding attorney fees.

   c. **Assistance in preparing request for fees to obtain counsel.** Court-based self-help centers should provide information and assistance with motions to request fees to hire counsel. Courts should allow limited scope appearances by private attorneys for the purpose of obtaining early needs-based attorney fees.

2. **Referrals to private attorneys.** Local lawyer referral services should be encouraged to develop modest-means/low-fee family law panels as well as panels of attorneys who offer unbundled legal services. As courts cannot refer to individual attorneys, these panels are essential to enabling the courts to make appropriate referrals for legal advice and representation to those litigants who are not able to afford full representation.

3. **Funding for legal services.** There should be increased resources provided for litigants unable to afford private attorneys.

   a. **Increased funding for legal aid to assist with family law matters.** Increased funding should be made available to legal aid agencies to provide representation to low-income litigants in family law matters in addition to domestic violence cases.

   b. **Increased funding for representation**. Family law cases, especially those in which one side is represented by counsel and the other is not, should be considered the highest priority for funding under the Sargent Shriver Civil Counsel Act. Family law cases affect critical needs in many families' lives. Issues regarding custody of one's children, support to care for those children, possession of one's home, and domestic violence are of tremendous importance.

60

Challenging legal issues are often compounded by highly stressful situations for litigants, which can make effective self-representation impossible. Additional funds should be sought for counsel for litigants who are not able to self-represent in family law cases

    c. **Expanding legal services programs for appellate cases**. Because few family law litigants can afford appellate relief, that essential check-and-balance does not operate as effectively as it should in family court. The self-help appellate program operated by Public Counsel in collaboration with the Court of Appeal, Second Appellate District should be considered for statewide implementation.

4. **More family law attorneys.** Efforts should be undertaken to increase the number of attorneys who practice family law in California.

    a. **Mentoring programs.** Courts should encourage local bar associations, professional organizations such as the Family Law Section of the State Bar of California, and local chapters of the American Academy of Matrimonial Lawyers and Association of Certified Family Law Specialists to implement mentoring programs for new attorneys in family law. Family law attorneys are mainly in small and solo practice, and providing adequate training can be challenging.

    b. **Court-based mentoring.** Whenever possible, courts should provide work-study or internship opportunities for law students in their local family law facilitator or family law self-help center offices.

    c. **Pro bono opportunities.** Pro bono opportunities should be provided to assist lawyers in enhancing their professional experience. While it is challenging to find attorneys to take pro bono family law cases, opportunities to provide limited scope assistance may encourage those concerned about a lengthy volunteer commitment. Training should be offered to encourage attorneys who do not currently practice family law to take pro bono cases. Specialty training should also be offered for attorneys with family law experience to encourage them to take more complicated pro bono cases. Courts should make use of the "Pro Bono Toolkit," available on the California Courts Web site, to help encourage attorneys to accept pro bono cases.

5. **Limited scope representation**. The state and local bar associations, including women's, specialty, and minority bar associations, should continue to encourage limited scope representation by providing training for attorneys on offering those services appropriately and clearly identifying to the client and the court which services are outside the scope of the representation agreed upon by the client. Judicial officers and court staff can assist in this effort with their local bar associations by describing the great need for assistance and emphasizing their commitment to following procedures to enable attorneys to make limited scope appearances.

61

6. **Expanding self-help services.** Among the most helpful services identified by litigants, judicial officers, court staff, and attorneys are court-based self-help centers. These programs, which include the family law facilitator's office, currently provide services to more than 450,000 litigants throughout the state each year. Operating under the direction of an experienced attorney, the self-help center provides assistance to litigants in preparing documents, understanding their legal situations, and navigating the court system. In many cases parties can effectively handle their own matters with this basic assistance.

   a. **Increased funding for self-help services.** Additional funding should be provided for self-help assistance. Self-help assistance is an important part of the continuum of services and should be expanded as a way to assist litigants who can effectively represent themselves in all or a part of their cases. The assistance of the self-help center in preparing paperwork, explaining the court process, and providing legal information is of tremendous value to litigants and the court. These services are in tremendously high demand, and all too often litigants must be turned away because of limited resources.

   b. **Self-help services expanded**. Self-help services should be expanded to include instructions and/or training materials on evidence and the manner in which information can be presented to the court. Self-help centers should have resources available to assist self-represented litigants with hearings, trials, and appeals, such as information related to rules, forms, and timelines.

> *"The self-help centers are one of the most successful family law programs to ever be instituted in California."*
>
> *~ Attorney*

## *B.  Improving Litigant Education*

The family law process can be confusing and intimidating. Education for litigants about the court process and basic legal principles can help minimize stress, encourage appropriate agreements, and assist the parties in resolving their cases in a timely manner. When litigants understand their legal rights and procedural requirements, court processes can be more effective and efficient, less frustrating, and more responsive to litigants' needs. Additionally, information about settlement options and assistance in preparing written agreements can help parties arrive at solutions more tailored to their family situations. This can avoid the expense and difficulties of a high-conflict case that may divert parents' time, energy, and money from otherwise being used for their children's benefit.

> *"I went through the mediation process …
> and I did not know that there was an option
> of not agreeing. I thought I had to agree. If
> I had been given more information … then
> two years of my life would have been
> completely different."*
>
> *~ Family law litigant*

The Elkins Family Law Task Force recommends:

1. **Orientation and ongoing information and education on the family law court process**. Orientation on the court process and procedures should be provided at the beginning of a case to educate litigants so that they are better able to make informed decisions about resolving their cases, understand the range of options available to them, and be aware of how the court actually works. Ongoing education should be provided to ensure that parties receive the information they need throughout the life of their family law case. The AOC should develop informational materials in multiple languages, which can be adapted by the courts. Courts should use flexible, coordinated approaches to providing litigant education. Appropriate staff to provide litigant education includes self-help and family law facilitator staff, case coordinators, and family court services staff.

> *"Substantive education early in the
> process could give parties information
> that would help them better
> understand the issues presented in
> their cases, such as basic community
> property principles, parenting, co-
> parenting during divorce, and the
> importance of both parents to
> children's development. Information
> and understanding of legal concepts
> could encourage parties to resolve
> their disputes."*
> *~ Attorney*

2. **Introductory information.** Courts should provide introductory information to parties upon the filing of

initiating papers or a response in family law cases that describes the steps in the process. Courts should provide clearly written information in multiple languages about court policies and procedures, including how to access self-help center workshops, Web-based information, databases, and court calendars. Any additional resources that are available for self-represented litigants should be highlighted.

Parties should be provided with information about their procedural rights in family law cases. The courts should provide information about legal resources including brochures from the State Bar, free or low-cost legal clinics, legal services, and lawyer referral panels; information about limited scope representation; and information about options such as mediation and collaborative law.

Orientation information should be uniform statewide, made available online, and offered in a variety of languages. It should be presented in a variety of ways, such as informational handouts, flowcharts and checklists, a legal resource guide, and videos, audiotape, and multimedia presentations. To the extent possible, orientation resources should be developed and made available for statewide use.

a. **Information about challenges of self-representation.** Self-represented litigants should receive education at the initial stages of their cases that addresses the challenges of self-representation and highlights the issues that are complex and may require the expertise of an attorney, an accountant, or another professional.

b. **Review of current education.** Courts should review their current education and self-help programs to ensure that litigants from every type of family are better able to navigate the legal system and attain final resolution of their cases. For example, never-married litigants should be given information specific to their circumstances regarding how to proceed to judgment in parentage actions.

c. **Information throughout the case.** Courts should provide additional opportunities for litigants to obtain information and education about court processes and procedures throughout the life of the family law case. Workshops on preparing for trial or finalizing required paperwork may enable litigants who did not originally need information to more effectively resolve their matters and finalize their cases. In addition, the self-help center or family law facilitator's office should provide litigants with general information about evidence and the burden of proof in the form of guidelines directed to all parties, in keeping with the appropriate role of the self-help center and facilitator. Care should be taken to provide these opportunities in ways that do not interfere with attorney-client relationships for those who are represented. The AOC should expand resources on its statewide self-help Web site, which can then be referenced or adapted by local courts.

3. **Orientation to child custody mediation.** Parties referred to child custody mediation must be provided with orientation or parent education as prescribed by law. California Rules of Court, rule 5.210(e)(2) requires that all court-connected child custody mediation processes include:

Oral or written orientation or parent education that facilitates the parties' informed and self-determined decision making about: (A) [t]he types of disputed issues generally discussed in mediation and the range of possible outcomes from the mediation process; (B) [t]he mediation process, including the mediator's role; the circumstances that may lead the mediator to make a particular recommendation to the court; limitations on the confidentiality of the process; and access to information communicated by the parties or included in the mediation file; (C) [h]ow to make the best use of information drawn from current research and professional experience to facilitate the mediation process, parties' communication, and co-parenting relationship; and (D) [h]ow to address each child's current and future developmental needs.

a. **Mediation orientation.** For parents in contested child custody cases, an orientation program prior to mediation must be provided by the court at no cost. The program should focus on children's needs, explain the mediation process, and show how mediation can contribute to successful outcomes. It should also include information about domestic violence law and parties' rights.

b. **Parenting education.** Parenting education programs should be made available in different media, including Web-based programs and in print, and, reflecting the diversity of court users, translated into as many languages as possible.

> *"I think there should be evening classes in the courthouse to educate pro se litigants on the rules, on general principles, and on alternative dispute resolution."*
>
> *~ Family law litigant*

c. **Information on evaluation.** Courts should provide information about local resources for low-cost limited and full custody evaluations conducted by experienced and well-trained professionals who place a high commitment on neutrality and accuracy in reporting.

d. **Information on parenting resources.** Courts should provide information on the availability of supervised exchange and visitation programs, parent education, parenting classes, divorce education for children, family counseling, and treatment programs so that the best interest of children can be assured.

e. **Information on parenting plans.** Expanded information on parenting plans should be made available on court Web sites. Multilingual videos or DVDs should be created and made available at self-help centers or law libraries for litigants who do not have computer access. Videos or DVDs allow for dubbing in various languages, are cost-effective, and can be shared statewide.

f. **Avoid delays.** The orientation program should be made available in a way that adds no delay to the scheduling of mediation.

4. **Enhanced parent education prior to mediation**

    a. **Referrals**. In addition to court-based orientation programs, courts should develop referrals to parenting education classes that provide information on children's developmental needs. Programs and materials should address a variety of possible differences depending on, for example, the age of the children and the nature and length of the parents' relationship.

    b. **Parenting classes.** Courts should consider offering or encouraging agencies in the community to offer separate parenting classes so that parents do not need to attend the same class when joint attendance might cause undue conflict or present a safety risk.

5. **Settlement opportunities.** Settlement opportunities should be provided to litigants prior to mediation or litigation and information about those opportunities should be provided to parties and their attorneys. To inform litigants of possible options, self-help centers and/or family court services offices should offer sample parenting plan templates for use by parents who are in basic agreement on a parenting plan but need assistance in drafting an enforceable agreement. Courts should consider making family court services or self-help center staff available following the mediation orientation to finalize agreements for those parties simply needing assistance with preparing a stipulation.

Education regarding settlement opportunities should make clear the importance of making settlements or agreements voluntarily and through an informed process. The courts should balance support for settlement with recognition that many litigants come to family court seeking protection and have concerns regarding adult or child safety that may prevent or interfere with the development of voluntary and informed agreements. Litigants who are unable to settle and may require court assistance in resolving their matters for any number of reasons should be provided with information about proceeding through the court process. Judicial involvement and supervision in mediation of disputes is encouraged.

6. **Enforcement of orders.** Courts should provide information about enforcement of orders. While orders need to be tailored to the family and parties should choose the level of detail they want in their agreements, they should also be made aware of enforcement issues and understand that if a dispute arises later, they may benefit from having a more detailed order.

## C. *Expanding Services to Assist Litigants in Resolving Their Cases*

Many litigants involved in family law cases would prefer not to be "litigants." They would prefer to be able to sit down with the other party and resolve the issues in their case without the necessity of appearing before a judicial officer. They prefer to avoid the stress of hearings, want more control over the decisions made regarding their family, want to discuss issues that may not be legally relevant but which are important to them, and want to maintain a more peaceful relationship with the other party.

When parties are able to resolve their matters outside of the courtroom, not only can they obtain a more positive outcome but more court time also will be available in those instances where one or both parties have requested that a judicial officer decide their case.

> *"[N]ot all of us are comfortable going to court and fighting."*
> *~ Family law litigant*

Currently, many courts offer mediation services only for custody disputes in family law matters. Courts that have expanded services to assist with child support, property division, and other matters report that many cases can be resolved in this manner—either with a full settlement or with issues that remain in dispute significantly narrowed. They report that litigants are often happier with the result and may be able to limit the expense of attorney services, potentially allowing them to retain an attorney throughout the entire case.

Often parties are not aware of settlement options. Without lawyers, people who are trying to resolve complex family issues often find it difficult to do so without the assistance of a skilled third party to help them focus their discussions, reflect back potential solutions suggested by the parties, and draft a written agreement.

Any person working to help parties mediate or otherwise settle family law matters must have appropriate training and skills. In particular, the neutral must be aware of the issues of power imbalances between parties, particularly when domestic violence is present in a relationship. Mediation may be inappropriate in some of these cases, so opportunities for shuttle discussions, mediations held by videoconference, or other methods should be considered to allow parties the opportunity to try to resolve their issues without the threat of physical coercion.

The Elkins Family Law Task Force recommends:

1. **Services to help parties with settling cases.** Financial and property settlement opportunities with qualified attorney settlement officers should be available to both self-represented litigants and represented parties at all stages of a case. The settlement program should be managed by an

attorney experienced in family law and court staff who are appropriately qualified and trained in family law. The qualifications and training should meet the basic minimum standards set out in the *Guidelines for the Operation of Self-Help Centers in California Trial Courts.*[10] Judicial officers should be available to assist with mandatory settlement conferences prior to trial.

2. **All forms of settlement assistance available.** As a component of caseflow management, all forms of settlement assistance, including mediation, arbitration (binding and nonbinding), collaborative practice, and settlement conferences should be available to litigants consistent with litigants' needs and the court's resources. A court should be able to consider the use of settlement strategies at any time during the process, and caseflow management rules should establish, as a matter of policy, a preference for early consensual dispute resolution to assist litigants in settling their cases if possible. This would include both court-based and non-court-based options. Information about the case, such as declarations of disclosure, should be exchanged prior to settlement discussions, and education about the legal issues in their cases and potential solutions should be provided to litigants prior to their participating in settlement discussions so that they can reach knowing and voluntary agreements. Information should be provided to ensure that victims of domestic violence and others who may face power imbalances are aware of their options and do not feel forced to settle their cases. Those parties should not be required to meet jointly.

> *"[W]e would like to see confidential mediation made available on an optional basis for other issues in family law, such as property division or support. We have seen the success of mediation in custody cases, and we believe that it would be similarly successful for these other issues. We believe that if given the opportunity to meet with an experienced family law professional at the early stages of their cases, many litigants would resolve their matters sooner."*
> ~ *Judge*

3. **Appropriate family law training for settlement assistance providers.** There are rules of court and required training for court-based custody mediators. Similar rules should be developed for mediators working on property and support, settlement officers, family law arbitrators, collaborative practitioners, and other settlement assistance providers. The training should address not only substantive family law issues but also domestic violence, the possibility of power imbalances in family law cases, issues in working with self-represented litigants, and issues in working with people with limited English skills and interpreters.

> *"The rules of litigation are not designed for people who see each other three times a week when they [exchange] the kids... and who see each other at parent teacher meetings ... or ... at family functions."*
> ~ *Attorney*

---

[10] Admin. Off. of Cts., *Guidelines for the Operation of Self-Help Centers in California Trial Courts* (2008), *www.courtinfo.ca.gov/reference/documents/self_help_center_guidelines.pdf.*

## *D. Providing Interpreters When Needed*

One of the most fundamental components of access to the courts is being able to understand the proceedings. All too often interpreters are not available in family law matters unless domestic violence is an issue or the case involves governmental child support. Litigants often have to provide their own interpreters. Some use relatives or other interested parties. Sometimes minor children are even used to interpret for parents. Having interpreters available on the day of the hearing would greatly reduce the need to continue a matter and thus provide greater access to justice for litigants.

> *"For [non] English speaking or minimally English speaking, they walk out of the court and they don't understand anything and have no idea what just happened."*
>
> *~ Family court staff*

The Elkins Family Law Task Force recommends:

1. **Availability of interpreters expanded.** Interpreters should be available in all family law matters involving litigants with limited English proficiency (LEP) and hearing impairments so that they can participate meaningfully in their hearings and trials, mediation, and other services in which litigants must participate.

    a. **Out-of-courtroom services.** Interpreters should be made available for self-help services, mediation and other settlement assistance, and similar services provided by the court. Courts should recruit bilingual and bicultural staff to assist litigants with limited English proficiency.

    b. **Funding.** Designated grant funds are currently available for interpretation in domestic violence matters at courtroom hearings, mediation, and court self-help programs. Additional funding should be sought for all family law matters.

    c. **Protocols.** Courts should develop protocols to best utilize interpreters available for criminal and other matters for use in family law matters whenever possible.

    d. **Early identification of need.** The AOC should work with the courts to develop methods for identifying LEP and hearing-impaired litigants early in a case so that courts are aware of the need for interpreters in family law matters prior to the hearing. This should include identifying such a need in the California Case Management System.

e. **Forms developed.** The Judicial Council should consider adding a notation of the need for an interpreter on forms requesting a hearing.

f. **Shared interpreter pool.** The AOC should identify and publicize to the courts best practices of courts already implementing a "shared interpreter pool" in which interpreters employed by one court are shared with other courts on an as-available basis.

g. **Scheduling.** Courts should consolidate and schedule calendars to optimize limited interpreter resources.

h. **Allocation of resources.** The Judicial Council should develop a rule of court vesting court administration with the ability to allocate interpreter resources as appropriate to meet the needs of the court.

> *"Any and all public information programs and community outreach, to the extent possible, should include language and culturally competent materials to meet the needs of the rapidly growing LEP litigants in California."*
>
> *~ Attorney*

### *E.  Making Court Facilities More Responsive to the Needs of Family Court Users*

Court facilities for family law matters should be designed to protect families from harm, foster settlement, and resolve expeditiously those matters requiring judicial decision. Judicial officers and court staff need technologically modern, flexible, well-planned courtrooms and facilities for all of the collaborative services offered for resolution of cases. Many of California's family law courtrooms are in converted commercial space or retrofitted, inadequate courthouse locations, in part because they do not need to accommodate juries and thus do not have the same space requirements as other courtrooms.

Family law litigants frequently cite the inconvenience and confusion they experience from needing to make multiple trips to court or travel to different court locations to handle different aspects of their court business. This issue may be particularly salient for litigants involved in both Department of Child Support Services (DCSS) and other family law cases.

Family court facilities should offer a welcoming environment for court users that respects the unique and sensitive nature of family law cases, takes into account the need for family law litigants to access a variety of court-connected services, and maximizes convenience for court users.

The Elkins Family Law Task Force recommends:

1. **Trial court facilities standards.** New and, to the extent possible, existing family court facilities should adhere to the *California Trial Court Facilities Standards*.[11] The AOC and trial courts should periodically review and revise standards for facilities housing cases affecting children and families for appropriate features such as adequate courtroom size, location, children's waiting areas, settlement needs, orientation, co-location of self-help services, security features, and dignified surroundings.

2. **Courtrooms.** Family law courtrooms should be adequate in number to properly accommodate the volume of family law matters being handled by the courts and large enough to accommodate all participants.

3. **Private space for consultation and settlement.** Courts should allow space for litigants and attorneys to have reasonably private discussions. Family law involves sensitive and private issues, and yet settlement negotiations often take place in crowded hallways. An atmosphere conducive to settlement and demonstrating respect for the intimate issues discussed would be beneficial to the parties and attorneys.

---

[11] Judicial Council of Cal./Admin. Off. of Cts., *California Trial Court Facilities Standards* (2006), *www.courtinfo.ca.gov/programs/occm/documents/06_April_Facilities_Standards-Final-Online[1].pdf.*

4. **Self-help services.** Self-help centers and family law facilitators' offices should have adequate space to serve the volume of litigants seeking their services, including space for workshops and classes. As discussed in the *Guidelines for the Operation of Self-Help Centers in California Trial Courts*,[12] self-help centers should have the appropriate equipment and technology to facilitate service delivery, including but not limited to legal research materials such as rules, codes, and practice guides; computer workstations for staff use that include access to electronic court records; copy and fax machines; and long-distance telephone access.

5. **Family court services.** Family court services offices should have safe and private meeting rooms for parties involved in mediation and for child interviews. There should also be sufficient space for orientation, parenting classes, and other educational programs.

6. **Children's waiting rooms.** Courts should have children's waiting rooms adequate to accommodate children of litigants who are attending court hearings or mediation sessions, receiving self-help services, or using any other case-related services at the court.

7. **Co-location of services.** In existing and particularly new courthouse facilities, family law courtrooms and related services should be co-located. For example, co-location of the self-help center and the clerk's office allows litigants to easily file documents, providing convenience and minimizing confusion. Courts should also strive to co-locate DCSS and general family law courtrooms, to facilitate coordination of cases for families involved in multiple matters.

8. **Safety.** Compared to other departments, family courts have a relatively high incidence of violence, whether directed at litigants, attorneys, judicial officers, or court staff. Courthouse facilities must be appropriately equipped and staffed to ensure safety. Court security for family law should be commensurate with that of the felony trial courts; bailiffs should be deputy sheriffs or otherwise of the same level as bailiffs who serve in felony criminal departments. Additionally, courts should consider establishing agreements with law enforcement to perform other needed duties such as checking in litigants, coordinating telephone appearances, receiving reports, and handing out orders. To the extent possible, family law courtrooms should not be located in close proximity to criminal courtrooms.

Courts should devote particular attention to establishing protocols in cases involving domestic violence. For example, California Rules of Court, rule 5.215, which outlines domestic violence protocols for family court services, recommends separate and secure waiting areas, separate conference rooms for parent education and mediation, and secure parking. Other measures to ensure safety include requiring litigants to pass through a metal detector, providing an escort to accompany domestic violence victims when leaving the courtroom, and ensuring that courtrooms are large enough so parties can be physically separated.

---

[12] Admin. Off. of Cts., *supra* note 9.

9.  **Accessibility.** Courthouses as well as offsite court-connected services must be accessible to persons with disabilities. Courts must ensure appropriate and timely responses to requests for accommodations under the Americans With Disabilities Act.

10. **Hours of operation.** Courts should explore the feasibility of holding evening calendars and offering self-help services, workshops, orientation, and education programs during evening or weekend hours to increase accessibility to litigants who may have difficulty taking time off work to attend to court matters. Courts, particularly those located in areas with high proportions of the working poor, are encouraged to explore creative solutions such as alternate work schedules for staff providing services outside of regular business hours or offering services at times that the court may already have extended hours, thereby taking advantage of court security that is already in place. Safety issues and added security and operational costs should be taken into account in considering extended or alternate hours.

11. **Equipment and technology.** Family law courtrooms should be equipped with appropriate technology and other accommodations to facilitate the presentation of evidence and production of other needed documents, similar to what is available in criminal and civil courtrooms. For example, courtrooms should have wireless Internet access and sufficient power outlets for attorneys and litigants to plug in laptops, printers, and projectors.

Courts should explore partnerships with public and law libraries to make technological resources available to court users. Computers in the courthouses, law libraries, and public libraries should offer forms preparation software, pleadings templates, and other useful programs, as well as be equipped to handle e-filing and fax filing. (Section IV, Enhancing the Status of, and Respect for, Family Law Litigants and the Family Law Process Through Judicial Leadership, includes a recommendation on e-filing and fax filing.)

# IV.  Enhancing the Status of, and Respect for, Family Law Litigants and the Family Law Process Through Judicial Leadership

Family law touches the most central aspects of Californian's lives: where, when, and how often a parent will see his or her child; their personal safety; how much child and spousal support one person will receive and the other will pay; and how the assets that the family has accumulated will be divided between the separating parties. Yet, family law is often regarded as somehow less important than some other types of cases in the courts. Judicial leadership is needed to ensure that the family courts get sufficient resources to provide California families with the time and attention they deserve to resolve their family law disputes in a timely manner.

Enhancing public information and outreach will give Californians a better understanding of the critical issues that the family courts decide every day. It will also educate the public on the role of the family court, the family court process, and the services that the family court provides to assist parties resolve their disputes as they separate.

Better education for family law judicial officers will help enhance the status of the family court. Having experienced judges who are well versed in family law and are trained to work with parties who are under emotional and financial stress will engender greater respect from attorneys and litigants.

## A. Promoting Leadership, Accountability, and Better Use of Resources

Although the courts have made improvements in delivering services in family and juvenile law matters, more work remains to be done to overcome the challenges of these historically underserved areas of court operations. The resources provided have not been proportionate to the volume of cases and proceedings related to family law. Many suggested changes can increase efficiency in the delivery of services in family law without adding resources; however, without significant additions of judicial officers and staff resources, courts will be unable to meet the crushing workload in family courts. Currently in family courts statewide, fewer than half the numbers of judicial officers needed to handle the workload are assigned to hear family law cases.[13] To meet the needs of court users and to demonstrate that the court both recognizes the importance of and places significant priority on family law cases, additional resources must be directed to family law. While the ongoing budget crisis presents challenges to all parts of court operations, the prioritization of the needs in family courts must be addressed through all available methods, including improvements to increase operational efficiency, the reallocation of existing resources, and medium- and long-term plans to secure additional resources for family law.

> *"…if you look at the number of litigants impacted and the number and degree of issues we are dealing with, I do not think it is wrong to say that this court and other counties around here should be allocating a much higher amount of their court resources to family court than they currently do."*
> *~ Judicial officer*

Another way to transform the family law court culture is to refocus the entire work of the court and ensure that family and juvenile judicial officers are involved in decisionmaking processes and encouraged to take a leadership role in promoting access to justice for families and children, including outreach to and collaboration with justice partners and the public.

---

[13] An estimated 175 full-time equivalent judicial officer positions are assigned to family law in California (Admin. Off. of Cts. *2006 Family Law Judicial Officer Survey: Judicial Officer Background, Judicial Resource Needs, and Challenges* (2009), *www.courtinfo.ca.gov/programs/cfcc/pdffiles/ FLJOResearchUpdate_Final10-6-09.pdf*) The 2008 update of the AOC's judicial need study estimated the need for 449 judicial positions statewide to handle the family law workload.

In addition, a new approach by presiding judges in making assignments of judges and subordinate judicial officers to family court will improve access to justice and service to the public. Presiding judges need flexibility and discretion to consider judges' expertise, professional background, temperament, interest in the assignment, and other factors to make the best possible assignments to the family law court.

Finally, numerous court-based services must be enhanced to better meet the needs of family law litigants.

The Elkins Family Law Task Force recommends:

1. **Promoting the work of the family court by enhancing judicial leadership.** Advance the ability of the family court to articulate its needs and advocate for appropriate resources by:

   a. **Standard 5.30.** Elevating standard 5.30(c) (2) of the California Standards of Judicial Administration—which directs the supervising family law judge, in consultation with the presiding judge, to work to ensure that the family court has adequate resources—to rule of court status. Specifically include it as a duty of the presiding judge of the court under rule 10.603(c) (1).

   b. **Role of supervising judges.** Enhancing the status of the family law supervising judge, possibly by elevating it to presiding judge of the family law court in courts with 10 or more judicial officers. Recognize the crucial leadership role of the family law presiding or supervising judge in obtaining and coordinating delivery of all resources and services needed for the efficient and effective operations of the family law court, including family law self help/facilitator services, family dispute resolution services, and services in the community outside the court.

   c. **Leadership of family and juvenile court.** Assess the viability of consolidating both the juvenile and family court departments under the leadership of a single judge, a presiding judge of the juvenile and family courts who can advocate for families and children and maximize existing services within the local justice system. In the alternative, in larger courts, establishing a rule of court to provide for greater coordination between the supervising and presiding judges of the family and juvenile courts may be more effective.

2. **Family and juvenile court role within trial court governance structure.** In consultation and collaboration with the Trial Court Presiding Judges and Court Executives Advisory Committees, the Judicial Council should reassess and modify, as necessary, existing rules of court or standards of judicial administration to ensure that family and juvenile law bench officers are regularly consulted on policy issues, resource allocation, and facility needs. The task force notes that the approach may be different in smaller courts, but must ensure that family and juvenile bench officers are regularly consulted on policy, resource allocation, and facility needs.

76

3. **Family court management and resource allocation.** Promote more informed resource allocation, including the adoption of best practices, in family court administration.

> *"It is shameful that so few resources are allocated to family law, in relation to other civil matters. A $35,000 fender bender may take a week of a jury's time, yet hundreds of thousands of family law dollars may be divided on the equivalent of a 20 minute calendar. Judicial resources should be allocated proportionally. There is really no justification for doing it any other way."*
>
> *~ Attorney*

   a. **Training for presiding judges and court executives**. Insert a training module in annual presiding judge and court executive leadership classes on the true workload needs of the family court and standard 5.30 strategies in obtaining these goals. Hold a judicial branch and justice partner summit.

   b. **Guidelines for work processes.** Publish guidelines for ideal family court work processes in all areas.

4. **Self-assessment to inform resource allocation.** The AOC should develop and implement a program for self-assessment and diagnosis of the court's overall workload and resource allocation that includes the following:

   a. **Evaluate available workload data**. Evaluating available data against existing judicial and staff workload models to determine whether actual resource allocation is consistent with what the models predict, and, in anticipation of the AOC's update of the trial court workload study, using improved workload models to better allocate resources.

   b. **Education and technical assistance to judicial stakeholders**. Providing education and technical assistance to the targeted core group of judicial stakeholders at each court (presiding judge, family and juvenile presiding judges, and court administration).

   c. **"Best Practices" on self-assessment**. Developing and promoting a toolkit of "best practices" from other courts that have engaged in a self-assessment process and gained system efficiencies through reallocation of existing resources.

   d. **Incentives for aligning resource**s. Creating an incentive for courts to align their existing resources to address the needs of families and children by creating a special judicial branch award, similar to the Ralph N. Kleps Award for Improvement in the Administration of the Courts, and/or providing financial awards.

5. **Judicial appointments and assignments.** Increase the experience and depth of family law knowledge on the bench by:

   a. **Judicial appointment process**. Suggesting further changes to the judicial appointment process and application to encourage family law attorneys to apply for appointment. The judicial application has been modified to attempt to draw attorneys with diverse practice experience to apply. However, many family law attorneys remain hesitant to apply for

appointment because of the tendency of governors to seek lawyers with extensive trial experience. The application could be further modified to highlight the qualifications, characteristics, and experience that are important for family law judges.

b. **Provide information to State Bar and JNE**. Suggesting that members of the State Bar's Commission on Judicial Nominees Evaluation (JNE), as well as the Governor's judicial appointments secretary, receive information about the qualifications, characteristics, and experience that are important for family law judges.

c. **Encourage commissioners to apply to become judges**. Encouraging experienced subordinate judicial officers who hear family law to seek judicial appointment. The task force is aware of the Judicial Council's established policy to ensure that judges, rather than subordinate judicial officers (SJOs), hear family and juvenile cases. For the long-term improvement and enhancement of the family law assignment, the task force supports the policy of encouraging judges to hear these matters. In each of the last three fiscal years, the Legislature has authorized the conversion of 162 SJO positions to judgeships in 25 courts. The conversions are capped at 16 per year and occur only upon vacancy in the SJO position. Legislation was introduced in 2009 (Assem. Bill 942 [Assem. Com. on Judiciary]) to allow up to 10 additional annual conversions of SJO positions to judgeships in eligible courts if, as a result of the conversion, a judge will be assigned to hear family or juvenile cases that prior to the conversion had been assigned to a commissioner. The task force recognizes and appreciates the depth of experience and expertise that many SJOs assigned to family and juvenile law have provided to the courts and litigants over many years.

d. **Judicial experience prior to family law assignment**. In courts with 10 or more judicial officers, generally requiring judges to have a minimum of two years of judicial experience prior to assuming a family law assignment. However, the presiding judge must have the discretion to consider all characteristics or qualities that make judges well suited for the unique nature of the family law assignment, including but not limited to subject-matter expertise, temperament, calendar management, ability to work with self-represented litigants, and familiarity with child development issues.

6. **Assignment of judicial officers to family law.** Meaningful access to justice requires adequate judicial resources, and family courts must receive additional resources through reallocation in the near term and through the dedication of new resources to family law when the budget climate improves. A substantial number of the recommended improvements to family law, set forth elsewhere in this report, could be accomplished through this one improvement alone. Although discrepancies in reporting criteria and case management systems render the figures somewhat inconsistent, it appears that, based on 2008 numbers, a statewide average of 19 percent judicial workload is associated with family law. Yet a 2006 survey conducted by the Center for Families Children & the Courts (CFCC) revealed that only an average of 9 percent of judicial officers are assigned to this area.

On an ongoing basis, consistent with available judicial workload data, each superior court should determine the appropriate number of judicial officers to be assigned to family law, based on a percentage of the court's actual workload that is family law related.[14] The AOC makes a judicial workload simulation model available to the courts showing the estimated judicial workload by case type for each superior court. This model is updated every other year, in accordance with Senate Bill 56 (Dunn) and the biannual report to the Legislature on statewide judicial needs. The model does not just use the number of case filings but incorporates the work required to handle the cases filed. For this reason the case filings are given "weights" to account for the work required for a particular case type. Potentially, the workload model provides a standard that can be measured and managed to, so as to provide the significant shift needed to ensure that families and children have meaningful access to justice in family court. These benefits will include increased response to emergency matters, enhanced opportunities for parties to peaceably settle their cases and greater access to timely hearings and trials, if they cannot.

It is expected that each superior court would look to workload data with a critical eye toward variations associated with unique local caseload characteristics and the voluntary provision of enhanced services, for example. Importantly, it is the task force's intent that in each subsequent revision of the SB 56 judicial workload models, any enhanced or improved practices in family law will be incorporated into the proper "weighting" so that an accurate assessment results. Further, it is expected that these improved practices will likely increase the weights afforded family law judicial workload, in recognition of the propriety of providing more robust service in order to meet and maintain procedural due process requirements.

7. **Court resources.** Consistent with the increase in judicial officers assigned to family law, ancillary and supporting resources for self-help centers, family law facilitators, courtroom staff, clerical staff, family court services staff, and research attorneys must also be increased. To improve the status of the family law assignment and ensure equal access to justice, the family court must receive resources at least equivalent to those given to the general civil assignment to sufficiently address the unique requirements for supportive services in the family law assignment. Specific court resources would include:

   a. **Judicial support staff for ministerial functions.** Ensure sufficient judicial support staff to handle ministerial or nonjudicial functions to make the most effective use of a judicial officer's limited time.

   b. **Support staff to finalize orders.** Ensure sufficient support staff to finalize orders and judgments within a reasonable amount of time.

   c. **E-filing or fax filing.** Offer e-filing and/or fax filing options.

---

[14] The number of judicial officers assigned to family law would also be increased if the remaining judgeships were approved and funded. AB 159 (Stats. 2007, ch. 722), created the second set of 50 new judgeships, but the authorization for funding has not yet been approved by the Legislature. SB 377, introduced in 2009 to create the third installment of 50 new judgeships, is pending in the Legislature.

d. **Procedural document review.** Ensure that appropriate staff review files to ensure that all documents are in order and inform the court if information is missing or incomplete. This procedural review would precede the judicial officer's substantive review of the file. Staff could provide notes to the judicial officer as well as public notes, which—similar to the process used in probate—may be made available on the court's Web site for access by the parties, attorneys, and self-help center staff.

e. **Supervised/monitored visitation**. Seek creative partnerships with community organizations to address the significant unmet need for affordable, convenient supervised/monitored visitation and exchange services. Community-based options appear to be decreasing.

f. **Volunteer coordinator position.** Encourage courts to develop a volunteer coordinator position to work with both attorney and nonattorney volunteers.

8. **Ensuring access to the record.** Legislation should be enacted to provide that cost-effective options for creating an official record be available in all family law courtrooms in order to ensure that a complete and accurate record is available in all family law proceedings. These options would include court reporters, high quality electronic audio recording, or other available mechanisms to create an accurate, timely, and cost-effective official record. Access to the record in family law is a serious access-to-justice issue and must be significantly improved both to ensure that parties understand and can finalize the court's orders and to ensure that the parties' right to appeal is protected. Parties' current inability to access the record in their family law proceedings is an area of long-standing concern. This inability to have an accurate record of their family law cases makes the ability of family law litigants to appeal too often illusory. In addition, parties should receive written orders before leaving the courtroom whenever possible.

9. **Calendaring approaches**. Courts should consider dedicated calendars such as a self-represented litigant calendar, default calendar, work search calendar, and contempt calendar. Specialty calendars can provide improved service to litigants by making additional services from the self-help center, community organizations, and other resources available in the courtroom. Courts should also consider calendar management approaches such as staggered times for hearings to improve efficiency in court time and service to the public.

10. **Inclusiveness and collaboration.** Promote an inclusive and collaborative approach to addressing the needs of family court and the community as a whole by means of the following:

a. **Local committees to improve family and juvenile justice.** Developing a rule or standard, similar to standard 10.20 (Court's duty to prohibit bias), that would establish local committees to focus primarily on ways to improve family and juvenile justice. These committees would be standing committees appointed by the presiding judges (court, family, juvenile) and composed of a broad cross-section of community stakeholders and family/juvenile justice system partners.

b. **Duties of presiding judge.** Amending California Rules of Court, rule 10.603 (Authority and duties of presiding judge) to add this standing committee to (8), Liaison. Suggested committee name: Family and Juvenile Court Improvement Steering Committee.

11. **Transparency and accountability.** Improve and promote transparency and accountability in the family court by:

a. **Complaint mechanism.** Creating a meaningful, timely, and independent mechanism for litigants and the public to submit complaints related to court-based services. The complaint process should include issues of access and procedural fairness.

b. **Public information.** Creating a public information program to educate the public on the services available, court's limitations, and options for resolving their complaints.

c. **Court ombudsman.** Evaluating the creation of a court ombudsman position to receive and investigate complaints and make recommendations to court leadership for improvement. This position would not be limited to family law matters and would be fully empowered to research and investigate any filed complaint, pursuant to established local rules.

> *"I think they schedule [so] many cases on the same day that they don't give you a chance to speak. You don't have time, they're trying to rush you and just get it over with to get to the next person … You're not getting to tell your side."*
>
> *~ Family Law litigant*

d. **Consistency between local and statewide rules.** The AOC should develop a self-assessment tool to ensure that local rules and procedures are in compliance with state law and rules.

13. **Enhanced use of IV-D commissioners in family law.** Courts should have IV-D child support commissioners hear all family law issues that the parties need to resolve and keep timesheets to ensure that only time spent on IV-D issues is claimed for IV-D funding. Notwithstanding the task force's general support for the existing Judicial Council policy that judges should hear family law matters, the task force recognizes a significant opportunity to improve services to the public in the courts' handling of child support (IV-D) cases. Because federal funding is available to support this function only if commissioners hear these case types, the courts currently have largely segregated calendars for IV-D support matters. As a result, other issues in IV-D cases, such as custody, visitation, or requests for restraining orders, are often severed from the child support matters and heard by different judicial officers, sometimes in different geographic locations across the county. The task force recognizes the unique expertise of commissioners who hear child support matters and urges a policy of allowing IV-D commissioners to hear all aspects of a family's case. Some IV-D commissioners may need additional training, and the court will need to work closely with the local child support agency to calendar those cases with multiple issues in a manner that maximizes the efficient use of the agency attorneys' time.

Litigants will clearly benefit when their cases can be fairly and efficiently resolved by a single judicial officer.

## B.  Improving Judicial Branch Education

The ongoing need to offer education and training in the judicial branch provides opportunities to promote consistency throughout the state, share knowledge of and experiences with promising practices, and disseminate important information to judicial officers and court employees. While a wide range of educational programs have been developed for family law judicial officers and court staff, it is important that educational content be kept current and responsive to the types of cases and issues being heard in family court.

Existing judicial education requirements are set forth in rules of court. Rule 10.463 specifically addresses requirements and expectations related to the family law assignment, and rule 10.464 addresses education requirements and expectations related to domestic violence issues.[15]

Additionally, given the significant number of family law cases in California's courts, it is important that judicial branch leadership and other professionals who may provide services to families in family court become familiar with family law processes and procedures. The courts should ensure that every bench officer, family law facilitator, and family court services staff member that a family will encounter in the courthouse have high levels of expertise and experience. Courts should also ensure the same level of excellence when appointing experts, such as evaluators and minor's counsel. These issues should be addressed both in terms of specific content areas and in general family law education.

The supervising family law judge and/or presiding judge should be responsible for supporting and advocating for the educational and other professional development needs of all family law judicial officers, including those in a general trial assignment who may be assigned to family law trials. The court should have a range of educational resources, including a mentoring program, referral to educational programs, self-study, and a program for observing experienced family law judicial officers, to ensure that all judicial officers receive the professional support they need. Presiding judges should accommodate the time away from the bench that family law judicial officers need to receive appropriate education and professional development, including training to better handle the stress associated with family law assignments.

The Elkins Family Law Task Force recommends:

---

[15] Rule 10.463. Education requirements for family court judges and subordinate judicial officers; "Each judge or subordinate judicial officer whose primary assignment is to hear family law matters or who is the sole judge hearing family law matters must complete the following education:…(a) Basic family law education…(b) Continuing family law education…(c) Other family law education  Full text of rule 10.463: www.courtinfo.ca.gov/rules/index.cfm?title=ten&linkid=rule10_463. Rule 10.464. Education requirements and expectations for judges and subordinate judicial officers on domestic violence issues; (a) Judges and subordinate judicial officers hearing specified matters; (b) Specified courses to include education on domestic violence issues" Full text of rule 10.464: www.courtinfo.ca.gov/rules/index.cfm?title=ten&linkid=rule10_464.

1. **General family law education**

   a.  **Family law judicial officer training.** Following the family law overview course for judges newly assigned to family law, additional courses should be made available in a variety of formats on both substantive legal topics and procedural issues, including domestic violence, property division, financial and accounting statements, child development, contested custody, use of experts and minor's counsel, calendar management, demeanor, and working effectively with self-represented litigants.

   b. **New family law judicial officer training.** Newly assigned family law judicial officers should also participate in training in their respective courts about local services available to family law litigants, including the self-help center, family court services, and community services providers working in connection with the family court.

   c. **Family law training for those in general assignments.** Training on family law should be provided for judicial officers in general civil or criminal trial assignments so that if they are assigned family law cases, they will have greater familiarity with family law issues, processes, and procedures.

   d. **Court-connected mediators.** All court-connected mediators must be trained to recognize and handle cases involving domestic violence and other imbalance-of-power situations, as is required under California Rule of Court 5.215. All mediators should also receive cultural competency training as well as training in working with parties who have limited English proficiency (LEP) and with interpreters.

   e. **Court clerks.** All court clerks handling family law matters should be trained on relevant family law processes and procedures, including maintaining confidentiality when appropriate and the access litigants have to their case information.

   f. **Customer service training for court staff.** Court staff and bailiffs/sheriffs must receive ongoing training on interacting with litigants in family law matters.

   g. **ADR panels**. Family law arbitrators and alternative dispute resolution (ADR)  providers should receive training that addresses substantive family law issues as well as domestic violence, the possibility of power imbalances in family law, and working with self-represented litigants, limited English proficiency populations, and interpreters.

   h. **Interdepartmental training for court staff.** Courts should hold interdepartmental training for court staff working in different departments or programs so staff are aware of available services, provide consistent information, and can make appropriate referrals.

84

2. **Educational content.** The task force recognizes the important role that educational content plays in supporting family court processes and procedures and recommends the following:

    a. **Children's needs.** The content of all judicial educational courses should include the best possible information about children's best interest, children's developmental needs, and types of parental behavior that may positively or negatively affect children. Judicial educational courses should also more effectively address children's needs and place greater emphasis on children's safety and psychological needs. Judicial officers should receive training on how to receive testimony from children to best assess their needs.

    b. **Family court.** Judicial education should include information about the role of family court and the impact and significance of decisions. The Judicial College curriculum and New Judge Orientation education programs should include courses that enhance the understanding of the family law court, not just by telling judicial officers (including judges, subordinate judicial officers, and temporary judges) in these courses how important it is, but by presenting empirical evidence of the effect of the court on the lives of children and families. Additionally, all judicial education, including courses addressing bias, should provide instruction to dispel misunderstandings and challenge stereotypes about family law proceedings and family law courts and should address cultural, ethnic, socioeconomic, and language barriers encountered by litigants in the courts.

    c. **Interpreters.** More education should be provided to judicial officers and other court staff on the most effective strategies to employ in cases involving the use of interpreters.

    d. **Enforceable orders.** All judicial officers should be provided with training and education on how to craft court orders that are clear, specific, and able to be enforced effectively.

    e. **Self-represented litigants.** Educational programs should include information for judicial officers on handling family law matters involving self-represented litigants. Content should include specific information on handling cases in which both sides are self-represented and cases in which one side is represented by an attorney and the other is self-represented.

    f. **Procedural justice.** All family law judicial officers should be provided with education on the elements of procedural justice and the most effective ways to provide litigants with a meaningful voice in their cases.

    g. **Attorney fee awards.** Education for all family law judicial officers should include information on the need to make early awards of needs-based attorney fees.

    h. **Limited scope representation.** Education for all judicial officers should include information on limited scope representation.

i.   **Minor's counsel.** Education for all judicial officers should include information on the appropriate use of minor's counsel. Educational opportunities should be provided to inform judicial officers of California Rules of Court and statutory requirements for minor's counsel and on the appropriate role of minor's counsel in family law proceedings.

j.   **Leadership and collaborative courts.** The Family Law Institute and the Supervising Judge Institute curriculum and teaching methods should be enhanced with topics on leadership and model collaborative court approaches that would be helpful to consider in family law courts.

k.   **Fairness, awareness of bias, and elimination of bias.** Judicial education programs should place significant emphasis on issues related to fairness, awareness of bias, and elimination of bias in family law. The task force heard extensive concerns about issues of perceived bias toward and against both women and men in family law. Given the significance and sensitivity of the issues involved, the courts should strive to ensure that judicial officers receive ongoing education on these important issues.

l.   **Community resources**. Judicial education programs should include information and resources about available community resources for family law litigants, such as no and low cost counseling, parenting classes, support groups and classes for survivors of domestic violence and their children, and domestic violence shelters.

## *C. Increasing Public Information and Outreach*

The AOC's 2005 Public Trust and Confidence survey[16] showed that the public's self-rated familiarity with the courts is low and that the public is much more likely to get information about the courts from the media than from the courts themselves. The public should have access to more information on their legal rights and options as well as the services that are available through the courts. Litigants or potential litigants may be unaware of services available to them, particularly in the early stages of their cases, which may result in lost opportunities to settle cases early or resolve issues underlying the case. Enhancing public information and outreach will help to ensure that court users make the most productive use of their time in court.

The Elkins Family Law Task Force recommends:

1. **Public information program.** The AOC should develop a public information program to educate the public about the availability and benefits of court services, particularly prefiling services. The AOC should create core content that is applicable statewide, leaving local courts flexibility to tailor the materials to the specific needs of their communities. Information should be made available in the courthouse (particularly the clerk's office and self-help centers), law libraries, and public libraries, as well as through a variety of media, including the AOC and local court Web sites, radio, television, and newspapers.

2. **Community outreach.** Courts should give community presentations on available court services, with a particular focus on communities that may be currently underserved by the courts. Community partners should receive training on the content of informational materials and how to use them with the populations they serve.

3. **Informational materials.** Materials should be available in a variety of formats, including text and visual, to accommodate different learning styles among the court user population. Materials should be available in multiple languages.

4. **Resources.** To the extent that outreach efforts result in a higher volume of business for the courts, court resources should increase commensurately.

---

[16] David B. Rottman & Admin. Off. of Cts., *Trust and Confidence in the California Courts, A Survey of the Public and Attorneys, Part I: Findings and Recommendations* (2005). *www.courtinfo.ca.gov/reference/ documents/4_37pubtrust1.pdf.*

# V.   Laying the Foundation for Future Innovation

California's courts do not have the information they need to effectively advocate for new resources or to make informed decisions about the appropriate allocation of existing resources. They have difficulty tracking changes in workload or measuring the impact of new laws and processes. The California Case Management System (CCMS) statewide automated case management system is now under development, which would provide the courts with much of the information they need to make informed management decisions. Until the case management system is in place in the courts, targeted research projects can provide the courts with critical information needed to allocate existing resources and to advocate for new resources. Empirical research will also allow courts to measure the effectiveness of new processes and services in providing better access to justice.

Improvements in family court processes and services have traditionally come from innovations in the local courts. The evolving nature of family law requires that the courts have a continuous process in place to find and evaluate best practices in the family courts. We propose the creation of the California Family Law Innovation Project to encourage the development of and to fund innovative pilot projects in the local courts that would be tested and evaluated. Those procedures and services that prove to be efficient and effective in providing better access to justice could then adapted for statewide use.

## A.  Promoting Family Court Improvement Through Empirical Research

Family law judicial officers and court administrators historically have not had access to basic data required to make informed decisions about resource allocation, evaluate the need for or effectiveness of new programs or services, or make requests for additional funding. Statewide statistical reporting has been largely limited to filings and dispositions, which, given the high incidence of filing of orders to show cause and motions and extensive postjudgment activity, does not represent the true workload of the family court. Additionally, current judicial needs and resource allocation models do not employ a weighting scheme to account for the variation in workload among the different case types within family law.

Local statistical reporting varies greatly depending on the sophistication of case management systems and the availability and training of staff to develop reports. Research and evaluation are often limited to small pilot programs or programs and services that touch on only one aspect of the family court's work. Furthermore, in the scope of court research more broadly, family law has received relatively little attention. As a result of the implementation of performance standards, federal funding and other grant requirements, and the novelty of certain programs, juvenile, criminal, and collaborative justice courts have been the subjects of a much wider body of research than have the family courts.

> *"I think we also need data because … I do not think we track the cases well enough …I think we could learn more about what we are doing in order to manage better what we are doing."*
>
> *~ Judicial officer*

A more coordinated and comprehensive approach to research will promote better service to the public and wise use of resources by enabling family courts to objectively identify systemic issues that may need to be addressed, implement solutions that are grounded in a richer understanding of the underlying issues, and assess the effectiveness of those solutions. For example, data can assist courts in assessing barriers to access, timeliness in case processing, and public trust and confidence in the system. Review of such data on an ongoing basis will also allow the courts to monitor evolving issues and be more proactive in developing or improving services and procedures to better meet the needs of court users.

The Elkins Family Law Task Force recommends:

1. **Research agenda for family law.** A research agenda for the family courts should be developed and implemented by the AOC in partnership with the local courts, other key stakeholders, and, where appropriate, universities and professional associations. The AOC should disseminate research results to presiding judges, court administrators, relevant judicial officers, court staff, and other stakeholders and provide them with guidance on the interpretation and appropriate use of the data. The research agenda would, at a minimum, include the elements outlined below.

a. **Basic statewide statistical reporting.** Staff from the AOC and the local courts have designed family law management reports that will be available to all courts through the CCMS Statewide Reporting Data Warehouse. The AOC should promote the use of these reports and, prior to CCMS implementation; develop toolkits for the courts to collect similar statistics, with an emphasis on data elements that are readily available in existing case management systems and other databases in order to avoid onerous manual collection of data.

> *"The gathering of statistical data will enable the family law court system to evaluate what works and what doesn't, as well as the evaluation and monitoring of new types of cases statewide."*
>
> *~ Attorney*

Basic statewide statistical reporting should focus on measures related to court workload and caseflow to help assess resource needs and improve operational decisionmaking. The types of data to be collected should include, but not be limited to:

- The number and percentage of cases with one side represented, both sides represented, and neither side represented;
- The number and percentage of cases involving children;
- The number and percentage of cases involving interpreters, litigants with limited or no English proficiency, and hearing impaired litigants;
- The number and types of pre- and postjudgment filings per case, including issues raised in orders to show case and motions;
- Case aging (from time of filing and between key milestones) and time to disposition;
- The proportion of cases that reach judgment and methods by which judgments are reached; and
- The number of events (hearings, trials, mediation sessions, etc.) scheduled and the number of events actually held per case.

In addition, data should be available and reported at both the case level and the family level to better capture situations where families are involved in multiple cases and may be seen by different judicial officers for different matters.

b. **Workload studies**. Courts should use current workload studies to assess judicial and staff resource allocation. Moving forward, state-of-the-art methodologies should be used to improve and modernize the workload statistics gathered from courts to demonstrate respective judgeship and staffing requirements for family law as opposed to other case types.

Workload studies should measure the work of both judicial officers and the full range of court staff working in family law (including family court services, family law facilitators, and self-help centers) and should differentiate among the various family law case types. Additionally, the results of workload studies should be used to explore the feasibility of developing caseload standards.

c. **Performance measures**. The AOC, in consultation with the Family and Juvenile Law Advisory Committee, the Trial Court Presiding Judges Advisory Committee, the Court Executives Advisory Committee, and the National Center for State Courts (NCSC), should develop and pilot a streamlined trial court performance standards model and test it in various courts (e.g., small, medium, large). Building on the CalCourTools project, these performance standards will be specific to California and will focus on key performance areas, similar to those in NCSC's CourTools model The CourTools model provides courts with a set of 10 key performance measures, outlining for each measure a clear definition and statement of purpose, a measurement plan with instruments and data collection methods, and strategies for reporting results. California should look to the work of other states that have already tailored performance measures to family law cases. After testing and full vetting with trial courts, the performance measures should be incorporated into the CCMS regular monthly reports module and reviewed by each court to determine its own levels of effectiveness and efficiency and potential areas for improvement. The AOC should provide appropriate guidance to the courts in effectively using this information.

d. **Litigant surveys**. The AOC should provide courts with tools to conduct periodic customer satisfaction surveys and snapshot studies on the demographics and other key characteristics of family law litigants. Customer satisfaction surveys should incorporate questions related to procedural fairness.

e. **Studies to evaluate the effectiveness and replicability of court-connected programs or services**. Court-connected programs and services—including but not limited to case management, mediation, evaluation, assessment, orientation, parent education, and specialty courts—should be evaluated to determine effective models and areas for improvement. In addition, any pilot projects undertaken pursuant to the task force recommendations, or other new projects that may be considered for statewide adoption, should be evaluated to identify best practices.

f. **Evaluation of family law forms**. The AOC should assess the usability or readability of family law forms, including the effectiveness of plain language or simplified forms and form translations. Assessing usability could include field testing forms prior to statewide adoption or borrowing design principles from other fields, such as marketing or survey research for guidance on the layout of forms, and Web site usability testing for guidance on how people read and process information.

2. **Monitoring evolving issues in family law.** The AOC should track caseload statistics and other relevant indicators to identify emerging case types or issues to ensure that court procedures and services are continuing to meet the needs of litigants. Evolving issues to monitor should include, but not be limited to the following:

   a. **Minor's counsel.** The AOC should collect empirical data on cases in which minor's counsel are appointed to determine positive and negative consequences of children's greater participation in family law proceedings and the role minor's counsel plays in that participation.

   b. **Crossover between family law and other case types.** The AOC should track the frequency with which parties in family law cases are involved in cases in other court departments—including but not limited to juvenile dependency; probate guardianship, conservatorship, and estates; criminal domestic violence cases; and drug court—and assess what challenges they face, as well as their service needs.

3. **Coordination between family and juvenile dependency courts.** Research should be conducted to explore the legal viability and resource needs of employing a shared or multijurisdictional approach to allow for coordination between the family and juvenile dependency court for family court cases involving allegations of serious child abuse. Issues to consider should include, but would not be limited to, how cases would be identified for shared jurisdiction; what scope of services would be available to families; and whether a "hybrid" case might eventually move to dependency court based on additional investigation.

4. **Expedited appeals in custody cases.** In light of the need for timely decisionmaking in custody matters and for prompt resolution of issues that affect children's lives, the adoption of and resources required to implement an expedited appeal process in custody cases, with timelines and processes similar to those in juvenile dependency appeals (see Cal. Rules of Court, rule 8.416), should be studied.

5. **Tools and templates for child custody evaluations.** Research should be conducted to evaluate the development and use of standardized risk assessment tools or templates for child custody evaluations.

6. **Review of research and best practices from other jurisdictions.** The AOC and local courts should continue to explore best practices by reviewing research and reports from other jurisdictions, both nationally and internationally that have implemented new programs or services related to the family court. In obtaining such materials, they should emphasize studies that employ rigorous research methods.

## B.  Creating the California Family Law Innovation Project

In making these recommendations, the Elkins Family Law Task Force is mindful of California's unprecedented fiscal challenges and is fully aware that the courts will not be receiving significant additional resources for the family courts in the near future. These recommendations address the critical issues of due process, access to justice, improving the services in family courts, and ensuring adequate resources to meet court users' needs. While the family courts can make significant improvements by better use of existing resources, additional resources will be needed to make the long term improvements that are needed to restore the public's trust and confidence in the family courts.

Many of the significant improvements to the family courts that have been made in the past few years started as pilot projects. For example, pilot self-help centers for family law litigants were designed to address the needs of the growing number of people who were coming to family courts without lawyers. Much of the improvement that will be achieved in the future will be through implementation of these recommendations and through ideas for innovative new practices and approaches to providing services as families' needs change. By necessity, many of the improvements to the family courts will have to be phased in after being tested through pilot projects.

The Elkins Family Law Task Force seeks to ensure that the courts, the legal community, and court users all continue to have the benefit of innovative projects and approaches to service delivery in family law.

The Elkins Task Force recommends:

**Establish California Family Law Innovation Project.** To provide a structure for ongoing innovations and continuous improvement of California's family courts, the Judicial Council should establish the California Family Law Innovation Project through legislation or any other appropriate means to develop resources to conduct pilot projects in California courts and test and evaluate promising new procedures, programs, and services.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF-of-SERVICE

I am an individual over the age of eighteen and not a party to the within action.  My business address is 4894 W. Lone Mtn. Rd., No. 132, Las Vegas, Nev. 89130.  My phone number is (323) 314-6996.

On **Mar. 6, 2024**, I served the following:

**Exhibit No. "1" – Elkins Task Force Report**

on an interested party in the above-entitled action by
___X___ via e-mail transmission, (U.S. e-filing system)
_____ personal service on the person below listed,
_____ depositing it in the U.S. Mail, postage prepaid,
and addressed to the person below listed,

> **MATTHEW L. GREEN, Bar No. 227904**
> **BEST BEST & KRIEGER LLP**
> **655 West Broadway, 15th Floor**
> **San Diego, California 92101**
> **Telephone: (619) 525-1300**
> **Facsimile: (619) 233-6118**
> **matthew.green@bbklaw.com**

I declare under penalty of perjury under Nevada law, the foregoing is true and correct.

Dated: **Mar. 6, 2024**

/s/ T. Matthew Phillips     .
Declarant

*Proof of Service*