**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JASON D'SOUZA, et al., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> Honorable PATRICIA GUERRERO, in her Honor's Official Capacity as Council Chair for the Judicial Council of California, <br><br> Defendant - Appellee. | No. 24-2537 <br><br> D.C. No. 2:23-cv-08230-SVW-E <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted February 12, 2025
Pasadena, California

Before: GRABER, HAMILTON, and BUMATAY, Circuit Judges.**

Jason D'Souza and co-plaintiffs appeal the dismissal of their lawsuit against California Chief Justice Patricia Guerrero in her official capacity as Chair of the Judicial Council of California (the "Judicial Council"). Plaintiffs allege that they

---

  *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

  **   The Honorable David F. Hamilton, United States Circuit Judge for the Court of Appeals, Seventh Circuit, sitting by designation.

are "fit parents" subject to California state court orders granting them no "actual parenting time." They allege that California courts exercise "arbitrary discretion" by denying parents custody of their children without findings of "unfitness." Plaintiffs seek damages for "each day they and their children were subjected to court orders that grant no 'actual parenting time.'" They also seek an injunction requiring the Judicial Council to "train its judicial officers, *first*, that 'parenting' is a fundamental right, and *second*, that the Constitution forbids" custody orders that deny "actual parenting time" without a finding of "unfitness." The district court dismissed the case.

We review *de novo* a dismissal for failure to state a claim and for lack of jurisdiction. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007). We may affirm the district court's dismissal on any ground supported by the record, provided that the parties have had a fair opportunity to be heard on the issue. *Scholar v. Pacific Bell*, 963 F.2d 264, 266 (9th Cir. 1992). We affirm.

1. Plaintiffs may not sue Chief Justice Guerrero in her official capacity under 42 U.S.C. § 1983. Only "persons" are subject to suit under § 1983. *Peter-Palican v. Gov't of N. Mariana Islands*, 695 F.3d 918, 919 n.1 (9th Cir. 2012). "[A] State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). And because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

against the official's office . . . it is no different from a suit against the State itself." *Id.* at 71 (internal citation omitted).

The Judicial Council is an arm of the State of California. *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) ("Given the role of the Judicial Council, it is clearly a state agency.").[1] Plaintiffs invite us to overrule *Wolfe*, but we reach the same conclusion we did in *Wolfe* by applying the factors outlined in *Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023) (en banc).

The State's intent in creating the Judicial Council and the State's control over the Judicial Council—two factors not mentioned by Plaintiffs—strongly support our conclusion. *See id.* at 1030 (describing the three factors). The third factor—the Judicial Council's overall effects on the State treasury—also supports our conclusion. *Id.* Plaintiffs focus almost entirely on the Supreme Court's decision in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994), and the State's purported fiscal liability for a judgment, to the exclusion of all other aspects of the *Kohn* test. But, in *Kohn*, we discussed *Hess* and squarely rejected the argument that the state's fiscal liability for a judgment is the only concern relevant to whether an entity is part of a state. *See Kohn*, 87 F.4th at 1027 ("[T]he

---

[1] In *Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024), we recognized that an intervening precedent had overruled *Wolfe* on a separate point, its holding that "the *Ex parte Young* exception allows injunctions against judges acting in their judicial capacity." Our decision here is consistent with *Young* and its treatment in *Munoz,* as explained below.

Supreme Court has clarified that '[t]he Eleventh Amendment does not exist solely in order to preven[t] federal-court judgments that must be paid out of a [s]tate's treasury.'" (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (first alteration added; some internal quotation marks omitted)).

Plaintiffs next invoke *Monell v. Department of Social Services*, 436 U.S. 658 (1978), but *Monell* held only that municipalities and local governments may be sued under § 1983 when they maintain policies or practices that violate federal law. See *id.* at 690. Plaintiffs brought this action against Chief Justice Guerrero's office, which is a state office, not a municipality or local government.

2. Nor can Plaintiffs obtain injunctive relief under the "judge-made cause of action recognized in *Ex parte Young*." *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018). As a general rule, *Young* authorizes suits against state officials in their official capacities for injunctive relief addressing ongoing violations of federal law. *E.g.*, *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). In *Young* itself, however, the Supreme Court warned that "an injunction against a state court would be a violation of the whole scheme of our government." *Ex parte Young*, 209 U.S. 123, 163 (1908); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (reaffirming that principle).

Plaintiffs point out that they seek an injunction not directly against state courts but against the entity responsible for the continuing education and training

of judges.  This attempted bank shot does not avoid the instruction from *Young* and *Whole Woman's Health*.  If the requested injunction achieved plaintiffs' goals, it would do so by effectively requiring state courts to adjudicate cases in specific ways, contrary to *Young* and *Whole Woman's Health*.  If the requested injunction did not require such adjudication, plaintiffs would lack standing because the relief would not redress their alleged grievances.

Either way, injunctive relief is not available to these plaintiffs on these claims. Instead, plaintiffs' remedy for allegedly erroneous judicial decisions is an appeal, not a federal-court injunction requiring training for state-court judges.  *Cf. Whole Woman's Health*, 595 U.S. at 39 ("If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to [the Supreme Court], not the entry of an *ex ante* injunction preventing the state court from hearing cases.").

**AFFIRMED.**